UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:22-cv-21204-SCOLA/GOODMAN

TERRA TOWERS CORP. and TBS
MANAGEMENT, S.A.,

           Plaintiffs,

   v.

ADAM MICHAEL SCHACHTER,
GELBER SCHACHTER &
GREENBERG, P.A., CONTINENTAL
TOWERS LATAM HOLDINGS
LIMITED, TELECOM BUSINESS
SOLUTION, LLC, LATAM TOWERS,
LLC, AMLQ HOLDINGS (CAY) LTD.,
and DT HOLDINGS, INC.,

           Defendants.

_____/

**DEFENDANTS ADAM MICHAEL SCHACHTER AND
GELBER SCHACHTER & GREENBERG, P.A.'S MOTION TO DISMISS**

    Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants

Adam Michael Schachter and Gelber Schachter & Greenberg, P.A. (collectively,

"GSG") move to dismiss the Plaintiffs' Complaint (ECF No. 1-4) with prejudice. The

exhibits attached to the Complaint make clear that Plaintiffs' claims fail as a matter

of law.

### INTRODUCTION

    The parties to this matter are currently involved in an arbitration proceeding

concerning the operation and forced sale of Defendant Continental Towers LATAM

Holdings Limited ("Continental Towers" or the "Company"). Plaintiffs Terra Towers

Corp. ("Terra Towers") and TBS Management, S.A. ("Terra TBS") (collectively, "Terra"), Defendants Telecom Business Solution, LLC and LATAM Towers, LLC (collectively, "Peppertree"), and Defendant AMLQ Holdings (Cay) Ltd. ("AMLQ") are shareholders of the Company and have stated claims and counter-claims against each other in the arbitration proceedings.[1]

Because of a shareholder dispute, it became necessary to retain an independent, neutral attorney to serve as independent counsel to Continental Towers, which is a nominal party stuck in the middle. Defendant GSG was retained by the Company's CEO Jorge Gaitán Castro ("Gaitán") to serve as the Company's independent counsel, as laid out in a Framework Agreement attached to the Plaintiff's Complaint. Following the execution of that agreement, GSG served as independent counsel without incident until around August 2021, when Plaintiffs became increasingly frustrated that GSG and its client remained neutral in the arbitration proceedings and refused to bow to improper pressure to align with Terra/DTH's litigation positions. Terra/DTH thus began a campaign to oust both GSG and Mr. Gaitán, which has now brought the parties to this Court.

This Complaint—in addition to being a blatantly retaliatory action against a lawyer and his law firm for doing their jobs professionally, ethically, and in the contractually agreed upon manner—is an attempt by the Company's majority shareholders to circumvent orders issued by the Arbitration Tribunal and improperly

---

[1] For the reasons set out in the Joint Notice of Removal, although listed as a defendant here, DT Holdings, Inc. ("DTH") is an affiliate of, and aligned with, Plaintiff Terra. (*See* ECF No. 1, at 8, 14-15.)

undo an action properly taken by the Company's Board (i.e., the retention of GSG as independent counsel). In particular, on November 12, 2021, the Tribunal "accepted that as of March 19, 2021, the CEO of the Company was Jorge Gaitán, and that this status was accepted by and accurately reflected in [the Framework Agreement] that was counter-signed by all counsel in this arbitration and Mr. Gaitán and therefore became a binding agreement among the parties." (ECF No. 1, at 6[2].) On December 23, 2021, the Tribunal found that the execution of the Framework Agreement by all of the shareholders (including Plaintiffs) was effectively an action by unanimous written consent of the Board of Directors of the Company through which the Board unanimously ratified and acquiesced to GSG's representation of the Company. (Dec. 23, 2021 Order, at 2 ¶3-4.[3])

Unhappy with the Tribunal's orders, Plaintiffs now seek to rescind the Framework Agreement and oust GSG by claiming that they were operating under a mistake of fact when they executed the agreement. Plaintiffs—the majority shareholders of the Company, which control half of its Board of Directors—allege Mr. Gaitán was not CEO of the Company when the Framework Agreement was executed, a fact they claim they only first discovered on October 19, 2021. In attempting to prove Mr. Gaitán was not CEO of the Company, however, Plaintiffs disprove the

---

[2] A copy of the Tribunal's November 12, 2021 order is being filed under seal as Exhibit 11 of the Weiner Declaration in Support of the Defendants' Motion to Compel Arbitration.

[3] A copy of the Tribunal's December 23, 2021 order is being filed under seal as Exhibit 16 of the Weiner Declaration in Support of the Defendants' Motion to Compel Arbitration.

claims they assert in this lawsuit. Plaintiffs rely exclusively on a May 16, 2016 resolution of the Company's Board of Directors (the "2016 Board Resolution") appointing Mr. Gaitán as COO and appointing another individual as CEO of the Company. That resolution, which was signed by the Plaintiffs' appointees to the Company's board (including one individual who is also a director of Plaintiff itself), contradicts Plaintiffs' allegations by establishing that Plaintiffs at all times knew the purported truth: that Mr. Gaitán was not CEO of the Company when they entered into the Framework Agreement. The 2016 Board Resolution is fatal to Plaintiffs' Complaint.

Accordingly, GSG respectfully requests that the Court dismiss the Plaintiffs' Complaint with prejudice.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Additionally, 'conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal.'" *United States ex rel. Keeler v. Eisai, Inc.*, 568 F. App'x 783, 792-93 (11th Cir. 2014) (quoting *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1195 (11th Cir. 2003)). The "[f]actual allegations must

be enough to raise a right of relief above the speculative level." *Twombly*, 550 U.S. at

545.

In addition to the above requirements, a plaintiff must satisfy Rule 9(b)'s

heightened pleading standard when alleging mutual mistake or fraud. *See Francois*

*v. Hatami*, 21-22528-CIV, 2021 WL 4502336, at *6 (S.D. Fla. Oct. 1, 2021) (Scola, J.);

Fed. R. Civ. P. 9(b). Under Rule 9(b), a party must state facts with particularity,

including "the who, what, when, where, and how of the mistake." *Richmond Manor*

*Apts., Inc. v. Certain Underwriters at Lloyd's London*, No. 09-60796, 2011 WL

13175618, at *2 (S.D. Fla. Feb. 28, 2011) (internal quotation marks omitted).

### COMPLAINT ALLEGATIONS[4]

On or about October 22, 2015, Plaintiff Terra joined Defendants Peppertree

and AMLQ as shareholders of Continental Towers. (Compl. ¶ 18.) The Company was

formed to develop, own, acquire, and operate telecommunications towers in Central

and South America. (*Id.* ¶ 17.) Under the Shareholders Agreement, Terra, the

Company's majority shareholder, appoints two members of the Company's Board;

Peppertree, a minority shareholder, appoints two members of the Company's Board;

---

[4] The facts of this case, including the status of the ongoing arbitration proceedings, are outlined in detail in the Defendants' Joint Notice of Removal (ECF No. 1.) GSG vehemently disputes the majority of the Complaint's allegations, but accepts them as true for purposes of this Motion. *See Scobie v. Taylor*, No. 13-60457, 2013 WL 3776270, at *1 (S.D. Fla. July 17, 2013) ("When deciding a motion to dismiss, the district court must accept as true all of the factual allegations contained in the complaint") (internal quotation marks omitted). And even accepting the allegations as true, the Complaint still fails as a matter of law.

and AMLQ, another minority shareholder, has no right to appoint Board members. (*Id.* ¶ 19.)

The Shareholders Agreement contains an arbitration provision. (*Id.* ¶ 23.) On February 2, 2021, Peppertree filed a demand for arbitration with the American Arbitration Association, stating claims against Terra, DTH,[5] and the Company's directors who were appointed by Terra. (*Id.* ¶ 24.) Those parties then filed their own counterclaims. (*Id.*)

According to the Complaint, Mr. Gaitán served as CEO of the Company until 2016, when he was removed as CEO by the 2016 Board Resolution and appointed as COO. (*Id.* ¶ 21-22.) The Complaint further alleges that on or about March 9, 2021, Mr. Gaitán, acting on behalf of the Company, engaged GSG to serve as the Company's independent counsel in the arbitration.[6] (*Id.* ¶ 26.) The parties then entered into a Framework Agreement, attached as Exhibit A to the Complaint, which stated that Mr. Gaitán was the CEO of the Company and had retained GSG in that capacity and provided that GSG would represent the Company entirely independently of the feuding shareholders. (*Id.* ¶ 26-29.). The Framework Agreement was executed by the Plaintiffs, the Defendants, and each of the Company's directors individually. (ECF

---

[5] For the reasons set out in the Joint Notice of Removal, although listed as a defendant here, DTH is an affiliate of, and aligned with, Plaintiff Terra. (*See* ECF No. 1, at 8, 14-15.)

[6] In fact, Plaintiff Terra insisted that Gaitán, in his capacity as the Company's CEO, engage GSG as Company counsel in the arbitration. (*See* ECF No. 1, at 4.) Defendant Peppertree initially objected to the engagement because he was engaged without Board approval, but following an interview of Mr. Schachter to confirm his qualifications and independence, ultimately agreed to the engagement. (*Id.*)

No. 1-4, at 16-20.) At least one of the Company's directors who signed the Framework Agreement (Jorge Hernandez), was also a director of Plaintiff Terra Towers. (*See id*.; ECF No. 1-27, at 21, 53.)

The Complaint goes on to allege that on around October 19, 2021, Terra first discovered Mr. Gaitán was not the CEO of the Company. (Compl. ¶ 32, 33.) To prove this fact, the Complaint relies exclusively on the 2016 Board Resolution, in which another individual (Alberto Arzu) is appointed CEO of the Company and Mr. Gaitán is appointed COO. (*Id*. ¶ 33; ECF No. 1-4, at 22-25.) The 2016 Board Resolution is signed by the Company's four directors—Mr. Hernandez, Mr. Arzu, F. Howard Mandel, and Ryan D. Lepene—two of whom (Messrs. Hernandez and Arzu) were appointed by the Plaintiffs themselves. (ECF No. 1-4, at 22-25; ECF No. 1-27, at 21.)

On November 22, 2021—days after the Tribunal entered an order that accepted that the Framework Agreement was binding and accurately reflected Mr. Gaitán's status was CEO of the Company (*see supra* at 3)—Terra informed Mr. Schachter that it believed the Framework Agreement was void and without effect or, alternatively, that Terra withdrew from the Framework Agreement. (*Id*. ¶ 35.) The Complaint alleges that GSG refused to declare the Framework Agreement void and without effect, and instead have continued to treat it as enforceable. (*Id*. ¶ 36.)

Plaintiffs now seek to rescind the Framework Agreement on the basis of a purported mutual or unilateral mistake of fact or fraud (Count I) and to enjoin GSG from taking further direction from Mr. Gaitán pursuant to the Framework Agreement (Count II). Both counts of the Complaint should be dismissed.

<u>ARGUMENT</u>

**I. The Complaint fails to state a claim for rescission.**

Plaintiffs seek to rescind the Framework Agreement on the ground that the parties were mistaken or misled as to Mr. Gaitán's status as the Company's CEO. To state a claim for rescission of a contract under Florida law,[7] a plaintiff must adequately plead, among other things, the "existence of fraud, mutual mistake, false representations, impossibility of performance, or other ground for rescission or cancellation." *Barber v. Am.'s Wholesale Lender*, 542 F. App'x 832, 836 (11th Cir. 2013). Plaintiffs fail to plead with particularity any ground for rescission of the Framework Agreement.

> **A. The Complaint and the 2016 Board Resolution conclusively establish there was no mutual mistake of fact because Plaintiffs knew Mr. Gaitán was the Company's COO.**

"Rescission of a contract is an adequate remedy where the parties to the contract labor under a mutual mistake which is material to the transaction." *Winn-Dixie Stores, Inc. v. Big Lots Stores, Inc.*, No. 11-cv-80601, 2016 WL 2918152, at *9 (S.D. Fla. May 18, 2016) (quoting *Braman Dodge, Inc. v. Smith*, 515 So. 2d 1053, 1054

---

[7] Whether Florida law or New York law applies to Plaintiffs' claims is unclear. The Framework Agreement does not contain a choice-of-law provision, but it is effectively an action by the Company's shareholders and Board pursuant to the Shareholders Agreement, which directs that New York law applies. (ECF No. 1-27, at 50 (§ 8.10).) Further complicating the analysis, the question of whether a choice-of-law provision controls when contractual rescission is sought is unsettled in Florida. *See Talisman Capital Alternative Investments Fund, Ltd. v. Mouttet*, 10-24577-CIV, 2011 WL 13223533, at *6 (S.D. Fla. Dec. 20, 2011). The Court need not resolve this issue, however, because the result—dismissal with prejudice—is the same under Florida or New York law.

(Fla. 3d DCA 1987)); *ACA Galleries, Inc. v. Kinney*, 928 F. Supp. 2d 699, 701 (S.D.N.Y. 2013), *aff'd,* 552 F. App'x 24 (2d Cir. 2014) ("In order to obtain rescission based on mutual mistake, [the plaintiff] must show that the mistake in question is mutual, substantial, material and exists at the time the contract is entered.") (internal quotation marks omitted). "A mistake is mutual when the parties agree to one thing and then, due to either a scrivener's error or inadvertence, express something different in the written instrument." *Dantzler, Inc. v. PNC Bank, Nat. Ass'n*, 946 F. Supp. 2d 1344, 1369 (S.D. Fla. 2013). A mutual mistake, by definition, is one that is common to both parties. *N.E. Taylor Boatworks, Inc. v. M/V SIR WINSTON*, No. 10-01844, 2011 WL 5358701, at \*3 (M.D. Fla. Nov. 2, 2011); *ACA Galleries, Inc.*, 928 F. Supp. 2d at 701 ("A mutual mistake under New York law means that both parties shared the same erroneous belief as to a material fact, and their acts did not in fact accomplish their mutual intent.") (internal quotation marks omitted). Under New York law, "the doctrine of mutual mistake may not be invoked by a party to avoid the consequences of its own negligence." *ACA Galleries, Inc.*, 928 F. Supp. 2d at 701.

Even assuming the Complaint's factual allegations were true and Mr. Gaitán were not the Company's CEO as of March 19, 2021, the 2016 Board Resolution belies Plaintiff Terra's conclusory allegations that it was operating under a mistake of fact.[8]

---

[8] "When considering a motion to dismiss, in addition to the allegations in the complaint, the district court also considers 'the facts derived from a complaint's exhibits as part of the plaintiff's basic factual averments,' and where those exhibits contradict the complaint's allegations, the exhibits control." *Seminole Masonry, LLC v. Hodges*, 18-60368-CIV, 2019 WL 687918, at \*3 (S.D. Fla. Feb. 19, 2019) (Scola, J.) (quoting *F.T.C. v. AbbVie Prods. LLC*, 713 F.3d 54, 63 (11th Cir. 2013)).

As a majority shareholder of the Company, Terra appointed two directors of the Company—Messrs. Hernandez and Arzu. (*See* Compl. ¶¶ 18, 19; ECF No. 1-27, at 21[9].) Mr. Hernandez, in turn, is also a shareholder and director of Plaintiff Terra Towers and the person designated to receive all notices on behalf of Plaintiff Terra Towers. (*See* ECF No. 1-27, at 28, 30-31, 47, 53.) Mr. Hernandez executed (along with Mr. Arzu) the 2016 Board Resolution in which Mr. Arzu was appointed CEO and Mr. Gaitán was appointed COO, which serves as the factual basis for Plaintiffs' allegation that Mr. Gaitán was not the CEO as of March 19, 2021. (ECF No. 1-4, at 22-25.) Through their respective counsel, Terra, Mr. Hernandez, and Mr. Arzu are all signatories of the Framework Agreement, which Terra now seeks to rescind based on the existence of a supposed mistake of fact regarding Mr. Gaitán's status as CEO. (*Id.* at 16, 20.)

The 2016 Board Resolution on which Plaintiffs rely conclusively establishes there was no mistake of fact: when Plaintiff Terra entered into the Framework Agreement it knew Mr. Gaitán had been removed as CEO in 2016 because its own

---

[9] This Motion incorporates as an exhibit the Shareholders Agreement filed at ECF No. 1-27. A court may consider documents beyond the complaint and its exhibits when "a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss." *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007). Here, Plaintiffs refer to the Shareholders Agreement in the Complaint, including relying on the Shareholder Agreement to set forth the Company's corporate governance structure and establish that Mr. Gaitán was the Company's initial CEO (*see* Comp. ¶ 18-26); the Shareholders Agreement is central to the dispute, as it establishes Mr. Gaitán's role as CEO and the parties' relationship, an essential element to a claim of rescission, *see Barber*, 542 F. App'x at 836; the contents of the Shareholders Agreement, executed by all parties, is not in dispute; and the document has been filed as part of the record in this case and is incorporated as an exhibit here.

director (who is also the Company's director) executed the 2016 Board Resolution. Plaintiffs' claim for rescission based on mutual mistake fails as a matter of law.

Alternatively, Plaintiffs fail to allege with particularity that any mistake was mutual (i.e., common to all of the parties to the Framework Agreement). *See Auto-Owners Ins. Co. v. Lexington Ins. Co.*, 10-81031-CIV, 2011 WL 13268494, at *4 (S.D. Fla. Feb. 2, 2011) (no mutual mistake where the error was solely on the part of one party); *ACA Galleries, Inc.*, 928 F. Supp. 2d at 702 ("Contract avoidance on the grounds of mutual mistake is not permitted just because one party is disappointed in the hope that the facts accord with his wishes."). The Complaint contains only conclusory allegations as to the knowledge or understanding of the other parties to the Framework Agreement. (*See* Compl. ¶¶ 31, 40, 41.) Conclusory allegations as to a party's mistaken belief are insufficient to satisfy Rule 9(b)'s heightened pleading standard. *See Francois*, 2021 WL 4502336, at *7 (dismissing rescission claim based on mutual mistake where plaintiff made no allegations of fact "as to how or why" the defendants were mistaken as to ownership of a vessel and conclusory allegations "do not withstand Rule 9(b)").

### B. The 2016 Board Resolution also forecloses Plaintiffs' claim for rescission based on unilateral mistake.

Plaintiffs allege in the alternative that "to the extent any of the Defendants were aware that Mr. Gaitán was not the CEO of the Company, the Framework Agreement should be voided on the grounds of unilateral mistake of fact induced by Defendants (who had knowledge of the mistake)." (Compl. ¶ 45.) Under Florida law, a contract may be rescinded on the basis of a unilateral mistake of material fact if:

"(1) the mistake was not the result of an inexcusable lack of due care; (2) denial of release from the contract would be inequitable; and (3) the other party to the contract has not so changed its position in reliance on the contract that rescission would be unconscionable." *DePrince v. Starboard Cruise Servs., Inc.*, 271 So. 3d 11, 20 (Fla. 3d DCA 2018). Similarly, under New York law, a plaintiff must show that (1) "he entered into a contract based upon a mistake as to a material fact," (2) "the other contracting party either knew or should have known that such a mistake was being made," (3) he "exercised ordinary care," and (4) "enforcement would be unconscionable." *Summit Health, Inc. v. APS Healthcare Bethesda, Inc.*, 993 F. Supp. 2d 379, 404 (S.D.N.Y. 2014), *aff'd sub nom. APEX Employee Wellness Services, Inc. v. APS Healthcare Bethesda, Inc.*, 725 F. App'x 4 (2d Cir. 2018). "Rescission will be denied if the mistake arises out of negligence and the means of knowledge were easily accessible." *Id.* (internal quotations omitted). Further, New York law does not permit the rescission of a contract based on a unilateral mistake alone; rather, the unilateral mistake "must be coupled with some fraud." *Colonial Funding Network, Inc. for TVT Capital, LLC v. Epazz, Inc.*, 252 F. Supp. 3d 274, 285 (S.D.N.Y. 2017).

Like their mutual mistake theory, Plaintiffs' unilateral mistake theory fails as a matter of law because there was no mistake on the part of the Plaintiffs. Plaintiffs' own director executed the 2016 Board Resolution. (*See supra* at 9-11.) The Court's analysis can end here.

But, in any event, the Complaint also fails to allege any of the other elements of unilateral mistake. Plaintiffs provide no factual support for their single conclusory

allegation that the "mistake as to Gaitan's position in the Company did not result from negligence or want of due care on the part of Plaintiffs." (Compl. ¶ 46.) Plaintiffs allege no facts whatsoever regarding any actions they took to determine whether Mr. Gaitán was the CEO of the Company before executing the Framework Agreement. Indeed, the 2016 Board Resolution conclusively establishes that Plaintiff Terra at all times possessed the knowledge that Mr. Gaitán was removed as CEO and appointed as COO of the Company in 2016. *See Berman v. Kafka*, 518 F. App'x 783, 786 (11th Cir. 2013) (affirming judgment and finding plaintiff failed to meet the requirements of unilateral mistake where "due diligence would have allowed for discovery" of the factual issue in question).

Aside from a conclusory allegation that "it would be inequitable to compel Plaintiffs to continue to be bound by the Framework Agreement," Plaintiffs offer no facts to explain what inequity could befall them by having GSG continue to serve as independent counsel to the Company, particularly as Plaintiffs are sophisticated parties that were represented by counsel when they executed the Framework Agreement and had the facts available to them that would reveal any purported mistake in the document. *See NCR Corp. v. Lemelson Med., Educ. & Research Found.*, 99-CV-3017, 2001 WL 1911024, at \*8 (S.D.N.Y. Apr. 2, 2001), *aff'd,* 33 F. App'x 7 (2d Cir. 2002) (rejecting plaintiff's claim for rescission based on unilateral mistake where both parties had relatively equal bargaining power and were represented by counsel).

And Plaintiffs likewise fail to allege facts to show they have suffered any detrimental reliance; Plaintiffs include only a single conclusory statement that

"Defendants' position has not changed so substantially since the execution of the Framework Agreement that granting a rescission would be unjust to defendants." (Compl. ¶ 49.) Merely parroting the elements of a claim is not enough. *Gayou v. Celebrity Cruises, Inc.*, 11-23359-CIV, 2012 WL 2049431, at *10 (S.D. Fla. June 5, 2012).

### C. The Complaints' third alternative theory of fraudulent inducement likewise fails as a matter of law based on the 2016 Board Resolution.

Finally, Plaintiffs state, as a third alternative basis for rescission, that "Gaitan and Schachter knew that Gaitan was not the CEO of the Company at the time they entered into the Framework Agreement, yet represented to the Plaintiffs that he was the CEO, thereby intentionally misleading Plaintiffs into joining the Framework Agreement." (Compl. ¶ 47.) To state a claim for fraud in the inducement under Florida law, a plaintiff must allege with particularity: "(1) the defendant made a false statement concerning a material fact; (2) the defendant knew or should have known that the representation was false; (3) the defendant intended to induce the plaintiff to act in reliance on the false statement; and (4) the plaintiff acted in justifiable reliance on the representation and was injured as a result." *W. Coast Inv'rs, LLC v. D.R. Horton, Inc.*, No. 19-CV-14360, 2020 WL 533988, at *2 (S.D. Fla. Feb. 3, 2020). Similarly, under New York law, "[t]he elements of a claim for rescission based on fraud are misrepresentation, concealment or nondisclosure of a material fact; an intent to deceive; and an injury resulting from justifiable reliance by the aggrieved

party." *Colonial Funding Network, Inc.*, 252 F. Supp. 3d at 284 (quoting *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)).

This third alternative ground for rescission also fails as a matter of law. For starters, Plaintiffs cannot establish reliance on any purported false statement contained in the Framework Agreement regarding Mr. Gaitán's status as CEO because Plaintiffs knew that Mr. Gaitán was removed as CEO and appointed COO in 2016. (*See supra* at 9-11.) For this reason alone, a rescission claim based on fraud must be dismissed with prejudice. *See Helman v. Bank of Am.*, 685 F. App'x 723, 729 (11th Cir. 2017) (affirming dismissal of fraudulent inducement claim because plaintiff could not rely on a false statement of fact that he knew to be false or whose falsity was obvious to him); *ACA Galleries, Inc.*, 928 F. Supp. 2d at 703 (plaintiff could not establish justifiable reliance where it had the opportunity to investigate, but failed to do so: "As a matter of law, a sophisticated plaintiff cannot establish that it entered into an arm's length transaction in justifiable reliance on alleged misrepresentations if that plaintiff failed to make use of the means of verification that were available to it." ).

Moreover, Plaintiffs' rescission claim based on fraud falls woefully short of Rule 9(b)'s heightened pleading requirements. Plaintiffs do not allege any facts to support the bare conclusory allegation that GSG had any knowledge that Mr. Gaitán was not the CEO of the Company at the time the Framework Agreement was signed; the Complaint contains no particularized factual allegations that GSG intended to induce Plaintiffs to act in reliance on any false statement or that Plaintiffs justifiably

relied on any false statements; and the Complaint does not contain any factual allegations that articulate what injury, if any, Plaintiffs have suffered as a result of GSG acting as independent counsel to the Company (there is none). *See Colonial Funding Network*, 252 F. Supp. 3d at 284 (dismissing counterclaim for rescission based on fraud where, among other things, "no injury to defendants from the misstatements [was] apparent").

## II.     The Complaint Fails to State a Claim for Injunctive Relief.

Count II of the Plaintiffs' Complaint attempts to state a claim for injunctive relief to enjoin GSG "from taking any further direction from Gaitan pursuant to the Framework Agreement." (Compl. ¶ 54.) The basis for this claim is that "the Framework Agreement is unenforceable based on mutual mistake or, in the alternative, unilateral mistake or fraud in the inducement," and, because the Framework Agreement is unenforceable, GSG has "no authority to represent the Company at Gaitan's direction." (*Id.* ¶¶ 52-53.)

As set forth above, the Complaint fails to allege facts to satisfy the elements of mutual mistake, unilateral mistake, or fraudulent inducement. (*Supra* at 8-16.) Count II for injunctive relief should therefore be dismissed with prejudice for the same reasons as Count I for rescission.

## CONCLUSION

For the foregoing reasons, Defendants Adam Michael Schachter and Gelber Schachter & Greenberg, P.A. respectfully request that the Court enter an order dismissing the Plaintiffs' Complaint (ECF No. 1-4) with prejudice.

Dated:  April 21, 2022

Respectfully submitted,

By:  */s/ Roberto Martínez*
Roberto Martínez
Florida Bar No. 305596
Stephanie A. Casey
Florida Bar No. 97483
**COLSON HICKS EIDSON, P.A.**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Phone: (305) 476-7400
bob@colson.com
scasey@colson.com

*Counsel for Adam Michael Schachter
and Gelber Schachter & Greenberg,
P.A.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of the Court.  I also certify that the foregoing document is being served this 21 April 2022, on all counsel of record or pro se parties either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: *s/ Stephanie Casey*
Stephanie Casey