UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **TERRA TOWERS CORP.**, *et al.*, | ) CASE NO. 1:22-cv-21204-RNS |
| | ) |
| *Plaintiffs*, | ) JUDGE ROBERT N. SCOLA, JR. |
| | ) |
| v. | ) MAGISTRATE JUDGE JONATHAN |
| | ) GOODMAN |
| **ADAM MICHAEL SCHACHTER**, *et al.*, | ) |
| | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

**SPECIALLY APPEARING DEFENDANTS TELECOM BUSINESS
SOLUTION, LLC'S AND LATAM TOWERS, LLC'S MOTION TO DISMISS
THE COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 12 AND INCORPORATED MEMORANDUM OF LAW**

Specially Appearing Defendants Telecom Business Solution, LLC ("Peppertree Telecom") and LATAM Towers, LLC ("Peppertree LATAM" together with Peppertree Telecom, the "Peppertree Entities") move this Court pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(6), and 12(b)(7) for an order dismissing Terra Tower Corp.'s ("Terra Towers") and TBS Management, S.A.'s ("Terra TBS," together with Terra Towers, "Plaintiffs") Complaint (ECF No. 1-4) in its entirety, with prejudice. Plaintiffs' Complaint is fatally flawed and should be dismissed for at least two reasons: First, this Court does not have personal jurisdiction over the Peppertree Entities, which are indispensable parties to this action. Thus, this action cannot continue in the Peppertree Entities' absence, necessitating dismissal of the Complaint in its entirety. Second, the Complaint fails to state a claim upon which relief can be granted. Accordingly, for these reasons, as explained more fully below, Plaintiffs' Complaint should be dismissed with prejudice.

To the extent applicable, the Peppertree Entities hereby join and incorporate by reference the facts and arguments set forth in Specially Appearing Defendant AMLQ Holdings (Cay) Ltd.'s ("AMLQ") Motion to Dismiss the Complaint Pursuant to Federal Rule of Civil Procedure 12 and Incorporated Memorandum of Law ("AMLQ's Rule 12 Motion") and Defendants Adam Michael Schachter and Gelber Schachter & Greenberg, P.A.'s Motion to Dismiss ("GSG's Rule 12

Motion").[1]

## I. THE PEPPERTREE ENTITIES' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO JOIN NECESSARY PARTIES UNDER RULE 19

### A. Introduction

This action is a blatant end-run around rulings adverse to Plaintiffs entered in an active and ongoing arbitration seated in New York, New York.[2] Plaintiffs have done everything in their power to remove Jorge Gaitán Castro ("Mr. Gaitán") from his position as Chief Executive Officer of Continental Towers LATAM Holdings Limited (the "Company"), and to remove Mr. Schachter and his law firm, GSG, from their position as the Company's independent Counsel in the New York-based arbitration. Plaintiffs' efforts in this regard have failed, and the arbitral tribunal has soundly, repeatedly, and unanimously rejected Plaintiffs every step of the way. Plainly frustrated by their failures, Plaintiffs apparently decided to forum shop and try their luck in Florida state court. However, Plaintiffs' attempt to hand pick a new forum fails for a variety of reasons—not the least of which is the unequivocal evidence establishing that the Peppertree Entities (and AMLQ)—indispensable parties to Plaintiffs' claim for rescission—are complete strangers to Florida.

Conspicuously absent from the Complaint is a single allegation addressing, much less supporting, this Court's personal jurisdiction over the Peppertree Entities. The Complaint contains allegations concerning "subject matter jurisdiction," Compl. at ¶ 15, and venue, *id*. at ¶ 16, but Plaintiffs ***do not***—and ***cannot***—allege that this Court has personal jurisdiction over the Peppertree Entities. *See generally id.* Critically, the Complaint does ***not*** cite to or even reference Florida's long-arm statute. And with good reason, as they cannot satisfy that statute's requirement for the

---

[1] Contemporaneous with this filing, Defendants Peppertree, AMLQ, Adam Schachter ("Mr. Schachter"), and Gelber Schachter & Greenberg, P.A. ("GSG") also seek transfer of venue to the Southern District of New York. Should the Motion to Transfer Venue be granted, the portion of this Motion pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction over Peppertree (and AMLQ) would be rendered moot.

[2] Plaintiffs' end-run around the arbitral tribunal's prior adverse rulings is improper for the reasons outlined in Defendants' Motion to Compel Arbitration, which shall be forthcoming. Peppertree is filing the current Motion in compliance with Fed. R. Civ. P. 81(c)(2)(C) and by filing this Motion, Peppertree does not waive, and hereby expressly reserves, it right to file the forthcoming Motion to Compel Arbitration and make all arguments set forth therein.

2

exercise of personal jurisdiction.

Although not explicit from the face of the Complaint, Plaintiffs seem to claim personal jurisdiction over the Peppertree Entities solely on the fact that Mr. Schachter's firm, a party to the Framework Agreement, happens to be located in Florida. As demonstrated below, this won't suffice. The Framework Agreement is, at core, simply an action by the Company's Board and shareholders authorizing the retention of Mr. Schachter and GSG as independent counsel for the Company in the *New York-based* arbitration. The Framework Agreement does not impose any duties or obligations on Plaintiffs, the Peppertree Entities, or AMLQ. The Company's engagement of Florida-based counsel to represent it in an active and ongoing arbitration in New York City does not provide a basis for a Florida court to exercise personal jurisdiction over the Company's shareholders. This is true for at least the following reasons:

- There is no general personal jurisdiction over the Peppertree Entities in Florida. The Peppertree Entities are organized under the laws of Delaware and their principal places of business are located in Ohio. As such, Florida courts lack general personal jurisdiction over the Peppertree Entities. *See, e.g., McCullough v. Royal Caribbean Cruises, Ltd.*, 268 F. Supp. 3d 1336, 1343 (S.D. Fla. 2017) (stating that the "two paradigm bases for general jurisdiction over a corporation" are "its place of incorporation and its principal place of business.").

- Similarly, there is no specific personal jurisdiction over the Peppertree Entities under Florida's long-arm statute. Indeed, "[t]he fact that a foreign defendant contracts with a Florida resident is not enough to establish personal jurisdiction over the foreign defendant." *Paul's Cars, Inc. v. Hershey Contracting, Inc.*, Case No. 5:13-cv-75, 2013 WL 5230655, at *3 (M.D. Fla. Sept. 16, 2013).

- Finally, even if Florida's long-arm statute did establish general or specific personal jurisdiction over the Peppertree Entities (which it does not), this Court cannot "constitutionally exercise jurisdiction over" the Peppertree Entities because doing so "would be in violation of their rights under the Due Process Clause of the Fourteenth Amendment." *Hartman v. Shakeri*, No. 12-23190, 2013 WL 12094629, at *7-8 (S.D. Fla. June 14, 2013).

The absence of any basis for personal jurisdiction over the Peppertree Entities is fatal to Plaintiffs' Complaint in this forum because "parties to a contract are indispensable in actions involving claims for reformation or rescission" of a contract. *Klohr v. Mid-Continent Excess and Surplus Insurance Co.*, No. 18-80761, 2019 WL 2060024, at *2 (S.D. Fla. Mar. 14, 2019). The only claim Plaintiffs assert against the Peppertree Entities is one for rescission of the Framework

3

Agreement, and that claim is the linchpin of the entire action.  *See* Compl. at Count I.  Indeed, paragraph 1 of the Complaint states: "This is a cause of action seeking rescission of a contract." As such, the absence of personal jurisdiction over the Peppertree Entities—which are indispensable parties to Plaintiffs' claim for rescission—subjects Plaintiffs' Complaint to dismissal in its entirety.  *See, e.g., University of Louisville v. Merrill Lynch*, No. 3:17-CV-00212, 2017 WL 5015513, at *5-6 (W.D. Ky. Nov. 2, 2017) (dismissing a plaintiff's complaint because "it lack[ed] personal jurisdiction over Danziger" who "[was] an indispensable party . . . who [could not] be joined"); *see also Seven Seas Marine Services WLL v. Remote International Logistics, LLC*, No. H-17-1977, 2018 WL 704993, at *4-5 (S.D. Tex. Feb. 1, 2018) (finding that "Remote Logistics Qatar," a party that the court did "not have general or specific personal jurisdiction over," was "an indispensable party" which "th[e] action [could not], in equity and good conscience, proceed without.").

      **B.**      **Factual Background**

            **1.**      *In 2015, The Peppertree Entities Invest $80 Million to Become Minority Shareholders of the Company.*

In a series of transactions in 2015, Peppertree Capital Management, Inc., through two investment vehicles, the Peppertree Entities, contributed approximately $80 million in cash to the Company, joining Plaintiffs as the Company's shareholders.  Declaration of John J. Ranieri, dated April 21, 2022 ("Ranieri Decl."), filed herewith, at ¶ 7.  Through their cash investments, the Peppertree Entities became minority shareholders of the Company, owning 32.2%.  *Id*. at ¶ 7.  The shareholders' relationship is defined by the Shareholders Agreement.  *Id*. at Ex. 1.

The Peppertree Entities have no connection to Florida.  *Id*. at ¶ 9.  Indeed, the "Peppertree Entities are single-purpose entities that were created for the ***sole purpose*** of investing in communication-based opportunities ***located in South and Central America***." *Id*. at ¶ 6 (emphases added).  They are "limited liability compan[ies] organized under the laws of the State of Delaware," Compl. at ¶¶ 11-12; *see also* Ranieri Decl. ¶¶ 4-5, and their principal places of business are located in Ohio. *Id*.  The Peppertree Entities invested approximately $80 million into the Company, which is "incorporated in the British Virgin Islands" Compl. at ¶ 10, and operates only in Central and South America.  *Id*. at ¶ 17.  In short, the "Peppertree Entities do not have any connection to Florida."  Ranieri Decl. at ¶ 9.  They do not: (1) conduct any business in Florida under any other guise; (2) have any employees in Florida; (3) own any property or offices in

4

Florida; (4) provide any services to any Florida-based businesses or individuals; (5) possess or maintain licenses to do business in Florida; or (6) derive any revenue from Florida. *Id*. Because the Peppertree Entities have no connection to Florida, there is no possible basis for them to be haled before a court there.

### 2. *In February 2021, the Peppertree Entities Initiate an Arbitration Against Plaintiffs in New York, New York.*

In February 2021, the Peppertree Entities, pursuant to Section 8.15 of the Shareholders Agreement, filed a demand for arbitration, asserting claims against Plaintiffs, DT Holdings, Inc. ("DTH"), Jorge Hernandez, and Alberto Arzu. *Id*. at ¶ 11. The Peppertree Entities' initial arbitration demand named the Company as a nominal respondent and AMLQ as a notice party. *Id*. The arbitration is currently ongoing, and it is being administered by the American Arbitration Association's International Centre for Dispute Resolution. *Id*. As required by the Shareholders Agreement, the seat of the arbitration is in New York, New York.[3] Ranieri Decl., Ex. 1 (Shareholders Agreement) at § 8.15. The arbitration has proceeding, and Plaintiffs here have participated every step of the way, including by filing counterclaims seeking affirmative relief from the Tribunal. Compl. at ¶ 25.

On March 19, 2021, the parties to the arbitration executed the Framework Agreement,[4] which is simply an agreement by the Company's Board and shareholders authorizing and governing the retention of GSG and Mr. Schachter as independent counsel for the Company in the ongoing New York-based arbitration.[5] *See generally* Compl. at Ex. A. Indeed, in an order dated December 23, 2021, the tribunal in the New York-based arbitration **rejected** the premise underlying Plaintiffs' Complaint, and confirmed the execution of the Framework Agreement as an

---

[3] On March 3, 2022, Peppertree/AMLQ filed a petition to confirm the Tribunal's Partial Final Award in the appropriate forum. *See Telecom Business Solution, LLC, et al. v. Terra Towers Corp., et al.*, No. 1:22-cv-01761 (S.D.N.Y.) (Kaplan, J.); *see also* Notice of Removal (ECF No. 1) at ¶ 20 n.2; Ranieri Decl. at ¶ 14.

[4] The Framework Agreement is not an engagement letter. The Company executed a separate engagement letter with GSG, to which the Peppertree Entities are not parties.

[5] Section 4.04(a) of the Shareholders Agreement makes clear that only the Company's Board has the authority to engage counsel on the Company's behalf. *See* Ranieri Decl., Ex. 1 (Shareholders Agreement) at § 4.04(a)(xviii) (providing that the Board must approve "entry by the Company . . . into any agreement . . . not included in the Annual Budget," which would include any agreement to engage counsel for the Company).

action by the shareholders and unanimous written consent by the Board, ruling as follows:

> ***The shareholders of the Company, by signing the letter through their counsel, not only confirmed that Mr. Gaitán was the CEO, but also approved the engagement of GSG and Mr. Schachter as counsel to the Company in this arbitration. […] The signing of the [Framework Agreement] by all the shareholders through their arbitration counsel at a time when this arbitration had already been pending for six weeks was effectively an action by unanimous written consent of the Board of Directors of the Company. To treat it otherwise would be an inappropriate triumph of form over substance. Further, the Board unanimously ratified and acquiesced in the GSG engagement, as at least five months of active proceedings in this arbitration ensued without having any question been raised about the legitimacy of the GSG firm's engagement.***

Ranieri Decl., Ex. 2 (December 23, 2021 Order) (emphasis added).

### 3. *This Action's Tenuous Brush With Florida.*

The Complaint, standing alone, demonstrates that this action is not properly before this Court. Plaintiffs themselves are not Florida-based entities. Compl. at ¶¶ 6-7. Terra Towers "is incorporated in the British Virgin Islands and has its principal place of business in Road Town, Tortola, British Virgin Islands," *id*. at ¶ 6, and Terra TBS "is a *Sociedad de Responsabilidad Limitada*, formerly a *sociedad anonima*, organized under the laws of Panama with its principal place of business in Panama City, Panama," *id*. at ¶ 7. The Peppertree Entities are "limited liability compan[ies] organized under the laws of the State of Delaware," *id*. at ¶¶ 11-12, with their principal places of business located in Ohio. Ranieri Decl. at ¶¶ 4-5. Plaintiffs and the Peppertree Entities are shareholders of the Company, which "is incorporated in the British Virgin Islands" and has its registered office there. Compl. at ¶ 10. The Company develops, owns, acquires, and operates "telecommunications towers in various locations across Central and South America." *Id*. at ¶ 17.

The only fleeting connection the Peppertree Entities have with Florida is the fact that Mr. Schachter's firm, one of the parties to the Framework Agreement, happens to be located there. But Mr. Schachter was engaged to represent the Company in the ***New York-based*** arbitration. Ranieri Decl. at ¶ 10; *see also* Compl. at ¶¶ 24, 26-27. Moreover, the Framework Agreement, which was executed by counsel on behalf of the Peppertree Entities in their capacities as shareholders of the Company and representatives of the Company's Board, does not impose any duties or obligations

6

on the Peppertree Entities but, instead, simply makes clear that Mr. Gaitán, Mr. Schachter, and the Company will remain neutral in the ongoing arbitration. *See generally* Compl. at Ex. A. Under established law, this negligible connection to Florida is not nearly sufficient to subject the Peppertree Entities to personal jurisdiction in this state.

    **C.**    **Law and Argument**

"A court is obligated to dismiss an action against a defendant over which it has no personal jurisdiction." *Smith v. Trans-Siberian Orchestra*, 689 F. Supp. 2d 1310, 1312 (M.D. Fla. 2010) (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999)). When a defendant files a motion to dismiss pursuant to Rule 12(b)(2), "[t]he burden is on the Plaintiff to establish a prima facie case of personal jurisdiction over a nonresident defendant." *Id*. If a plaintiff pleads "sufficient facts to support the exercise of personal jurisdiction, the burden shifts to the defendant to make a prima facie showing that the court lacks" personal jurisdiction. *Miller v. Gizmodo Media Group, LLC,* 383 F. Supp. 3d 1365, 1370 (S.D. Fla. 2019). A defendant may then "submit[] affidavits challenging a court's jurisdiction" and, if a defendant does so, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Serra-Cruz v. Carnival Corp.*, 400 F. Supp. 3d 1354, 1357 (S.D. Fla. 2019).

When determining "whether personal jurisdiction exists over an out-of-state defendant, courts undertake a two-step analysis." *Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1283, 1287 (S.D. Fla. 2014); *see also Verizon Trademark Services, LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1323 (M.D. Fla. 2011). "First, the court must determine whether" Florida's long-arm statute "is satisfied." *Future Technology Today, Inc. v. OSF Healthcare Systems*, 218 F.3d 1274, 1249 (11th Cir. 2000). Second, the court must "examine whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States." *Melgarejo v. Pycsa Panama, S.A.*, 537 Fed. App'x 852, 859 (11th Cir. 2013). Plaintiffs' Complaint falls short on both of these requirements and must be dismissed.

        **1.**    ***Florida's Long-Arm Statute, Fla. Stat. § 48.193, Does Not Give This Court Authority to Exercise Personal Jurisdiction Over the Peppertree Entities.***

Under Florida's long-arm statute, there are two potential bases for jurisdiction: "specific jurisdiction (jurisdiction in suits arising out of or relating to the defendant's contacts with Florida)" and "general personal jurisdiction (jurisdiction over any claims against a defendant,

7

notwithstanding any connection *vel non* with Florida, if the defendant engages in 'substantial and not isolated activity' in Florida." *McCullough v. Royal Caribbean Cruises, Ltd.*, 268 F. Supp. 3d 1336 (S.D. Fla. 2017). Florida's long-arm statute "must be strictly construed." *Milligan v. State Farm Mutual Automobile Ins. Co.*, No. 6:16-cv-1889, 2018 WL 3352933, at *2 (M.D. Fla. June 15, 2018) (*quoting Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623 (11th Cir. 1996)). This Court lacks both general personal jurisdiction and specific personal jurisdiction over the Peppertree Entities. Indeed, the Complaint fails to cite to Florida's long-arm statute nor identify any single portion of the long-arm statute that Plaintiffs contend gives this Court the authority to exercise personal jurisdiction over the Peppertree Entities.

  a. <u>The Court does not have general personal jurisdiction over the Peppertree Entities under Florida's Long-Arm Statute.</u>

The Peppertree Entities are not subject to general personal jurisdiction under Fla. Stat. § 48.193(2) because they are not organized under Florida law, their principal places of business are not located in Florida, and they are not essentially "at home" in Florida. Under Section 48.193(2), this Court can exercise general personal jurisdiction over "[a] defendant who is engaged in ***substantial and not isolated activity within this state***, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." (Emphasis added.) The general personal jurisdiction portion of Florida's long-arm statute is "coextensive with the limits of the Due Process Clause" and, as such, this Court "need only ascertain whether its exercise of jurisdiction over [the Peppertree Entities] would exceed constitutional bounds." *Maritime Executive, LLC v. Larson Electronics, LLC*, No. 17-cv-60323, 2018 WL 2938376, at *2 (S.D. Fla. June 11, 2018) (citing *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015). "Therefore, in examining general jurisdiction under" Florida's long-arm statute, this Court "must determine whether the exercise of jurisdiction over a defendant is constitutionally permissible—that is, whether defendant has established certain minimum contacts with the forum such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Schulman v. Global Citizens Travel, LLC*, No. 13-CV-23766, 2015 WL 11018438, at *2 (S.D. Fla. Jan. 20, 2015).

A court "may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are ***so continuous and systematic*** as to render them ***essentially at home*** in the forum State." *Daimler AG*

8

*v. Bauman*, 571 U.S. 117, 127 (2014) (emphases added). Indeed, as the Supreme Court of the United States explained in *Daimler*, general personal jurisdiction can be exercised over corporate defendants in only two places: (1) the corporation's state of incorporation; and (2) the state where the corporation's principal place of business is located.[6] *Id.* at 139; *see also Giuliani v. NCL (Bahamas) Ltd.*, Case No. 1:20-cv-22006, 2021 WL 4099502, at *7 (S.D. Fla. Sept. 8, 2021) ("General personal jurisdiction may be exercised over a corporate defendant based on its: (1) place of incorporation or (2) principal place of business."). Even "continuous activity of some sort within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." *Daimler AG*, 571 U.S. at 132; *see also RG Golf Warehouse, Inc. v. Golf Warehouse, Inc.*, 362 F. Supp. 3d 1226, 1234 (M.D. Fla. Jan 24, 2019) (citing *Daimler* for the proposition that "[a] corporation's place of incorporation and its principal place of business are the paradigm forums for the exercise of general jurisdiction" and, "***[o]nly in exceptional cases***[,] will a corporation's operations in a forum other than its formal place of incorporation or principal place of business be so substantial and of such a nature as to render the corporation at home in that state" (emphasis added)).

This Court cannot exercise general personal jurisdiction over the Peppertree Entities under Fla. Stat. § 48.193(2). The Peppertree Entities are organized under the laws of Delaware, and their principal places of business are located in Ohio. *See* Compl. at ¶¶ 11-12; *see also* Ranieri Decl. at ¶¶ 4-5. In addition, the Peppertree Entities do not do any business in Florida, they do not have a presence in Florida, and they are not essentially "at home" in Florida. *Id.* at ¶ 9.

      b. <u>Section 48.193(1) of Florida's Long-Arm Statute does not authorize this Court to exercise specific personal jurisdiction over the Peppertree Entities.</u>

In addition, Section 48.193(1) of Florida's long-arm statute does not give this Court specific personal jurisdiction over the Peppertree Entities. As an initial matter, with regard to

---

[6] This analysis also applies to limited liability companies like the Peppertree Entities. *See Daimler*, 571 U.S. at 139 (holding that general jurisdiction over a limited liability company did not exist because it was not "incorporated in California" and it did not "have its principal place of business there"); *see also Pinnacle Ins. & Financial Services, LLC v. Sehnoutka*, No. 3:16-cv-546, 2017 WL 3193641, at *8 (M.D. Fla. July 27, 2017) (finding that general jurisdiction did not exist over a limited liability company because it was "not incorporated in Florida," it did "not maintain its principal place of business in Florida," and this was "not one of those 'exceptional cases' where Sehnoutka LLC's operations in Florida are so substantial and of such a nature as to render the corporation effectively 'at home' here.").

9

specific personal jurisdiction, Section 48.193(1) "contains a list of acts that a nonresident defendant can do to satisfy the Florida Long-Arm Statute." *Erwin v. Ford Motor Company*, No. 8:16-cv-01322, 2016 WL 7655398, at *4 (M.D. Fla. Aug. 31, 2016). None applies here. The Complaint, moreover, fails to cite to Florida's long-arm statute, and also fails to identify which specific subsection of Florida's long-arm statute Plaintiffs believe apply here. *See generally* Compl. That is telling, in and of itself. Despite Plaintiffs' glaring omission, established law, when applied to the allegations set forth in the Complaint, makes clear that no subsection of Section 48.193(1) permits this Court to exercise specific personal jurisdiction over the Peppertree Entities.

> i.  *Sections 48.193(1)(a)(2)-(9) are inapplicable to the facts alleged in the Complaint and, as such, they do not confer this Court with specific jurisdiction over the Peppertree Entities.*

The allegations in Plaintiffs' Complaint establish that Sections 48.193(1)(a)(2)-(9) of Florida's long-arm statute do not apply here. Consequently, those sections cannot provide this Court with the authority to exercise specific personal jurisdiction over the Peppertree Entities:

- **Section 48.193(1)(a)(2)** does not apply here because Plaintiffs do not allege that the Peppertree Entities committed "a tortious act within Florida."

- **Section 48.193(1)(a)(3)** does not apply here because Plaintiffs do not allege that the Peppertree Entities "[o]wn[], us[e], possess[], or hold[] a mortgage or other lien on any real property" within Florida.

- **Section 48.193(1)(a)(4)** does not apply here because Plaintiffs do not allege that the Peppertree Entities "[c]ontract[ed] to insure a person, property, or risk located within [Florida] at the time of the contracting."

- **Section 48.193(1)(a)(5)** does not apply here because Plaintiffs' suit is not a "proceeding for alimony, child support, or division of property in connection with an action to dissolve a marriage" or "an independent action for support of dependents."

- **Section 48.193(1)(a)(6)** does not apply here because Plaintiffs have not alleged that the Peppertree Entities "[c]aus[ed] injury to persons or property within" Florida.

- **Section 48.193(1)(a)(7)** does not apply here because Plaintiffs have not alleged that the Peppertree Entities "[b]reach[ed] a contract in [Florida] by failing to perform acts required by the contract to be performed in [Florida]."

- **Section 48.193(1)(a)(8)** does not apply here because Plaintiffs' action is not "a proceeding for paternity."

- **Section 48.193(1)(a)(9)** does not apply here because Plaintiffs do not allege that the Peppertree Entities "entered into a contract that complies with" Fla. Stat. § 685.102.  Section 685.102(1) allows contracting parties "located outside [of] this state [to] agree[] to submit to the jurisdiction of" Florida courts.  The Framework Agreement contains no such clause.  *See generally* Compl. at Ex. A.

> ii. *Section 48.193(1)(a)(1) does not provide this Court with jurisdiction over the Peppertree Entities.*

Upon examination of the facts, Section 48.193(1)(a)(1) likewise does not give this Court jurisdiction over the Peppertree Entities.  Section 48.193(1)(a)(1) authorizes this Court to exercise jurisdiction over a defendant who "[o]perat[es], conduct[s], engag[es] in, or carr[ies] on a business or business venture in [Florida] or [has] an office or agency in [Florida]."  To establish that a defendant is engaged in business under this section, "the activities of the defendant must be considered collectively and show a general course of business activity in Florida for pecuniary benefit."  *RG Gold Warehouse, Inc. v. Gold Warehouse, Inc.*, 362 F. Supp. 3d 1226, 1236 (M.D. Fla. 2019); *see also Carmouche v. Carnival Corp.*, 36 F. Supp. 3d 1335, 1340 (S.D. Fla. 2014) (stating that "[t]he business activity" alleged "must demonstrate a general course of business for pecuniary benefit" in order for a court to have jurisdiction over a defendant pursuant to 48.193(1)(a)(1)).  When determining whether a defendant is "carrying on business" in Florida, courts have considered the following facts: (1) "the presence and operation of an office in Florida"; (2) "the possession and maintenance of a license to do business in Florida"; (3) "the number of Florida clients served"; and (4) "the percentage of overall revenue gleaned from Florida clients."  *Maritime Executive, LLC v. Philips Publishing LLC*, No. 17-60738, 2019 WL 12536391, at *4 (S.D. Fla. July 30, 2019).

Here, the Complaint does not even allege that the Peppertree Entities do any business in Florida—nor could it credibly do so.  *See generally* Compl.  This is because the Peppertree Entities ***do not*** carry on any business in Florida.  Ranieri Decl. at ¶ 9.  They ***do not*** have a presence or an office in Florida; they ***do not*** possess or maintain licenses to do business in Florida; they ***do not*** service any clients in Florida; and they ***do not*** generate any revenue from Florida-based clients.  *Id*.  To reiterate, the "Peppertree Entities are single-purpose entities that were created for the sole purpose of investing in telecommunication-based opportunism located in South and Central America, including" the Company.  *Id*. at ¶ 6.  As such, "the Peppertree Entities do not have any connection to Florida."  *Id*. at ¶ 9.

11

Indeed, the only alleged connection between the Peppertree Entities and Florida is the fact that they executed an agreement with multiple parties, one of which happens to be located in Florida, solely in their capacities as shareholders and Board members of the Company and parties to an ongoing New York-based arbitration. Under black-letter law, this act alone is plainly insufficient to confer this Court with personal jurisdiction over the Peppertree Entities. *See, e.g., Paul's Cars, Inc. v. Hershey Contracting, Inc.*, No. 5:13-cv-75, 2013 WL 5230655, at *3 (M.D. Fla. Sept. 16, 2013) (holding that "entering into an isolated" agreement "with a Florida company" is "not enough to establish personal jurisdiction over" a foreign defendant); *see also Walack v. Worldwide Machinery Sales, Inc.*, 278 F. Supp. 2d 1358, 1366 (M.D. Fla. 2003) ("[t]he fact that a foreign defendant contracts with a Florida resident is not enough to establish personal jurisdiction over the foreign defendant"); *Washington Capital Corp. v. Milandco, Ltd., Inc.*, 695 So.2d 838, 841 (Fla. 4th DCA 1997) (holding that "[i]t is not enough that a foreign defendant merely contract with a Florida resident" but, instead that "a plaintiff must establish that the defendant failed to perform an act or acts whose performance was to be in Florida and that such breach formed the basis for the cause of action for which relief is sought by the plaintiff."). Accordingly, this Court does not have specific jurisdiction over the Peppertree Entities pursuant to Section 48.193(1)(a)(1).

> 2. **Even if Florida's Long-Arm Statute Did Confer This Court With a Means by Which It Could Exercise General or Specific Personal Jurisdiction Over the Peppertree Entities (It Does Not), Exercising Personal Jurisdiction Over the Peppertree Entities Would Violate the Due Process Clause.**

Because "long-arm jurisdiction does not exist" here, "th[is] Court need not address whether the exercise of jurisdiction would offend the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Zimmerman v. Buttigieg*, 521 F. Supp. 3d 1197, 1211 (M.D. Fla. 2021); *see also Ferenchak v. Zormati*, No. 21-cv-22401, 2021 WL 5327943, at *9 (S.D. Fla. Nov. 16, 2021) ("forego[ing] the Due Process analysis" because the court determined that there were "no grounds for specific jurisdiction under [Florida's long-arm statute]").

Even if Florida's long-arm statute somehow applied, exercising personal jurisdiction over the Peppertree Entities would violate the Due Process Clause. "The Constitution prohibits exercise of personal jurisdiction over a nonresident defendant unless his contact with the state is such that he has a fair warning that he may be subject to suit there." *BTG Patent Holdings, LLC v. Bag2Go, GmbH*, 193 F. Supp. 3d 1310, 1319 (S.D. Fla. 2016) (citing *Licciardello v. Lovelady*, 544 F.3d

1280, 1284 (11th Cir. 2008)). Federal courts in Florida "apply a three-part test" when determining "whether the exercise of specific jurisdiction affords due process." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1313 (11th Cir. 2018). First, courts "consider whether the plaintiffs have established that their claims 'arise out of or relate to' at least one of the defendant's contacts with the forum." *Id*. Second, courts "ask whether the plaintiffs have demonstrated that the defendant 'purposefully availed' itself of the privilege of conducting activities within the forum state." *Id*. Third, courts "consider whether the defendant has 'made a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.'" *Id*. As explained more fully below, exercising personal jurisdiction over the Peppertree Entities would violate the Due Process Clause.

        a.    <u>Plaintiffs' rescission claim does not "arise out of or relate to" any purported contacts with Florida.</u>

This Court cannot exercise personal jurisdiction over the Peppertree Entities because Plaintiffs' rescission claim does not "arise out of or relate to" any contacts of the Peppertree Entities with Florida. "It is well-established that the phrase 'arising from' requires that the place of injury be within Florida." *Hinkle v. Continental Motors, Inc.*, 268 F. Supp. 3d 1312, 1322 (M.D. Fla. 2017); *see also Clay v. AIG Aerospace Ins. Services, Inc.*, 61 F. Supp. 3d 1255, 1267-70 (M.D. Fla. 2014). Plaintiffs allege that they "have been harmed due to Defendants' efforts to enforce the Framework Agreement, in an amount to be awarded in restitution at trial," Compl. at ¶ 50, but do not even attempt to connect their purported injury to Florida; nor could they. Plaintiffs, like the Peppertree Entities, are, by their own admissions, foreign entities, *see id.* at ¶¶ 6-7, and their only connection to Florida is the fact that they signed the Framework Agreement, to which a Florida-based entity was one of numerous parties. *Id*. at ¶¶ 27-30. There are no allegations demonstrating that Plaintiffs have been harmed within Florida. As such, Plaintiffs' claim does not "arise out of or relate to" any contacts with Florida.

        b.    <u>The Peppertree Entities have not purposefully availed themselves of the privilege of conducting activities in Florida.</u>

The Peppertree Entities do not conduct activities within Florida. Critically, "[p]urposeful availment requires a defendant to have intentionally created a substantial connection with the forum state thus showing a utilization of the privilege to conduct activities within the state." *Frontline International, Inc v. Edelcar, Inc.*, No. 6:10-cv-1351, 2011 WL 13209592, at *3 (M.D.

Fla. June 15, 2011). This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Raymond James & Associates, Inc. v. Lowe's Companies, Inc.*, No. 8:18-cv-26-T-17JSS, 2018 WL 11405464, at *3 (M.D. Fla. Sept. 7, 2018). As such, "[i]t is only when a defendant, by its own actions, creates a substantial connection through significant activities within a State or continuing obligations with the residents of a State, that it is presumptively not unreasonable to require that defendant submit to the burdens of litigation in that forum as well." *Id*.

The Complaint does not allege that the Peppertree Entities purposefully availed themselves of the privilege of conducting activities within Florida. That the Peppertree Entities executed the Framework Agreement, to which a Florida law firm was one of numerous parties, is "random, fortuitous [and] attenuated" and, therefore, "insufficient to establish personal jurisdiction." *Flight Source Intern. Inc. v. Carolex Air, LLC*, No. 8:08-CV-739, 2008 WL 4643319, at *8 (M.D. Fla. Oct. 20, 2008); *see also Jet Charter Services, Inc. v. Koeck*, 907 F.2d 1110, 1113 (11th Cir. 1990) ("The existence of a contractual relationship between a nonresident defendant and a Florida resident is not sufficient in itself to meet the requirements of due process.").

      c. <u>Exercising personal jurisdiction over the Peppertree Entities would violate traditional notions of fair play and substantial justice.</u>

Exercising personal jurisdiction over the Peppertree Entities would violate traditional notions of fair play and substantial justice. When considering this prong, courts must analyze: (1) the burden on the defendant in defending the lawsuit; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies. *Vision Media TV Group, LLC v. Forte*, 724 F. Supp. 2d 1260, 1266-67 (M.D. Fla. 2010). These considerations all weigh in the Peppertree Entities' favor.

First, because the Peppertree Entities do not operate in Florida, "the burden to defend themselves in a Florida lawsuit is high." *Vision Media TV Group, LLC*, 724 F. Supp. 2d at 1267. Second, even assuming Florida possessed some interest in adjudicating this dispute, the Framework Agreement stems from the Shareholders Agreement, which unequivocally states that ***New York*** is the proper venue for resolving disputes among the shareholders. As such, New

York—the contractually agreed-to forum—has significantly more interest in the outcome of this litigation. Third, Plaintiffs' interest in obtaining convenient and effective relief is not furthered by litigating in Florida. In fact, Plaintiffs—like the Peppertree Entities—are not Florida-based entities. Thus, it is not more convenient for Plaintiffs to litigate in Florida. Indeed, Plaintiffs and their counsel have demonstrated no difficulty in litigating this case, robustly so, before the New York-based Tribunal, and they allege no such difficulty in their Complaint here. *See generally* Compl. Fourth, the interstate judicial system's interest in obtaining the most efficient resolution of controversies is not furthered by this litigation being in Florida. To the contrary, the Shareholders Agreement makes clear that this litigation belongs in arbitration in New York. Finally, the "interstate judicial system" will be "better served if" this dispute is litigated in New York, New York, where the parties originally agreed to litigate claims that relate to the Shareholders Agreement. *Northern Ins. Co. of New York v. Construction Navale Bordeaux*, No. 11-60462, 2011 WL 2682950, at *6 (S.D. Fla. July 11, 2011).

### D. Because This Court Lacks Jurisdiction Over the Peppertree Entities and AMLQ—Which are Necessary Parties To This Action—This Court Must Dismiss Plaintiffs' Complaint in Its Entirety.

As demonstrated above, this Court lacks personal jurisdiction over the Peppertree Entities. As such, this Court must dismiss Plaintiffs' Complaint in its entirety because the Peppertree Entities and AMLQ[7] are necessary parties to Plaintiffs' rescission claim, the "essence" of this action. *See* Compl. at Introduction, ¶ 1, and Count I. Indeed, when "challenging the enforceability

---

[7] For the reasons set forth herein, the Complaint similarly fails to allege facts sufficient to show that this Court has general or specific personal jurisdiction over AMLQ. *See generally* Compl; *see also Pavlovich v. New York*, No. 11-80969, 2011 WL 3878353, at *1 (S.D. Fla. Sept. 2, 2011) (dismissing a complaint because the plaintiff failed to carry his "initial burden of pleading enough facts to make out a prima facie case for personal jurisdiction"); *Johnny v. Bornowski*, No. 09-61253, 2009 WL 10666695, at *3 (S.D. Fla. Dec. 22, 2009) (dismissing a complaint because the plaintiff failed "to allege facts sufficient to support th[e] Court's exercise of personal jurisdiction over Defendants"); *East Okeechobee Palms, LLC . Kellam*, No. 9:14-cv-08066, 2015 WL 12977392, at *3 (S.D. Fla. Feb. 23, 2015) (dismissing a complaint because it failed "to allege any basis for asserting personal jurisdiction over any Defendant."). Thus, this Court also does not have personal jurisdiction over AMLQ which, like the Peppertree Entities, is a necessary party to this action because it is one of the Company's shareholders and, pursuant to the Shareholders Agreement, has the right to "appoint an individual to attend meetings of the" Company's Board. Ranieri Decl., Ex. 1 (Shareholders Agreement) at § 4.02(b). In AMLQ's Rule 12 Motion, AMLQ has set forth facts establishing that that it also has no connection to Florida and has joined in the Peppertree Entities' Motion to Dismiss on the basis of lack of personal jurisdiction.

or validity of a contract, joinder of all parties to the contract will typically be required."[8] *Raimbeault v. Accurate Mach. & Tool, LLC*, 302 F.R.D. 675, 684 (S.D. Fla. 2014); *see also Klohr v. Mid-Continent Excess and Surplus Ins. Co.*, No. 18-80761, 2019 WL 2060024, at *2 (S.D. Fla. Mar. 14, 2019) ("Courts in this district routinely hold that parties to a contract are indispensable in actions involving claims for reformation or rescission."). This is true "because the absent contract party has a legally protected interest in the outcome of the litigation" and because the "non joinder of a contract-party would undermine the court's ability to render complete relief among existing parties, since the absent party would not be bound by the court's judgment on the challenged contract." *Raimbeault*, 302 F.R.D. at 684.

Since this Court lacks jurisdiction over the Peppertree Entities and AMLQ—which are indispensable parties to Plaintiffs' rescission claim—this "case cannot proceed without [the Peppertree Entities or AMLQ], and because [they] cannot be joined, this case cannot proceed on the operative [C]omplaint," and it must therefore be dismissed. *Rosales v. Dutschke*, 279 F. Supp. 3d 1084, 1094 (E.D. Cal. 2017); *see also University of Louisville v. Merrill Lynch*, No. 3:17-CV-00212, 2017 WL 5015513, at *5-6 (W.D. Ky. Nov. 2, 2017) (dismissing a plaintiff's complaint because "it lack[ed] personal jurisdiction over Danziger" who "[was] an indispensable party […] who [could not] be joined"); *see also Seven Seas Marine Services WLL v. Remote International Logistics, LLC*, No. H-17-1977, 2018 WL 704993, at *4-5 (S.D. Tex. Feb. 1, 2018) (finding that "Remote Logistics Qatar," a party the court did "not have general or specific personal jurisdiction over," was "an indispensable party" without which "th[e] action [could not], in equity and good conscience, proceed without"). Accordingly, this Court should dismiss Plaintiffs' Complaint in its entirety.

## II. THE PEPPERTREE ENTITIES' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

For the reasons explained more fully in AMLQ's Rule 12 Motion and GSG's Rule 12 Motion, which are fully and expressly incorporated herein and in which the Peppertree Entities join, the Peppertree Entities also respectfully move for an order dismissing Plaintiffs' Complaint, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6). In sum, the Complaint fails

---

[8] Since the Framework Agreement is, in essence, an action by the Company's shareholders and Board agreeing to the engagement of Mr. Schachter and GSG as independent counsel for the Company in the New York-based arbitration under certain terms, only the Company's shareholders and Board representatives (Plaintiffs, Peppertree, and AMLQ) are indispensable parties.

to state a claim upon which relief can be granted, and should be dismissed, for at least the following reasons:

- The Complaint's own allegations and the May 16, 2016 Board Resolution (the "2016 Resolution")—which is signed by both of *Plaintiffs' appointees* to the Company's Board of Directors (the "Board")—conclusively demonstrate that Plaintiffs *knew* what Mr. Gaitán's title was when they executed the Framework Agreement. Such actual knowledge dooms Plaintiffs' Complaint, which is premised entirely on the theory that they "mistakenly" believed Mr. Gaitán was the Company's Chief Executive Officer when they signed the Framework Agreement. Compl. at ¶¶ 31-38.

- Likewise, the Framework Agreement's clear and unambiguous language belies Plaintiffs' "mistake"-based theory. Indeed, upon executing the Framework Agreement, Plaintiffs knew and agreed that Mr. Gaitán was the CEO of the Company for the purposes of that Agreement. *See, e.g.*, Compl., Ex. A (Framework Agreement) at 1 ("Mr. Gaitán will also sign in his capacity as CEO of the company."); Compl. ¶ 28 ("The Framework Agreement stated that [Mr.] Gaitán was the CEO of the Company."). The clear language of the Framework Agreement—like the clear language of the 2016 Resolution—is fatal to Plaintiffs' Complaint because it shows that there was no "mistake" here.

- Plaintiffs are estopped from seeking rescission of the Framework Agreement because they treated it as binding for ***eight months***—from March 19, 2021 to November 22, 2021—without taking any action to modify it or otherwise seek a change in the Company's counsel.

- The Complaint utterly fails to plausibly allege that there was a "mistake," let alone plead "with [the required] particularity the circumstances constituting" the "mistake." Fed. R. Civ. P. 9(b).

### III.     CONCLUSION

For the foregoing reasons, as well as those set forth in AMLQ's Rule 12 Motion and GSG's Rule 12 Motion, Plaintiffs' Complaint should be dismissed in its entirety, with prejudice.

Dated:  April 25, 2022                                  Respectfully submitted,

                                            By:  */s/ Marcos D. Jiménez*
                                            Marcos D. Jiménez
**MARCOS D. JIMÉNEZ, P.A.**
255 Alhambra Circle, 8th Floor
Coral Gables, FL 33134
Phone: (305) 570-3249
mdj@mdjlegal.com

Michael N. Ungar*
Katherine M. Poldneff*
Gregory C. Djordjevic*
**ULMER & BERNE LLP**
1660 W 2nd Street, Suite 1100
Cleveland, OH 44113
Phone: (216) 583-7000
mungar@ulmer.com
kpoldneff@ulmer.com
gdjordjevic@ulmer.com

*Application seeking admission *pro hac vice* forthcoming

*Counsel for Defendants Telecom Business Solution, LLC and LATAM Towers, LLC*

## LOCAL RULE 7.1(a)(3) CERTIFICATION

I HEREBY CERTIFY that, on April 20, 2022 and again on April 21, 2022, I made reasonable efforts to confer with Plaintiffs' and DT Holdings, Inc.'s counsel via email in a good-faith effort to resolve by agreement the issues raised in this motion, and, after conferring, the parties have been unable to do so.  Plaintiffs and DT Holdings, Inc. represented that they were opposed to this motion.  Defendants AMLQ Holdings (Cay) Ltd., Gelberg Schachter & Greenberg, P.A. and Adam Michael Schachter represented that they do not oppose this motion.

                                            */s/ Marcos D. Jiménez*
                                            Marcos D. Jiménez

                                            *Counsel for Defendants Telecom Business Solution, LLC and LATAM Towers, LLC*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 25, 2022, the foregoing was filed through the Court's electronic filing system, which will provide notice of the filing to all counsel of record.

I further certify that on April 25, 2022, a copy of the foregoing was served by Electronic Mail on the following counsel:

> John F. Baughman
> jbaughman@jfblegal.com
>
> George W. Kroup
> gkroup@jfblegal.com
>
> Juan J. Rodriguez
> jrodriguez@careyrodriguez.com
>
> Jennifer M. Hernandez
> jhernandez@careyrodriguez.com

*Counsel for Terra Towers Corp. and TBS Management, S.A.*,

> Allan A. Joseph
> ajoseph@fidjlaw.com

*Counsel for DT Holdings, Inc.*

> Roberto Martinez
> Bob@colson.com
> Stephanie Casey
> scasey@colson.com

*Counsel for Gelber Schachter & Greenberg, P.A. and Adam Schachter*

                                                          */s/ Marcos D. Jiménez*
                                                          Marcos D. Jiménez

                                                          *Counsel for Defendants Telecom*
                                                          *Business Solution, LLC and LATAM*
                                                          *Towers, LLC*