UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **TERRA TOWERS CORP.**, *et al.*, | ) CASE NO. 1:22-cv-21204-RNS |
| | ) |
| *Plaintiffs*, | ) JUDGE ROBERT N. SCOLA, JR. |
| | ) |
| v. | ) MAGISTRATE JUDGE JONATHAN |
| | ) GOODMAN |
| **ADAM MICHAEL SCHACHTER**, *et al.*, | ) |
| | ) |
| | ) |
| *Defendants*. | ) |
| | ) |

**SPECIALLY APPEARING DEFENDANT AMLQ HOLDINGS (CAY) LTD.'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12 AND INCORPORATED MEMORANDUM OF LAW**

Specially Appearing Defendant AMLQ Holdings (Cay) Ltd. ("AMLQ") moves this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6) and (2), for an order dismissing Terra Tower Corp.'s and TBS Management, S.A.'s (collectively, "Plaintiffs") Complaint (ECF No. 1-4). To the extent applicable, AMLQ hereby joins and incorporates by reference the facts and arguments set forth in Specially Appearing Defendants Telecom Business Solution, LLC and LATAM Towers, LLC's (collectively, "Peppertree") Motion to Dismiss the Complaint Pursuant to Federal Rule of Civil Procedure 12 and Incorporated Memorandum of Law ("Peppertree's Rule 12 Motion").

**I.     PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

As explained more fully below, Plaintiffs' Complaint does not state a claim upon which relief can be granted. In sum, Plaintiffs—the majority shareholders of Continental Towers LATAM Holdings Limited (the "Company") that also hold two of the four seats on the Company's Board of Directors (the "Board")—seek rescission of the March 19, 2021 Framework Agreement, an agreement that they voluntarily entered into during an ongoing New York-based arbitration in which they and their counsel have been active participants. As the ground for rescission, they now contend that Jorge Gaitán Castro ("Mr. Gaitán") was not the Company's Chief Executive Officer when he executed the Framework Agreement on behalf of the Company. After signing and then honoring that agreement for many months in connection with the pending arbitration, Plaintiffs—

who control half of the Company's Board, were represented at all times by experienced legal counsel, and knew or should have known who the Company's officers were at all times—now claim that Mr. Gaitán was *not* the CEO at the time, despite *agreeing* that he was the CEO when they signed the Framework Agreement.  Instead, Plaintiffs now allege that they somehow "learned" Mr. Gaitán was *not* the Company's CEO seven months later—on or around October 19, 2021—and that the Framework Agreement, which expressly acknowledged Mr. Gaitán as the CEO at the time, was somehow a "mistake."

To support their contention that Mr. Gaitán was not the Company's CEO when he executed the Framework Agreement, Plaintiffs rely on a written resolution of the Company's Board from *six years ago*—dated May 16, 2016 (the "2016 Resolution")—which states that another individual was appointed as the CEO of the Company *at that time*.  Critically, the 2016 Resolution is *signed by both of Plaintiffs' appointees to the Company's Board.*  Thus, the 2016 Resolution conclusively demonstrates that Plaintiffs had knowledge of Mr. Gaitán's role when they executed the Framework Agreement.  This knowledge is fatal to Plaintiffs' Complaint, which is premised on the theory that they signed the Framework Agreement under the "mistaken" belief that Mr. Gaitán was the Company's CEO in March 2021.  Stated differently, because Plaintiffs *knew* the role that Mr. Gaitán occupied when they executed the Framework Agreement, there can be no "mistake."

Moreover, regardless of any changes to Mr. Gaitán's role in the past, all parties knew and agreed—clearly and unmistakably—that Mr. Gaitán was once again the CEO for purposes of signing the Framework Agreement.  As a result, Plaintiffs cannot now plausibly claim "mistake" based on a Board resolution from six years ago, when all parties—including Plaintiffs—unambiguously stated their agreement as to Mr. Gaitán's current role as of March 2021.

Plaintiffs' gossamer allegations of "mistake" cannot withstand scrutiny, and the Complaint should be dismissed with prejudice—regardless of whether this Court applies Florida law or New York law for the reasons discussed below.[1]

---

[1]     As set forth in Defendants' Motion to Transfer Venue, filed concurrently herewith, this case should be transferred to the Southern District of New York, where Peppertree/AMLQ's and Plaintiffs' cross petitions to confirm and vacate the arbitral tribunal's Final Partial Award and certain other orders are already pending.  In the event the Court does not grant the Motion to Transfer Venue, it need not reach the instant Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) if it dismisses this action pursuant to either Defendants' Motion to Compel Arbitration, which shall be forthcoming, or Peppertree's and AMLQ's Motions to Dismiss for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), filed concurrently herewith.

### A. Factual Background

Plaintiffs are the majority shareholders of the Company and, pursuant to the Shareholders Agreement, they have the "right to appoint two members to the Board of the Company." Compl. ¶ 19. Peppertree/AMLQ are the minority shareholders of the Company, and Peppertree also has the "right to appoint two members" to the Company's Board. *Id*. On October 22, 2015, Plaintiffs and Peppertree/AMLQ executed a Shareholders Agreement, appointing Mr. Gaitán as the initial CEO of the Company. *Id*. ¶ 21. On May 16, 2016, the Company's Board—which consists of two members appointed by Plaintiffs and two members appointed by Peppertree—signed a document entitled: "Written Resolutions of the Directors," which removed Mr. Gaitán from his then-role as CEO of the Company, and appointed him instead to a role as the Company's Chief Operating Officer. *Id*. ¶ 33; *see also* Compl., Ex. B (the 2016 Resolution).

On February 2, 2021, Peppertree filed a Demand for Arbitration and Statement of Claim with the American Arbitration Association against Plaintiffs, DT Holdings, Inc. ("DTH"),[2] Plaintiffs' directors who serve on the Company's Board, the Company (as a nominal party), and AMLQ (as a notice party). *Id*. ¶ 24. On or about March 9, 2021, Mr. Gaitán, on behalf of the Company, retained Adam Schachter ("Mr. Schachter") and Gelber Schachter & Greenberg, P.A. ("GSG") as independent counsel for the Company in the arbitration. *Id*. ¶ 26. Shortly thereafter, on March 19, 2021 all parties to the arbitration—including Plaintiffs—executed the Framework Agreement. *Id*. ¶ 27. By executing the Framework Agreement, all parties to the New York-based arbitration—including Plaintiffs, in their capacities as the Company's majority shareholders and two of the four members of the Company's Board—clearly and unambiguously agreed that: (i) **Mr. Gaitán was the Company's CEO on March 19, 2021**; (ii) Mr. Gaitán had the authority to retain independent counsel for the Company to represent it in the arbitration; and (iii) Mr. Schachter and GSG were acceptable to the Company's shareholders and members of the Company's Board, and could serve as independent counsel for the Company in the arbitration. *See generally id*., Ex. A.

---

AMLQ is filing the current Motion in compliance with Fed. R. Civ. P. 81(c)(2)(C) and by filing this Motion, AMLQ does not waive, and hereby expressly reserves, it right to file the forthcoming Motion to Compel Arbitration and make all arguments set forth therein.

[2] For the reasons set out in the Joint Notice of Removal, although listed as a defendant here, DTH is an affiliate of, and aligned with, Plaintiffs. *See* ECF No. 1, at 8, 14-15.

Plaintiffs, undoubtedly satisfied with their decision to execute the Framework Agreement, took no action to modify the Framework Agreement or otherwise seek a change in the Company's counsel *for 8 months*—from March 19, 2021 to November 22, 2021.  Compl. ¶¶ 27, 35.  However, on November 22, 2021, Plaintiffs sent a letter to Mr. Schachter claiming, unilaterally, that the Framework Agreement was void and without effect or, alternatively, that Plaintiffs withdrew from the Framework Agreement.  *Id*. ¶ 35.

Plaintiffs then filed the instant action in Florida state court challenging the Framework Agreement on the same grounds.  Plaintiffs named as defendants all parties to the Framework Agreement, including Peppertree, AMLQ, GSG, Mr. Schachter, the Company, and Terra's affiliate and fellow respondent in the Arbitration, DTH.  Plaintiffs contend that the Framework Agreement is void and without effect based on an impossible premise that "Plaintiffs and Defendants erroneously believed that [Mr.] Gaitan was the Company's CEO" when he actually "was not."  *Id*. ¶¶ 40-41.  For this proposition, Plaintiffs point solely to the six-year-old 2016 Resolution changing Mr. Gaitán's title from CEO to COO.  *Id*. ¶¶ 32-33.  Plaintiffs allege that their clear and unambiguous agreement to Mr. Gaitán executing the Framework Agreement in March 2021 *in his capacity as CEO of the Company* was somehow a "mutual mistake of fact" and, to the extent Defendants "were aware that [Mr.] Gaitan was not the CEO of the Company, the Framework Agreement should be voided on the grounds of unilateral mistake of fact."  *Id*. ¶¶ 44-45.  Based on these allegations, Plaintiffs ask this Court to rescind the Framework Agreement (Count I), and they also seek to enjoin Mr. Schachter and GSG "from taking any further direction from [Mr.] Gaitan pursuant to the Framework Agreement" (Count II).  *Id*. ¶ 54.

On April 18, 2022, Defendants Peppertree, AMLQ, Mr. Schachter, and GSG removed this action on the basis of federal question jurisdiction under the New York Convention, 9 U.S.C. § 205.  *See* ECF No. 1.  Meanwhile, the New York Arbitration remains open and active, and cross-petitions to confirm and vacate a partial final award in the Arbitration are pending in the Southern District of New York.  *See Telecom Business Solution, LLC, et al. v. Terra Towers Corp., et al.*, Case No. 1:22-cv-01761 (S.D.N.Y.).  Accordingly, together with this Motion and Peppertree's Rule 12 Motion, Peppertree, AMLQ, Mr. Schachter, and GSG are filing the following motions: (1) Motion to Compel Arbitration and Dismiss the Complaint or, in the Alternative, Stay the Proceedings Pending Arbitration, which shall be forthcoming; and (2) Motion to Transfer Venue to the Southern District of New York, filed contemporaneously herewith.

**B.     Law and Argument**

  **1.     *Legal Standard*[3]**

  A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "is a motion attacking the legal sufficiency of a complaint." *Ruehl v. Boston Scientific Corporation*, No. 13-60906, 2013 WL 12092102, at *1 (S.D. Fla. Nov. 6, 2013). In order to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is ***plausible on its face***." *Fernandez v. Bruno Northfleet, Inc.*, No. 21-80609, 2021 WL 4851378, at *2 (S.D. Fla. Oct. 18, 2021) (emphasis added). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Lucas v. Account Services Collections, Inc.*, No. 17-60146, 2018 WL 1863624, at *2 (S.D. Fla. Jan. 23, 2018); *see also Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016) ("claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Critically, this plausibility determination is "a context-specific task that requiring the reviewing court to draw on its ***judicial experience and common sense***." *Bettor v. Penn credit Corp.*, No. 18-60819, 2018 WL 6573283, at *1 (S.D. Fla. Aug. 24, 2018) (emphasis added). "A court ***must*** dismiss a plaintiff's complaint if it fails to nudge its 'claims across the line from ***conceivable to plausible***.'" *Cafe Int'l Holding Co. v. Westchester Surplus Lines Ins. Co.*, 536 F. Supp. 3d 1291, 1298 (S.D. Fla. 2021) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphases added).

---

[3]   If this Court grants Peppertree/AMLQ's Motion to Transfer Venue to the Southern District of New York, the standard for deciding a Rule 12(b)(6) motion under Second Circuit law is nearly identical to the standard applied in the Eleventh Circuit. *See, e.g., Lamda Solutions Corp. v. HSBC Bank USA, N.A.*, No. 1:21-cv-2259, 2021 WL 5772289, at *2 (S.D.N.Y. Dec. 6, 2021) ("[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plusiable on its face"); *see also Humphrey v. Lamb*, No. 16-cv-7965, 2018 WL 1363499, at *1 (S.D.N.Y. Mar. 14, 2018) ( a "claim is facially plausible when the factual content pleaded allows a court to draw a reasonable inference that the defendant is liable for the misconduct alleged"); *BankUnited, N.A. v. Merritt Environmental Consulting Corp.*, 360 F. Supp. 3d 172, 183 (S.D.N.Y. 2018) ("Deciding whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its ***judicial experience and common sense***." (emphasis added)).

### 2. The Complaint Fails Under New York Law.

#### a. New York Law Governs Plaintiffs' Rescission Claim.

As an initial matter, New York law governs Plaintiffs' rescission claim. The Shareholders Agreement, which is incorporated by reference in the Complaint, *see* Compl. ¶ 18, contains a New York choice-of-law provision. *See* Ex. A § 8.10 ("This Agreement will be governed by and construed in accordance with the Laws of the State of New York, United States without giving effect to any choice or conflict of law provision or rule (whether of the State of New York or any other jurisdiction)."). Because the Framework Agreement is effectively a resolution of the Company's Board arising from the Shareholders Agreement, and its sole purpose relates to legal representation in the New York arbitration proceeding, New York law applies.

#### b. The Purported "Mistake" Was a Result of Plaintiffs' Own Negligence and, as Such, Not Actionable Under New York Law.

Under established New York law, Plaintiffs cannot rescind where the purported "mistake" was a result of their own negligence. To start, under New York law, "[r]ecission of a contract is an extraordinary remedy." *Pina v. Sony Discos, Inc.*, No. 97 Civ. 6445, 1999 WL 349962, at *4 (S.D.N.Y. May 28, 1999); *see also Logfret, Inc. v. Gerber Finance, Inc.*, No. 20 Civ. 7142, 2021 WL 4135151, at *12 (S.D.N.Y. Sept. 10, 2021) (dismissing a claim for recission because the plaintiff "failed to plead facts that this 'extraodinary' remedy would be warranted" based on the facts alleged.). The Complaint falls far short of demonstrating that Plaintiffs are entitled to the extraordinary remedy of recission.

Moreover, the doctrine of mutual mistake "**may not be invoked by a party to avoid the consequences of its own negligence**." *Eisenberg v. Hall*, 147 A.D.3d 602, 604 (1st Dept. 2017) (emphasis added); *see also P.K Development, Inc. v. Elvem Development Corp.*, 226 A.D.2d 200, 201 (1st Dept. 1996) ("While mututal mistake will justify rescission where the mistake exists at the time the contract is entered into and the mistake is substantial . . . **it may not be invoked by a party to avoid the consequences of its own negligence**.") (Emphasis added). Indeed, "[e]ven where a party must go beyond its own efforts in order to ascertain relevant facts (such as obtaining experts' reports), courts have held that the party must bear the risk of mistake if it chooses to act on its otherwise limited knowledge." *De Sole v. Knoedler Gallery*, LLC, 139 F. Supp. 3d 618, 663 (S.D.N.Y. Oct. 9, 2015).

Here, it is undeniable that Plaintiffs had *knowledge* of Mr. Gaitán's role at the Company

when they executed the Framework Agreement in March 2021. Compl., Ex. B. Indeed, the 2016 Resolution—which is executed by both of Plaintiffs' Board members and is the linchpin of Plaintiffs' claim of "mistake"—conclusively demonstrates that Plaintiffs knew what Mr. Gaitán's title was when they executed the Framework Agreement. This knowledge, which contradicts Plaintiffs' conclusory allegations that there was a "mistake," is fatal to Plaintiffs' Complaint. *See, e.g., Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011) ("where a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true"); *Sabol v. Bayer Healthcare Pharm., Inc.*, 439 F. Supp. 3d 131, 148 (S.D.N.Y. 2020) ("Because the FDA's 2018 notice, attached to the Amended Complaint, directly contradicts Sabol's conclusory allegations, the Court need not accept these allegations as true.").

Despite their knowledge, Plaintiffs, including their own counsel, nonetheless **agreed** that Mr. Gaitán was the Company's CEO when they executed the Framework Agreement. Plaintiffs' rescission claim—to the extent that it is premised on a "mutual mistake" theory—fails as a matter of law because, if anything, the purported "mistaken" belief "was the result of [Plaintiffs'] negligence and a failure to adequately investigate before contracting." *Blum v. Spaha Capital Management, LLC*, 44 F. Supp. 3d 482, 495 (S.D.N.Y. 2014).

In addition, "New York law does not permit reformation or recission of a contract for unilateral mistake alone"—the "unilateral mistake must be coupled with some fraud." *Travelers Indem. Co. of Illinois v. CDL Hotels USA, Inc.*, 322 F. Supp. 2d 482, 498 (S.D.N.Y. 2004); *see also Kotick v. Shvachko*, 14 A.D.3d 472, 473 (1st Dep't 2015) ("The dismissal of Shvachko's defense of unilateral mistake was also correct, since a unilateral mistake alone is an insufficient basis for relief"); *Colonial Funding Network, Inc. for TVT Capital, LLC v. Epazz, Inc.*, 252 F. Supp.3d 274, 285 (S.D.N.Y. 2017) (dimissing defendants' counterclaim for recission based on unilateral mistake "[b]ecause defendants cannot establish fraud.").

Here, Plaintiffs do not—and, indeed, cannot—allege that that Defendants engaged in fraudulent conduct. *See generally* Compl. To the contrary, the Complaint and the 2016 Resolution conclusively establish that Plaintiffs had knowledge of Mr. Gaitán's title and agreed that he was CEO when they signed the Framework Agreement. Thus, any purported unilateral mistake was

7

the product of Plaintiffs' own negligence.[4] And, under New York law, "recission of a contract is not appropriate where a unilateral mistake is the product of negligence." *Colonial Funding Network, Inc. for TVT Capital, LLC*, 252 F. Supp. 3d at 285; *see also NCR Corp. v. Lemelson Medical, Edu. and Research Foundation*, No. 99-cv-3017, 2001 WL 1911024, at *7 (S.D.N.Y. Apr. 2, 2001) ("rescission of a contract is not appropriate where a unilateral mistake is the product of negligence.").

### 3. *The Complaint Also Fails Under Florida Law.*

In the alternative, even if Florida law applies to Plaintiff's rescission claim,[5] Plaintiffs' Complaint still fails. Under Florida law, to state a claim for rescission of a contract, a Plaintiff must plead facts to support the following elements: "(1) the character or relationship of the parties; (2) the making of a contract; (3) the existence of fraud, mutual mistake, false representation, impossibility of performance, or other ground for rescission or cancellation; (4) the party seeking rescission had rescinded the contract and notified the other party; (5) the moving party has received benefits from the contract, he should further allege an offer to restore these benefits to the party furnishing them, if restoration is possible; and (6) the moving party has no adequate remedy at law." *Longo v. Campus Advantage, Inc.*, No. 8:20-cv-2651, 2022 WL 605304, at *3 (M.D. Fla. Mar. 1, 2022); *see also Kaye v. Ingenio, Filale Do Loto-Quebec, Inc.*, No. 13-61687, 2014 WL 2215770, at *7 (S.D. Fla. May 29, 2014) (same). Under well-established Florida law, rescission is a "harsh remed[y] and therefore not favored by the courts." *Rood Co. v. Board of Public Instruction of Dade County*, 102 So.2d 139,142 (1958); *see also Steinberg v. Bay Terra Apartment Hotel, Inc.*, 375 So.2d 1089, 1092 (Fla. 3d DCA 1979) (stating "the remedy of rescission is clearly

---

[4] Plaintiffs' conclusory allegation that the purported mistake "did not result from negligence or want of due care on the part of Plaintiffs" is belied by the other allegations and documents before the Court and must be disregarded. *See, e.g., Mahdavieh v. Suntrust Mortg., Inc.*, No. 13-62801, 2014 WL 1365425, at *2 (S.D. Fla. Apr. 7, 2014) (stating that "conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal."). Indeed, Plaintiffs' narrative could only arise from their failure to comprehend their ***own*** unambiguous agreement to Mr. Gaitán's role as CEO in March 2021.

[5] The question of whether a contractual choice-of-law provision controls when rescission is sought is unsettled in Florida. *See Talisman Capital Alternative Investments Fund, Ltd. v. Mouttet*, 10-24577-CIV, 2011 WL 13223533, at *6 (S.D. Fla. Dec. 20, 2011). However, the Court need not resolve this issue because the result—dismissal with prejudice—is the same under both Florida or New York law.

8

not favored by the courts, particularly when the complaining party has failed to promptly deny the contract as binding upon him and failed to follow a course of conduct manifesting a disavowal of it"); *Government of Aruba v. Sanchez*, 216 F. Supp. 2d 1320, 1365 (S.D. Fla. 2002) ("Under Florida law rescission is a harsh remedy which lies within the sound discretion of the court and is not available as a matter of right.").

      Plaintiffs' rescission claim, which is based on the theory that there was either a "mutual mistake of material fact" or a "unilateral mistake of fact," *id*. ¶¶ 44-45, fails as a matter of law because the Complaint clearly demonstrates that there was no such "mistake." The 2016 Resolution—which is executed by both of Plaintiffs' Board members and the linchpin of Plaintiffs' claim of "mistake"—conclusively demonstrates that Plaintiffs knew Mr. Gaitán's previous title was COO when they executed the Framework Agreement. This knowledge, which contradicts Plaintiffs' conclusory allegations that there was a "mistake," dooms Plaintiffs' Complaint. *See Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) ("when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern"); *Walsky v. Monel, Inc.*, No. 12-23031, 2012 WL 4338868, at *2 (S.D. Fla. Sept. 20, 2012) ("while courts accept the facts in a complaint as true in considering a motion to dismiss, the allegations can be trumped by contradictory facts presented in an exhibit or attachment to the pleading."). Tellingly, Plaintiffs allege neither that they were not in possession of the 2016 Resolution when they executed the Framework Agreement in March 2021, nor that they lacked knowledge of the 2016 Resolution when it was executed. Of course, they cannot plausibly do so. Plaintiffs' Directors and Board representatives Jorge Hernandez and Alberto Arzu, *both* of whom are parties to the underlying arbitration, executed the 2016 Resolution on Plaintiffs' behalf. *See* Compl., Ex. A (Framework Agreement).

      In addition, clearly and unmistakably, when they signed the Framework Agreement in March 2021, all parties—including Plaintiffs—knew and agreed that Mr. Gaitán was the CEO of the Company for purposes of signing that agreement. *See, e.g.*, Compl., Ex. A (Framework Agreement) at 1 ("Mr. Gaitan will also sign in his capacity as CEO of the company."); Compl. ¶ 28 ("The Framework Agreement stated that [Mr.] Gaitán was the CEO of the Company."). Counsel for Plaintiffs even signed their names on the same signature page where "Chief Executive Officer" was written under Mr. Gaitán's name. *See id.* at 4. In executing that agreement, Plaintiffs stated their agreement of Mr. Gaitán's role as CEO and cannot now claim "mistake" based on a

Board resolution from six years ago. The Framework Agreement, which is attached to Plaintiffs' Complaint, is clear and unambiguous on its face about the parties' intentions and Mr. Gaitán's role as CEO, regardless of Plaintiffs' allegation in the Complaint that they entered into the Framework Agreement by "mistake." *See* Compl., Ex. A (Framework Agreement); *see also Griffin Indus., Inc. v. Irvin* at 1206; *Walsky v. Monel, Inc.*, at *2.

Indeed, Plaintiffs knowingly and willingly executed the Framework Agreement, and they knowingly and willingly permitted Mr. Gaitán—in his stated capacity as the Company's CEO—to retain independent counsel for the Company in the New York-based arbitration. *See* Compl., Exs. A and B. Plaintiffs then treated the Framework Agreement as binding for ***8 months***—from March 19, 2021 to November 22, 2021—until it was no longer convenient for them to do so. *Id*. ¶¶ 27, 35.

In reality, Plaintiffs are simply asking this Court to invoke its equitable powers and nullify an agreement to which they no longer wish to be bound. Because the 2016 Resolution, the Framework Agreement, and Plaintiffs' own allegations conclusively establish that there was no "mistake" here—mutual or otherwise—Plaintiffs' claim for rescission fails as a matter of law. *See, e.g., Auto-Owners Ins. Co. v. Lexington Ins. Co*., No. 10-81031, 2011 WL 13268494, at *4 (S.D. Fla. Feb. 2, 2011) (finding that a plaintiff failed to "plead facts sufficient to state a claim grounded in mutual mistake" because the plaintiff "did not plead that there was a scrivener's error or inadvertence within the settlement agreement that was different than the terms agreed to in the settlement conference"); *see also Graham v. Clyde*, 61 So. 2d 656, 657 (Fla. 1952) ("[i]f the one seeking relief could have avoided his mistake by reasonable care or diligence, a court of equity will not relieve him"); *BMW of North America, Inc. v. Krathen*, 741 So.3d 585, 588 (Fla. 4th DCA 1985) (stating that a contract may only be rescinded unilaterally if "the mistake is the ***result of an inexcusable lack of due care***") (emphasis added); *see also* 11 Fla. Jur 2d Contracts § 52 (stating that "[a] party may rescind a contract based on unilateral mistake ***unless the mistake results from an inexcusable lack of due care***") (emphasis added); *Flynt v. Progressive Consumers Ins. Co.*, 980 So. 2d 1217 (Fla. 5th DCA 2008) (noting that "Florida law permits a party to rescind a contract based on unilateral mistake unless the mistake results from an inexcusable lack of due care . . .").

### 4. ***Plaintiffs Are Estopped from Prosecuting Their Rescission Claim Under Both New York Law and Florida Law.***

Plaintiffs are also estopped from seeking rescission of the Framework Agreement because

they treated it as binding for *eight months*—from March 19, 2021 to November 22, 2021—without taking any action to modify it or otherwise seek a change in the Company's counsel. And Plaintiffs only challenged it in November 2021—and, then, in the pending arbitration—because they believed it was no longer helpful to their case.[6] Courts have made clear that "any action for rescission must be initiated without unreasonable delay." *GuideOne Specialty Mut. Ins. Co. v. Congregation Adas Yereim*, 593 F. Supp. 2d 471, 483 (E.D.N.Y. 2009) (quoting *Ballow, Brasted, O'Brien & Rusin, P.C. v. Logan*, 435 F.3d 235, 240 (2d Cir. 2006)); *Republic Ins. Co. v. Masters, Mates, Pilots Pension Plan*, 77 F.3d 48, 52 (2d Cir. 1996) ("[T]he law requires that the right to rescind be promptly exercised."); *see also Saitta v. New York City Transit Auth. et al.*, 55 A.D.3d 422, 423 (1st Dep't 2008) (holding that, after learning the information justifying rescission, an insurer's *four month delay* in seeking it was unreasonable as a matter of law and was likewise grounds for estoppel); *see also Energen v. Marathon Country Club Condo. W. Ass'n Inc.*, 525 So. 2d 388 (Fla 3d DCA 1988) (estoppel available as a defense under Florida law). Because all parties have been "operating under" this Framework Agreement since March 2021, *see* Compl. ¶ 3, Plaintiffs' rescission claim—raised for the first time eight months later—is plainly barred by estoppel.

### 5. *Plaintiffs' Complaint Fails to Plead "Mistake" With the Requisite Particularity.*

Because there was no "mistake" here, Plaintiffs cannot meet any pleading standard—much less the heightened standard required when pleading mistake. Plaintiffs must, pursuant to Rule 9(b), allege "***with particularity*** the circumstances constituting [the] […] ***mistake***." (Emphases added). Plaintiffs' conclusory allegations fall far short of this heightened standard.

Plaintiffs' Complaint is utterly devoid of any factual allegations that support its bare

---

[6] As discussed in Defendants' forthcoming Motion to Compel Arbitration, the Tribunal in the Arbitration has already resolved the exact dispute raised in the Complaint. For months, Plaintiffs tried—unsuccessfully—to replace Mr. Schachter and GSG with non-neutral counsel who is not bound by the Framework Agreement. But the Tribunal—comprised of three highly experienced and qualified arbitrators—has already rejected their plan and ruled adverse to them on the very same "mistake of fact" issue presented in this litigation. As a result, Plaintiffs' claims are also barred under the doctrine of collateral estoppel. *See Topps v. State*, 865 So. 2d 1253, 1255 (Fla. 2004) ("[I]n Florida, the doctrine of collateral estoppel bars relitigation of the same issues between the same parties in connection with a different cause of action."); *Coffey v. CRP/Extell Parcel I, L.P.*, 117 A.D.3d 585 (2014) (same).

assertions that "Plaintiffs and Defendants erroneously believed that [Mr.] Gaitán was the Company's CEO" or that "[t]he parties were mistaken" about Mr. Gaitán's title. Compl. ¶¶ 40, 41; *see also id.* ¶ 4 ("The other parties to the Framework Agreement, including Plaintiffs, were induced to enter into the agreement by this material mistake of fact."); *id.* ¶ 44 ("this mutual mistake of material fact was the result of the unconscious ignorance of the parties at the time of the execution of the Framework Agreement . . . ."). Because Plaintiffs' allegations fail to provide the specificity required by Rule 9(b), their claim for recission must be dismissed. *See, e.g.*, *Francois*, Civ. Action No. 21-22528, 2021 WL 4502336, at *7 (S.D. Fla. Sept. 30, 2021) (dismissing a claim for rescission because conclusory allegations of mistake without any allegations as to "how or why" the non-moving party was mistaken are insufficient under Rule 9(b)'s heightened requirements); *Barber v. America's Wholesale Lender*, Case No: 8:12-cv-01124-T-27TBM, 2013 WL 1149316, at *4 (M.D. Fla. Mar. 18, 2013) (dismissing a claim for rescission based on a mistake, in part, due to failure to plead "specific allegations identifying the factual basis supporting each of the elements of Plaintiffs' claim of mistake").[7]

### 6. Because Count I, Plaintiffs' Claim for Rescission, Fails as a Matter of Law, Count II, Plaintiffs' Claim for Injunctive Relief, Necessarily Fails as a Matter of Law as Well.

Plaintiffs' claim for injunctive relief (Count II) is entirely premised on a finding that "the Framework Agreement is unenforcable." Compl. ¶ 53. However, as demonstated above, the Framework Agreement is not unenforcable due to a purported "mistake," and Plaintiffs' claim for rescission fails as a matter of law. As such, Plaintiffs' claim for injunctive relief must also fail as a matter of law.

Although Plaintiffs have not separately brought a claim for fraud in the inducement, such a claim fails as a basis for an injunction. In order to plead fraud in the inducement, Plaintiffs must allege: (1) a false statement concerning a material fact; (2) the representor's knowledge that the

---

[7]  Second Circuit law is in accord. *See, e.g. Mills v. Everest Reinsurance Co.*, 410 F. Supp. 2d 243, 248 (S.D.N.Y. 2006) (dismissing a plaintiff's mistake-based claim because the plaintiff "fail[ed] to allege any facts whatever regarding: (1) which individual representatives of Frontier, Everest and/or Blanche mistakenly concluded that the contract satisfied FAS 113 and the Statement and/or was based on fair consideration, (2) the precise nature of their misunderstanding, or (3) when and where this alleged mistake occurred"); *Core-Mark Intern. Corp. v. Commonwealth Ins. Co.*, No. 05 Civ. 0183, 2006 WL 2501884, at *8 (S.D.N.Y. Aug. 30, 2006) (finding that a claim for mutual mistake failed as a matter of law because "the Amended Complaint fails to plead mutual mistake at all, let alone with the particularity required by Rule 9(b).").

representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation. *See Moriber Dreiling*, 194 So.3d 369, 373 (Fla. 3d DCA 2016). Plaintiffs do not attempt to allege facts to support any of these material elements. *See generally* Compl. Even if the Complaint did contain such allegations (it does not), the allegations are not stated with the requisite particularity. Fed. R. Civ. P. 9(b) (stating that "a party must state with particularity the circumstances constituting ***fraud or mistake***") (emphasis added).

\* \* \*

For all of the foregoing reasons, AMLQ respectfully requests that the Court dismiss Plaintiffs' Complaint in its entirety, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO JOIN NECESSARY PARTIES UNDER RULE 19

As set forth in Peppertree's Rule 12 Motion, incorporated herein by reference, Plaintiffs' Complaint should also be dismissed for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and failure to join necessary parties under Rule 19. AMLQ is a Cayman Island Exempted Company Limited by Shares. *See* Declaration of Carey Ziegler, dated April 21, 2022 ("Ziegler Decl."), filed herewith, ¶ 4. Its principal place of business is in New York, New York. *Id.* As with Peppertree, AMLQ does not have any connection to Florida. *Id.* ¶ 6. Like Peppertree, AMLQ does not do any business in Florida; it does not have a presence in Florida; it does not have any Florida-based employees; it does not have any Florida-based offices; it does not provide any services to any Florida-based individuals or businesses; it does not provide any goods to any Florida-based individuals or businesses; it does not carry on any business in Florida; it does not possess or maintain licenses to do business in Florida; it has no investments in Florida; and it does not generate any revenue from Florida. *Id.* Accordingly, this Court does not have personal jurisdiction over AMLQ. As set forth in Peppertree's Rule 12 Motion, Peppertree/AMLQ are both necessary and indispensable parties to this action. Thus, once they are properly dismissed, this action ***cannot*** continue in either Peppertree's or AMLQ's absence, and the Court should dismiss Plaintiffs' Complaint in its entirety.

### III. CONCLUSION

For the foregoing reasons, and the reasons set forth in Peppertree's Rule 12 Motion, Plaintiffs' Complaint should be dismissed in its entirety with prejudice.

Dated:  April 25, 2022                                           Respectfully submitted,

By: /s/ *Marcos D. Jiménez*
Marcos D. Jiménez
**MARCOS D. JIMÉNEZ, P.A.**
255 Alhambra Circle, 8th Floor
Coral Gables, FL 33134
Phone: (305) 570-3249
mdj@mdjlegal.com

Gregg L. Weiner*
Ethan R. Fitzgerald*
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, NY 10036-8704
Phone: (212) 596-9000
Gregg.Weiner@ropesgray.com
Ethan.Fitzgerald@ropesgray.com

Daniel V. Ward*
Katherine M. McDonald*
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston St.
Boston, MA 02199
Phone: (617) 951-7000
Daniel.Ward@ropesgray.com
Katherine.McDonald@ropesgray.com

*Application seeking admission *pro hac vice* forthcoming

*Counsel for Defendant AMLQ Holdings (Cay), Ltd.*

## **LOCAL RULE 7.1(A)(3) CERTIFICATION**

I HEREBY CERTIFY that, on April 20, 2022 and again on April 21, 2022, I made reasonable efforts to confer with Plaintiffs' and DT Holdings, Inc.'s counsel via email in a good-faith effort to resolve by agreement the issues raised in this motion, and, after conferring, the parties have been unable to do so. Mr. Schachter, GSG, and Peppertree represented that they do not oppose this motion.

                                                            /s/ *Marcos D. Jiménez*
                                                          Marcos D. Jiménez

                                                          *Counsel AMLQ Holdings (Cay), Ltd.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 25, 2022, the foregoing was filed through the Court's electronic filing system, which will provide notice of the filing to all counsel of record.

I further certify that I shall serve a copy of the foregoing by Electronic Mail to the following counsel:

> John F. Baughman
> jbaughman@jfblegal.com
>
> George W. Kroup
> gkroup@jfblegal.com
>
> Juan J. Rodriguez
> jrodriguez@careyrodriguez.com
>
> Jennifer M. Hernandez
> jhernandez@careyrodriguez.com

*Counsel for Terra Towers Corp. and TBS Management, S.A.*,

> Allan A. Joseph
> ajoseph@fidjlaw.com

*Counsel for DT Holdings, Inc.*

> Roberto Martinez
> bob@colson.com
> Stephanie Casey
> scasey@colson.com

*Counsel for Gelber Schachter & Greenberg, P.A. and Adam Schachter*

                                          */s/ Marcos D. Jiménez*
                                          Marcos D. Jiménez

                                          *Counsel for AMLQ Holdings (Cay), Ltd.*