# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 22-CV-21204-SCOLA/GOODMAN

------------------------------------------------------------------ X

**TERRA TOWERS CORP.,** *et al.,*

        *Plaintiffs*,

    **v.**

**ADAM MICHAEL SCHACHTER,** *et al.*,

        *Defendants*.

------------------------------------------------------------------ X


**SPECIALLY APPEARING DEFENDANTS TELECOM BUSINESS
SOLUTION, LLC'S, LATAM TOWERS, LLC'S, AND
AMLQ HOLDINGS (CAY), LTD.'S, AND DEFENDANTS ADAM M.
SCHACHTER'S, AND GELBER SCHACHTER & GREENBERG, P.A.'S
MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE,
STAY THE PROCEEDINGS PENDING ARBITRATION**

## <u>TABLE OF CONTENTS</u>

**PRELIMINARY STATEMENT** ................................................................................................ 1

**BACKGROUND** ...................................................................................................................... 2

    A.    The Parties' Arbitration Agreement Governs This Dispute. ...................................... 2

    B.    The Allegations in Plaintiffs' Complaint Constitute a "Dispute" Among the Parties That is Subject to Arbitration. ...................................................................... 3

    C.    Plaintiffs' Claims Here Are Already Before the Tribunal. ........................................ 5

    D.    The Arbitration Tribunal has Already Decided the Issues Plaintiffs Now Seek to Re-litigate in This Court, and Related Issues Remain Pending in the Arbitration. ............ 7

**ARGUMENT** ........................................................................................................................... 9

I.     FEDERAL LAW REQUIRES THAT THE COMPLAINT BE DISMISSED OR, IN THE ALTERNATIVE, STAYED. ............................................................................... 9

II.    THE ARBITRATION PROVISION IS ENFORCEABLE UNDER FEDERAL LAW AS AN AGREEMENT WITHIN THE SCOPE OF THE NEW YORK CONVENTION. ..... 11

    A.    The Arbitration Agreement Here Easily Satisfies the Convention's Four Jurisdictional Prerequisites. ................................................................................. 12

    B.    Plaintiffs Long Ago Conceded That the Arbitration Agreement is Binding and Enforceable. ........................................................................................................ 13

III.   JURISDICTION TO DETERMINE ARBITRABILITY IS VESTED IN THE ARBITRATOR, BUT IN ANY EVENT, PLAINTIFFS' CLAIMS ARE ARBITRABLE. ................................................................................................................ 13

    A.    The Tribunal Has Already Determined That This Dispute is Arbitrable. ................ 14

    B.    While the Arbitrability of Terra's Claims is a Matter for the Tribunal, the Claims are Arbitrable No Matter Who Determines Arbitrability. ................................. 14

IV.   PLAINTIFFS WAIVED THE ABILITY TO LITIGATE their CHALLENGE. ............. 16

V.    PLAINTIFFS MAY NOT PLEAD AROUND THE BINDING ARBITRATION PROVISION BY JOINING NON-SIGNATORIES. ........................................................ 17

VI.   THE ISSUES RAISED IN PLAINTIFFS' COMPLAINT SHOULD CONTINUE TO BE ADDRESSED BY THE TRIBUNAL. .............................................................. 19

**CONCLUSION** ..................................................................................................................... 20

**LOCAL RULE 7.1(A)(3) CERTIFICATION** ...................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                    **Page(s)**

*Azevedo v. Carnival Corp.*,
    No. 08-20518-CiV, 2008 WL 2261195 (S.D. Fla. May 30, 2008)..........................................12

*Baptist Hosp. of Miami, Inc. v. Medical Healthcare Plans, Inc.*,
    376 F. Supp. 3d 1298 (S.D. Fla. 2019) ...............................................................................13

*Bautista v. Star Cruises*,
    396 F.3d 1289 (11th Cir. 2005) ...........................................................................................11

*Caley v. Gulfstream Aerospace Corp.*,
    333 F. Supp. 2d 1367 (N.D. Ga. 2004), *aff'd*, 428 F.3d 1359 (11th Cir. 2005) .....................19

*Carroll v. LeBoeuf, Lamb, Greene & McCrae*,
    374 F. Supp. 2d 375 (S.D.N.Y. 2005).................................................................................18

*Choctaw Generation Ltd. P'ship v. Am. Home Assur. Co.*,
    271 F.3d 403 (2d Cir. 2001)................................................................................................19

*Escobar v. Celebration Cruise Operator, Inc.*,
    805 F.3d 1279 (11th Cir. 2015) ...........................................................................................12

*First Options of Chicago v. Kaplan*,
    514 U.S. 938 (1995)......................................................................................................13, 15

*GE Energy Power Conversion France SAS, Corp. v.*
    *Outokumpu Stainless USA, LLC*,
    140 S. Ct. 1637 (2020)........................................................................................................17

*Gwathmey Siegel Kaufman & Associates Architects, LLC v. Rales*,
    518 F. App'x 20 (2d Cir. 2013) ..........................................................................................14

*In re Refco Inc., Sec. Litig.*,
    07-MDL 19092, 2009 WL 10666107 (S.D.N.Y. Nov. 20, 2009)..........................................11

*Klay v. All Defendants*,
    389 F.3d 1191 (11th Cir. 2004) ...........................................................................................20

*Lichtman v. Bar Education, Inc.*,
    No. 8:21-cv-1370, 2021 WL 4478249 (M.D. Fla. Sept. 30, 2021)..........................................14

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*,
    252 F.3d 218 (2d Cir. 2001)................................................................................................15

*Medidata Sols., Inc. v. Veeva Sys. Inc.*,
   748 F. App'x 363 (2d Cir. 2018) ..................................................................17

*Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*,
   473 U.S. 614 (1985)......................................................................................11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1, 24-25 (1983) .............................................................................10

*Paduano v. Express Scripts, Inc.*,
   55 F. Supp. 3d 400 (E.D.N.Y. 2014) ...........................................................14

*Scherk v. Alberto-Culver Co.*,
   417 U.S. 506 (1974)......................................................................................10

*Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*,
   198 F.3d 88 (2d Cir. 1999).....................................................................11, 17

*Sokol Holdings, Inc. v. BMB Munai, Inc.*,
   542 F.3d 354 (2d Cir. 2008).........................................................................18

*Suazo v. NCL (Bahamas), Ltd.*,
   822 F.3d 543 (11th Cir. 2016) .....................................................................11

*United Steel Workers v. Wise Alloys, LLC*,
   807 F.3d 1258 (11th Cir. 2015) ...................................................................19

*Valdez-Mendoza v. Jovani Fashion Ltd.*,
   15-cv-7261, 2017 WL 519230 (E.D.N.Y. Feb. 7, 2017) .............................18

*Victoria v. Sammy's Fishbox Realty Co. LLC*,
   No. 14 Civ. 8678, 2015 WL 2152703 (S.D.N.Y. May 6, 2015)...................18

*WorldCrisa Corp. v. Armstrong*,
   129 F.3d 71 (2d Cir. 1997)...........................................................................15

*Ytech 180 Units Miami Beach Invs. LLC v. Certain Underwriters at Lloyd's, London*,
   359 F. Supp. 3d 1253 (S.D. Fla. 2019) ........................................................12

**Statutes**

9 U.S.C. § 3..........................................................................................................19

9 U.S.C. § 12..........................................................................................................3

9 U.S.C. §§ 201-08 ........................................................................................ *passim*

Specially Appearing Defendants Telecom Business Solution, LLC and LATAM Towers, LLC (collectively, "Peppertree"), and AMLQ Holdings (Cay) Ltd. ("AMLQ," together with Peppertree, "Peppertree/AMLQ"), and Defendants Adam M. Schachter ("Mr. Schachter"), and Gelber Schachter & Greenberg, P.A. ("GSG," together with Mr. Schachter and Peppertree/AMLQ, the "Moving Parties"), pursuant to the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), 9 U.S.C. § 206, respectfully move this Court to dismiss this Complaint and compel Plaintiffs Terra Towers Corp. ("Terra Towers") and TBS Management, S.A. ("Terra TBS," and together with Terra Towers, "Plaintiffs") to arbitrate their claims in the ongoing arbitration among the parties addressing the same issues that is currently taking place in New York, New York ("Arbitration") or, alternatively, stay this lawsuit pending resolution of the ongoing Arbitration.

## PRELIMINARY STATEMENT

Plaintiffs' claims are governed by a valid and binding arbitration provision contained in the Shareholders Agreement among the parties.  Plaintiffs knowingly and improperly brought this action in an effort to side-step that arbitration agreement and the pending Arbitration. Accordingly, for the reasons that follow and pursuant to well-established statutory and case law, the Moving Parties request that this action be dismissed or, in the alternative, stayed pending the completion of the Arbitration.

This lawsuit is just Plaintiffs' latest maneuver in an unsuccessful months-long campaign to (unsuccessfully) oust Mr. Schachter and his law firm GSG—initially ***Plaintiffs' own chosen*** counsel—from their position as independent counsel for Continental Towers LATAM Holdings Limited (the "Company") in the ongoing Arbitration. Critically, the panel in the Arbitration (the "Tribunal")—comprised of three highly experienced, qualified, and well-respected arbitrators— has already considered and ***rejected*** Plaintiffs' baseless claims, ruling against them on the very same "mistake of fact" issue they now attempt to raise in this litigation.

In the ongoing Arbitration, Plaintiffs have never before challenged that they are bound by an arbitration agreement requiring that ***any*** disagreement among them "will be finally settled by binding arbitration. . . conducted in accordance with the Commercial Rules of the American

Arbitration Association."[1] Shareholders Agreement[2] § 8.15 (the "Arbitration Agreement"). The provision applies broadly to "*any controversy, claim or dispute arising out of or relating to or in connection with [the Shareholders] Agreement*." *Id.* § 8.14. Contrary to the express terms of the Arbitration Agreement, Plaintiffs, in a blatant example of forum shopping, filed these same claims in this Court.

To reiterate, *all* of the Plaintiffs' claims in the Complaint are already before the Tribunal in the pending New York Arbitration. Moreover, any doubts concerning the scope of arbitration should be resolved in favor of arbitration. Accordingly, for the reasons that follow and pursuant to well established statutory and case law, the Moving Parties request that this proceeding be dismissed or, in the alternative, stayed pending further proceedings in either the Arbitration or before the pending Southern District of New York lawsuit to confirm a Partial Final Award of the Tribunal.[3]

## BACKGROUND

### A.    The Parties' Arbitration Agreement Governs This Dispute.

In 2015, Peppertree Capital Management, Inc., through Peppertree, and Goldman Sachs & Co. LLC, through AMLQ, jointly contributed approximately $125 million in cash to become minority shareholders in the Company, a telecommunications infrastructure company based in South and Central America and incorporated in the British Virgin Islands. *See* Weiner Decl., Ex. 1, § 3.02. The parties' percentage ownership of the Company is as follows: (1) Terra: 54.45%; (2) Peppertree: 32.2%; and (3) AMLQ: 13.35%. *Id.*, Ex. 3, ¶ 38.

---

[1]    The Arbitration is being administered by the American Arbitration Association's ("AAA") International Center for Dispute Resolution ("ICDR") in New York, New York.

[2]    Declaration of Gregg L. Weiner ("Weiner Decl."), filed herewith, Ex. 1 (Shareholders Agreement).

[3]    As set forth in Defendants' pending Motion to Transfer Venue, at ECF No. 14, this case should be transferred to the Southern District of New York, where Peppertree/AMLQ's and Plaintiffs' cross petitions to confirm and vacate the Tribunal's Final Partial Award and certain other orders are already pending. In the event the Court does not grant the Motion to Transfer Venue, it should dismiss the case for the reasons set forth herein, or, alternatively, the reasons set forth in Peppertree's Motion to Dismiss for Lack of Personal Jurisdiction, at ECF No. 12, AMLQ's Motion to Dismiss for Failure to State a Claim, at ECF No. 13, and Mr. Schachter's and GSG's Motion to Dismiss for Failure to State a Claim, all of which are pending before this Court. ECF No. 6.

The parties also entered into governing documents, including a Shareholders Agreement and a Development Agreement. *Id.*, Exs. 1-2. The governing documents state that virtually all Company actions—including the appointment and removal of Company executives and engagement of Company counsel—require Board approval. *Id.*, Ex. 1 §§ 4.04, 4.06. At all relevant times, the Board has been comprised of four Directors—two appointed by Peppertree, and two appointed by Plaintiffs. *Id.*, Ex. 3 ¶ 41; *see also* Compl. ¶ 19. The Board may only act *via* a majority vote or unanimous written consent of all Directors. Weiner Decl., Ex. 1 § 4.03(d).

As noted above, the Shareholders Agreement provides that "***any*** controversy, claim or dispute [among the parties] arising out of or relating to or in connection with [the Shareholders] Agreement" (*id.* § 8.14) "will be finally settled by binding arbitration." *Id.* § 8.15. The Shareholders Agreement further specifies that "[t]he seat of the arbitration shall be New York, New York," and that the "arbitration shall be conducted by three arbitrators," selected pursuant to a party-appointed arbitrator system. *Id.* § 8.15.[4]

Notwithstanding the explicit language contained in the Arbitration Agreement, Plaintiffs filed their claims in state court in Florida rather than either continuing to pursue them before the Tribunal or seeking some form of *vacatur* or modification in the Southern District of New York as required. Plaintiffs' actions breach the terms of the Shareholders Agreement and violate the Federal Arbitration Act.

**B.     The Allegations in Plaintiffs' Complaint Constitute a "Dispute" Among the Parties That is Subject to Arbitration.**

As previously noted, the Tribunal has already considered and ***ruled against*** Plaintiffs on the very same "mistake of fact" issue they raise in the Complaint—namely, that when the parties executed the "Framework Agreement" authorizing the engagement of Mr. Schachter and GSG as independent counsel for the Company, Plaintiffs purportedly did not know that Jorge Gaitán Castro

---

[4]     The Company is contractually dependent upon DT Holdings, Inc. ("DTH") for its operating capability. As such, some members of the Company's management team are primarily employees and agents of DTH. The Company pays DTH a monthly fee for these personnel and other services, as set forth in the Development Agreement, to which Plaintiffs, DTH, and the Company are parties. *Id.*, Ex. 2 § 1.1(f). The Development Agreement expressly incorporates the Arbitration Agreement contained in the Shareholders Agreement. *Id.* § 3.4. Notably, DTH has no cognizable role in the selection of Company counsel or the Executive Team, and it has no ownership interest in the Company.

("Mr. Gaitán") was not the Chief Executive Officer of the Company.  Compl. at ¶ 41.  In fact, the same claims underlying Plaintiffs' Complaint have already been submitted to, and decided by, the Tribunal—as set forth below, not once but, rather, ***multiple times***.

Critically, on December 23, 2021, the Tribunal ruled:

> ***The shareholders of the Company, by signing the letter through their counsel, not only confirmed that Mr. Gaitán was the CEO, but also approved the engagement of GSG and Mr. Schachter as counsel to the Company in this arbitration.*** […] ***The signing of the [Framework Agreement] by all the shareholders through their arbitration counsel at a time when this arbitration had already been pending for six weeks was effectively an action by unanimous written consent of the Board of Directors of the Company. To treat it otherwise would be an inappropriate triumph of form over substance. Further, the Board unanimously ratified and acquiesced in the GSG engagement, as at least five months of active proceedings in this arbitration ensued without any question having been raised about the legitimacy of the GSG firm's engagement.***

Weiner Decl., Ex. 16 (Dec. 23, 2021 Order) at ¶¶ 3-4 (emphases added).

The fact that Plaintiffs raised these same issues in the Arbitration conclusively establishes that they constitute a dispute among the parties subject to arbitration.  At the very least, this fact establishes that Plaintiffs have waived any argument to the contrary by continuing to arbitrate the issues in that forum without raising any question as to their arbitrability.

Plainly frustrated by the Tribunal's rulings against them, Plaintiffs subsequently engaged in a series of questionable tactics to undermine the Tribunal's decisions.  At core, Plaintiffs' Complaint is an illicit and ill-disguised effort to vacate the Tribunal's December 23, 2021 Order in derogation of the FAA and the ICDR/AAA rules.  As set forth in the FAA, the ***only*** proper way to challenge the Tribuanl's decisions would be to file a timely motion to vacate.  *See* 9 U.S.C. § 10.  Plaintiffs, of course, know this as they have filed a motion to vacate other orders in the Southern District of New York.  *See generally Telecom Business Solution, LLC, et. al. v. Terra Towers Corp., et al.*, No. 1:22-cv-1761 (S.D.N.Y.) at ECF No. 28.  Nonetheless, Plaintiffs ask this Court to "use its equitable powers to rescind the Framework Agreement."  Compl. at ¶ 5.  But this request for relief has already been litigated and decided in the ongoing Arbitration and is not currently subject to a motion to vacate; thus, issues raised in the Complaint continue to belong in that Arbitration, not in this Court.

Plaintiffs plainly seek to relitigate the Tribunal's holding through this action, despite the ongoing Arbitration and Confirmation Action pending in the Southern District of New York. Plaintiffs' claims here, however, are governed by the binding arbitration provision. And, to the extent there can be any doubt concerning the scope of arbitrability, it should be resolved ***in favor of arbitration***, in accordance with well-settled law, discussed below.

**C.      Plaintiffs' Claims Here Are Already Before the Tribunal.**

On February 2, 2021, Peppertree filed a Demand for Arbitration and Statement of Claims (the "Statement of Claims") against Plaintiffs, DTH, and Messrs. Hernandez and Arzu. Weiner Decl., Ex. 3; *see also* Compl. ¶ 24. Because some of Peppertree's claims are derivative in nature, the Company was included as a nominal respondent. Weiner Decl., Ex. 3 ¶ 31. The Statement of Claims alleges that Plaintiffs and DTH repeatedly breached the Company's governing documents and embezzled Company funds. *See generally id.* In its original Statement of Claims, Peppertree identified Charles J. Falletta of Sills Cummis & Gross P.C. as the Company's independent counsel. *Id.* ¶ 32.

On February 19, 2021, Plaintiffs asserted various counterclaims against Peppertree, as well as claims against AMLQ, which AMLQ countered on March 25, 2021. *Id.*, Exs. 4, 7. On February 24, 2021, Plaintiffs' counsel *objected* to Mr. Falletta's service as Company counsel. *Id.*, Ex. 5. In their objections, Plaintiffs state: "As the majority shareholder and by virtue of holding two seats in [sic] the Company's four-seat board of directors, [Plaintiffs] [were] surprised to learn that [Peppertree] recently alleged in the [Arbitration] that the Company had engaged your firm […] to represent it as 'independent counsel' in such proceeding." *Id.* at p. 1. The letter to Mr. Falletta also states that "[Plaintiffs] ha[d] discussed this alleged relationship with the Company's executive team, ***including chief executive officer Jorge Gaitán***, who confirmed that the Company has not retained Sills Cummis." *Id.* (emphasis added).

On March 11, 2021, Mr. Schachter advised Mr. Falletta that Mr. Schachter and GSG had been hired by "Continental Towers Latam Holdings Limited's CEO (Jorge Gaitán)" to represent the Company in the pending "arbitration proceeding." *Id.*, Ex. 6 at p. 1. Mr. Schachter stated that he "was hired as the result of a process that was handled personally by Mr. Gaitán, without any outside influence from any shareholders or directors." *Id.* Plaintiffs did not, at that time, object to Mr. Schachter's representation that Mr. Gaitán was the Company's CEO, nor did they object to Mr. Gaitán's retention of Mr. Schachter and GSG on the Company's behalf for the purposes of the

arbitration. *Id.* Instead, it was Peppertree who initially questioned Mr. Schachter's and GSG's engagement. However, after interviewing Mr. Schachter to assess and confirm both his qualifications and independence, Peppertree/AMLQ **agreed** that he could represent the Company in the Arbitration. *See* Compl. at Ex. A.

On March 19, 2021, Mr. Schachter prudently prepared and circulated the Framework Agreement that was later countersigned by all parties in the Arbitration (through counsel) and by Mr. Gaitán for the Company. *Id.* The Framework Agreement authorized the retention of Mr. Schachter and GSG for the purposes of the pending arbitration,[5] and confirmed that "the [C]ompany intends to preserve its status as a nominal and neutral party and will not be aligned with any of the parties in th[e]" Arbitration. *Id.*

Eventually frustrated by the Company's genuine neutrality and nominal role, Plaintiffs (who control the daily operations of the Company) launched an aggressive campaign of intimidation and harassment designed to terminate and/or constructively discharge Mr. Gaitán and remove Mr. Schachter/GSG as independent Company counsel. *See* Weiner Decl., Ex. 8 at p. 1. For example, Plaintiffs' representatives shut down Mr. Gaitán's email access, searched his car and electronic devices, held him captive for hours, and directed that a DTH loyalist take over his duties and roles in the Company's management structure, all without Board approval. *Id.* at p. 2.

On October 11, 2021, Mr. Schachter, as Company counsel, submitted a letter bringing Plaintiffs' ongoing harassment campaign to the Tribunal's attention, including the attempts to remove Mr. Gaitán from his position at the Company. *Id.* On October 15, 2021, Peppertree/AMLQ submitted an emergency motion for expedited interim relief to the Tribunal seeking an order to prevent Plaintiffs from terminating Mr. Gaitán without Board approval. *See* Weiner Decl., Ex. 9. On October 20, 2021, Plaintiffs and DTH filed a brief in response to Peppertree/AMLQ's emergency motion in which they relied on a May 16, 2016 Board resolution to argue (contrary to their original position on the matter) that "***Mr. Gaitán is not the CEO of the Company***." *Id.*, Ex. 10 (emphasis added). They even attached the May 16, 2016 Board resolution to their brief. *Id.* at Ex. R-51.

---

[5]     The Tribunal has already found that the "signing of the [Framework Agreement] by all the shareholders through their arbitration counsel at a time when th[e] arbitration had already been pending for six weeks was effectively ***an action by unanimous written consent by the Board of Directors of the Company***." Weiner Decl., Ex. 16 ¶ 4 (emphasis added).

On November 12, 2021, in a unanimous ruling, the Tribunal granted Peppertree/AMLQ relief in the form of an injunction requiring that DTH "immediately restore Jorge Gaitán to the Company [position he] occupied as of March 19, 2021." *Id.*, Ex. 11 ¶ 12. In issuing this Order, the Tribunal "accepted that as of March 19, 2021, the CEO of the Company was Jorge Gaitán, and that this status was accepted by and accurately reflected in a letter of that date from [GSG] that was counter-signed by all counsel in this arbitration and Mr. Gaitán and therefore became a binding agreement among the parties." *See id.*, Ex. 16 ¶ 2. On November 22, 2021, Plaintiffs submitted a Motion for Reconsideration (*Id.*, Ex. 12), arguing for the first time that "the Framework Agreement is void as it was executed under ***mutual mistakes of fact***, namely, whether Gaitan was indeed the duly appointed and authorized CEO of the Company and as such had the authority to hire counsel for the Company." *Id.* (emphasis added). The Tribunal ***rejected*** Plaintiffs' mistake of fact claim, and denied their Motion for Reconsideration on December 8. *Id.*, Ex. 13.

Thereafter, in early December 2021, Plaintiffs improperly caused the Company to cease paying Mr. Schachter's firm, GSG. *See id.*, Ex. 13. After Mr. Schachter raised the issue, on December 8, 2021, the Tribunal ordered the Company to stop withholding GSG's attorneys' fees. *Id.* The Tribunal further ordered that "[i]f [Plaintiffs] wish to seek the removal of Schachter and his firm as counsel for the Company in the arbitration by action of the Board, [Plaintiffs] shall present a resolution to the Board seeking approval of such action." *Id.* ¶ 5. The Board never voted to remove him or GSG as Company counsel.

**D.    The Tribunal has Already Decided the Issues Plaintiffs Now Seek to Re-litigate in This Court, and Related Issues Remain Pending in the Arbitration.**

Next, Plaintiffs attempted to improperly and unilaterally engage new—but clearly not independent—counsel for the Company. On December 15, 2021, Alejandro Soto and Adam Fels of the Fridman Fels law firm filed a Notice of Appearance, in which they purported to appear on behalf of the Company in the arbitration. *Id.*, Ex. 14. The Notice claimed that the Company purportedly retained Fridman Fels "through [the Company's] Chief Financial Officer (CFO) and Executive Team member Juan Francisco Quisquinay, with the full support of every other member of the Company's Management Team, save for Jorge Gaitán." *Id.*, Ex. 14. However, such retention was ***never*** approved by the Board. Indeed, the Board did not consider—let alone approve—Fridman Fels' purported retention.

The Tribunal then invited the parties to make submissions related to Fridman Fels' purported Notice of Appearance.  Plaintiffs made the exact same argument they rely upon here—that the Framework Agreement had "since been repudiated by [Plaintiffs]" due to "mutual mistake"—namely, that "undersigned counsel to the Framework Agreement mistakenly believed at the time of its execution that Mr. Gaitán was in fact the CEO of the Company[6] and therefore, as a member of the Company's Executive Team, had the authority to engage counsel for the Company."  *Id.*, Ex. 15 at 3.  On December 23, 2021, following extensive submissions from the parties, the Tribunal issued an order ***rejecting*** the Notice of Appearance and further held that any "change in Company counsel . . . should be decided by the Board."[7]  *Id.* ¶ 6.  In their continuing efforts to subvert the December 23, 2021 Order, Plaintiffs doubled down, again stopping the Company from paying Mr. Schachter's and GSG's invoices in January 2022.  *See id.*, Ex. 17.  On April 1, 2022, Plaintiffs' improper conduct was once again brought to the Tribunal's attention.  *Id.* The Tribunal scheduled a status conference for April 12, 2022 and also requested that the parties answer certain questions in advance of the status conference, including questions relating to the "[d]ispute [o]ver [c]ompany [c]ounsel [f]ee [p]ayments."  *Id.*, Ex. 19.  During the status conference, the parties' addressed Mr. Schachter's and GSG's retention and Plaintiffs' improper circumvention of the Tribunal's December 23, 2021 Order by refusing to allow the Company to pay Mr. Schachter and GSG.  *See generally id.*, Ex. 20 (Transcript of April 12, 2022 Conference). These issues are currently pending before the New York Tribunal.[8]

---

[6]  In February 2021, Plaintiffs took the position that Mr. Gaitán was the Company's CEO. *See* Weiner Decl., Ex. 5.  They, however, changed their tune after their misconduct was raised with the Tribunal by Mr. Gaitán via Mr. Schachter in October 2021.

[7]  Similarly, any change in Company management also falls within the exclusive provenance of the Board.  *See* Weiner Decl., Ex. 1 § 4.06(a).

[8]  The instant action in Florida state court challenges the Framework Agreement on the same grounds Plaintiffs raised and lost in the arbitration.  On April 18, 2022, Defendants Peppertree, AMLQ, Mr. Schachter, and GSG removed the Action on the basis of federal question jurisdiction under the New York Convention, 9 U.S.C. § 205.  *See* ECF No. 1.

## ARGUMENT

**I.  FEDERAL LAW REQUIRES THAT THE COMPLAINT BE DISMISSED OR, IN THE ALTERNATIVE, STAYED.**

Because Terra's claims are subject to arbitration in their entirety, the Court should exercise its discretion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).  *See Caley v. Gulfstream Aerospace Corp.*, 333 F. Supp. 2d 1367, 1379 (N.D. Ga. 2004), *aff'd*, 428 F.3d 1359 (11th Cir. 2005) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.") (internal quotation omitted).  That is especially true where, as here, Plaintiffs have already been arbitrating these issues for an extended period of time.

As a threshold matter, the general provisions of the FAA apply "to actions and proceedings brought under [the Convention] to the extent that . . . [they do] not [] conflict" with the terms of the New York Convention.  9 U.S.C. § 208.  Because the FAA and New York Convention do not conflict when it comes to compelling arbitration, the FAA is applicable here.  *Id.*

Moreover, it is universally accepted that once a court determines that a controversy is arbitrable, it can do nothing further on the merits except to stay proceedings pending arbitration, pursuant to §§ 2 and 3 of the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (the "FAA").  Section 2 of the FAA provides:

> A written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Section 3 of the FAA provides:

> [That] upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, [a court] shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement … .

*Id.*  As set forth above, the claims in this lawsuit should be arbitrated.  Indeed, they already *are* being arbitrated.  Accordingly, in the absence of complete dismissal, a stay under Section 3 is mandatory.  *See United Steel Workers v. Wise Alloys, LLC*, 807 F.3d 1258, 1268 (11th Cir. 2015)

("[U]pon a party's motion, a stay was mandatory under section 3 because the cases were brought on, among other issues, issues themselves arguably referable to arbitration.").

The FAA establishes a presumption favoring arbitration, which requires courts to enforce arbitration agreements. *Allied-Bruce Terminex Cos. v. Dobson*, 513 U.S. 265, 270 (1995) ("The basic purpose of the Federal Arbitration Act is to overcome courts' refusals to enforce agreements to arbitrate."). Reflecting the strong federal policy favoring arbitration, federal law establishes that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Baptist Hosp. of Miami, Inc. v. Medical Healthcare Plans, Inc*., 376 F. Supp. 3d 1298, 1304 (S.D. Fla. 2019) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24-25 (1983)). The FAA applies in both state and federal courts, and overrides any state substantive or procedural policies to the contrary. *Id.* at 272; *see also Moses H. Cone Memorial Hosp.*, 460 U.S. at 24 ("*Section 2* [of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."). In *Moses H. Cone*, the Supreme Court of the United States made clear that where parties have agreed to resolve their disputes through arbitration, courts are required to stay their hand. *Id.* at 24-25. Prompt and efficient enforcement of arbitration agreements comports with "Congress' clear intent, in the Arbitration Act, to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Id.* at 22.

As *Moses H. Cone* and its progeny make clear, the scope of the arbitration provision must be interpreted liberally and "any doubts concerning the scope of the arbitrable issues should be resolved in favor of arbitration." *Id.* at 24-25; *see, e.g., Hearn v. Comcast Cable Commc'n, LLC*, 992 F.3d 1209, 1213 (11th Cir. 2021) (Section 2 of the FAA "establishes a liberal federal policy favoring arbitration agreements" and that "any doubts concerning the scope of arbitrable issues" should be construed "in favor of arbitration"); *see also Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (the FAA "embodies a liberal federal policy favoring arbitration agreements" and "creates a 'presumption of arbitrability' such that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration'"); *Baptist Hosp. of Miami, Inc.*, 376 F. Supp. 3d at 1304 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at

24-25 ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").[9]

Here, the arbitration provision is broad in scope and covers "***any Dispute***." Weiner Decl., Ex. 1, § 8.15 (emphasis added). "Dispute" is broadly defined as "***any controversy, claim or dispute arising out of or relating to or in connection with [the Shareholders] Agreement***." *Id.*, § 8.14 (emphasis added). Everything about Mr. Schachter's and GSG's engagement "arises out of and relates" to shareholder disputes concerning the Shareholders Agreement. Thus, Plaintiffs cannot dispute that the Framework Agreement directly relates to the Shareholders Agreement. Accordingly, their claims in this Court should be dismissed or stayed pursuant to the FAA and the governing terms of the Shareholders Agreement.

Even if the Court were to somehow find that Plaintiffs' claims should not be referred to arbitration, it should still exercise its discretion to stay this lawsuit pending completion of the Arbitration among Plaintiffs, Peppertree, AMLQ, DTH, and the Company. A discretionary stay is warranted when "the outcome of the nonarbitrable claims will depend upon the arbitrator's decision." *Klay v. All Defendants*, 389 F.3d 1191, 1204 (11th Cir. 2004). As detailed above, the Tribunal is continuing to consider claims related to the engagement of Company counsel, which share the same factual predicates as the claims in this lawsuit and which will impact its outcome. A discretionary stay is therefore appropriate.

## II. THE ARBITRATION PROVISION IS ENFORCEABLE UNDER FEDERAL LAW AS AN AGREEMENT WITHIN THE SCOPE OF THE NEW YORK CONVENTION.

Consistent with the strong national policy favoring arbitration, courts deciding a motion to compel arbitration under the Convention are restricted to "a very limited inquiry." *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005) (internal quotation omitted). "[T]he Convention requires that a motion to compel arbitration be granted so long as (1) the four jurisdictional prerequisites are met and (2) no available affirmative defense under the Convention applies." *Suazo v. NCL (Bahamas), Ltd.*, 822 F.3d 543, 546 (11th Cir. 2016) (emphasis in original) (internal quotation omitted).

---

[9]     The rule is the same under New York law. *E.g.*, *Aminoff & Co. LLC v. Parcel Pro, Inc.*, No. 21-cv-10377, 2022 WL 987665, at *2 (S.D.N.Y. Apr. 1, 2022) (noting that "where the scope of an arbitration agreement is ambiguous, the Federal Arbitration Act's policy favoring arbitration requires that 'any doubts be resolved in favor of arbitration.'").

The four jurisdictional prerequisites under the Convention are: "(1) [that] there is an agreement in writing within the meaning of the Convention;[10] (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states." *Bautista*, 396 F.3d at 1295 n.7.

The Convention "prescribes a limited set of defenses that may be considered at the arbitration-enforcement stage." *Suazo*, 822 F.3d at 546. The only available defenses are those establishing the arbitration agreement to be "null and void, inoperative or incapable of being performed." *Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1286 (11th Cir. 2015) (quoting the New York Convention, art. II(3)). "The null-and-void clause encompasses only those defenses grounded in standard breach-of-contract defenses—such as fraud, mistake, duress, and waiver—that can be applied neutrally before international tribunals." *Id.*[11] "That is, arbitration is mandatory unless the plaintiff proves that the agreement is 'null and void, inoperative or incapable of being enforced.'" *Azevedo v. Carnival Corp.*, No. 08-20518-CIV, 2008 WL 2261195, at *3 (S.D. Fla. May 30, 2008). As discussed below, the Arbitration Agreement falls within the scope of the Convention because (a) it satisfies the Convention's four jurisdictional prerequisites, and (b) none of the affirmative defenses apply.

**A.    The Arbitration Agreement Here Easily Satisfies the Convention's Four Jurisdictional Prerequisites.**

The Arbitration Agreement easily satisfies all four jurisdictional prerequisites.

- ***First***, there is an "agreement in writing" within the meaning of the Convention. Terra, Peppertree, AMLQ, and the Company are parties to the Shareholders Agreement containing the Arbitration Agreement. *See Ytech 180 Units Miami Beach Invs. LLC v. Certain Underwriters at Lloyd's, London*, 359 F. Supp. 3d 1253, 1261-62 (S.D. Fla. 2019) ("an arbitral clause in a contract . . . signed by the parties"

---

[10]    Article II of the Convention defines "agreement in writing" as "an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams."

[11]    The analysis is identical under New York law. *See In re Refco Inc., Sec. Litig.*, 2009 WL 10666107, at *11 (S.D.N.Y. Nov. 20, 2009 (citing *Smith/Enron Cogeneration L.P., Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F. 3d 88, 92 (2d Cir. 1999)) (setting forth the same jurisdictional prerequisites and requiring that the court compel a case to arbitration unless it concludes "that the arbitration agreement is null, void, inoperative, or incapable of being performed").

satisfies the agreement-in-writing requirement).  Terra, DTH, and the Company are also signatories to the Development Agreement, which expressly incorporates the Arbitration Agreement.  Because Terra's claims against Mr. Schachter and GSG are inextricably linked to the Shareholders Agreement, they can enforce the Arbitration Agreement under estoppel principles, *see infra* Point III.

- ***Second***, the Arbitration Agreement provides for arbitration in the United States (New York, New York), a signatory to the Convention.  *See* 9 U.S.C. § 201.

- ***Third***, the Arbitration Agreement arises out of a commercial legal relationship, *i.e.*, an agreement among shareholders to the Company, which was formed with the commercial purpose of "developing, owning, acquiring, and operating telecommunications towers in various locations across Central and South America."  Compl. ¶ 17.

- ***Fourth***, several parties to the Arbitration Agreement are not American citizens: Terra Towers is incorporated in the British Virgin Islands, Compl. ¶ 6; Terra TBS is organized under the laws of Panama, *id.* ¶ 7; DTH is incorporated in the Republic of Panama, *id.* ¶ 14; and AMLQ is incorporated in the Cayman Islands, *id.* ¶ 13.

**B.     Plaintiffs Long Ago Conceded That the Arbitration Agreement is Binding and Enforceable.**

Terra cannot claim that the Arbitration Agreement is somehow "null and void, inoperative or incapable of being performed."  Convention, art II(3).  First and foremost, Terra has already availed itself of the Arbitration Agreement in bringing ***five*** different claims against Peppertree/AMLQ in the ongoing Arbitration, thereby waiving any challenge to the Agreement's validity.  Moreover, the parties to the Shareholders Agreement are sophisticated entities who were represented by counsel of their own choosing during the negotiation and execution of the Shareholders Agreement.  Weiner Decl., Ex. 1 § 8.03.  Because the Arbitration Agreement satisfies the four jurisdictional prerequisites, and no affirmative defenses apply, it falls within the scope of the New York Convention.

**III.    JURISDICTION TO DETERMINE ARBITRABILITY IS VESTED IN THE ARBITRATOR, BUT IN ANY EVENT, PLAINTIFFS' CLAIMS ARE ARBITRABLE.**

Having established that the Arbitration Agreement falls squarely within the New York Convention, the next consideration is whether the issues are arbitrable.  Courts generally "should apply ordinary state-law principles that govern formation of contracts" to determine whether a particular claim or issue is arbitrable.  *First Options of Chicago v. Kaplan*, 514 U.S. 938, 944 (1995).

**A.     The Tribunal Has Already Determined That This Dispute is Arbitrable.**

The Tribunal's rulings conclusively demonstrate that the issues presented in the Complaint are arbitrable.   Indeed, in its December 23, 2021 Order, the Tribunal considered—and unequivocally rejected—the same theory upon which the Complaint is premised.   This is dispositive and establishes that these claims belong in arbitration.

**B.     While the Arbitrability of Terra's Claims is a Matter for the Tribunal, the Claims are Arbitrable No Matter Who Determines Arbitrability.**

The facts before this Court conclusively demonstrate that this dispute belongs in arbitration, not in this Court, regardless of whether this Court or the Tribunal decides the threshold issue of arbitrability.   To start, in *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002), the Supreme Court held that the "question [of] whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is an issue for judicial determination ***unless the parties clearly and unmistakably provide otherwise***." *Id.* at 83 (emphasis added).   The majority of Circuit Courts, including the Second Circuit[12] and the Eleventh Circuit, have found that incorporating AAA Rules by reference clearly and unmistakably evidences the parties' intent to delegate the question of arbitrability ***to the arbitrators***.   *See, e.g., JPay, Inc. v. Kobel*, 904 F.3d 923, 936 (11th Cir. 2018) (references to the AAA rules, "[u]nder controlling Circuit precedent" serve "as a clear and unmistakable delegation of questions of arbitrability to an arbitrator"); *Norfolk Southern Ry. Co. v. Florida East Coast Ry., LLC*, No. 3:13-cv-576, 2014 WL 757942, at *10 (M.D. Fla. Feb. 26, 2014) (the "Agreement's reference to the AAA Commercial Rules constitutes evidence of a clear and unmistakable mutual intent to delegate decisions regarding arbitrability to the arbitrator"); *Lichtman v. Bar Educ., Inc.*, No. 8:21-cv-1370, 2021 WL 4478249, at *6 (M.D. Fla. Sept. 30, 2021) ("The arbitration clause at issue here references and incorporates the AAA Commercial Arbitration Rules, and the Eleventh Circuit has held that incorporation of these Rules provides the requisite clear and unmistakable evidence that parties agreed to arbitrate all gateway issues of arbitrability.").   This is because the AAA Rules, including the Commercial

_____

[12]   *See, e.g., Gwathmey Siegel Kaufman & Assoc. Architects, LLC v. Rales*, 518 F. App'x 20, 21 (2d Cir. 2013) ("[B]y incorporating the American Arbitration Association ('AAA') rules the parties agreed to have the arbitrators decide arbitrability."); *Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400, 415 (E.D.N.Y. 2014) ("[V]irtually every circuit to have considered the issue has determined that incorporation of the [AAA] [R]ules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability") (internal quotation omitted).

Rules—which are incorporated by reference into the Shareholders Agreement—grant the Tribunal the authority to determine its own jurisdiction—including whether a claim is arbitrable. *See* AAA Commercial Rule R-7(a) ("The **arbitrator shall have the power to rule on his or her own jurisdiction, including** […] the arbitrability of any claim or counterclaim.") (emphasis added). As such, because the parties to the Shareholders Agreement agreed that any "arbitration shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association in effect at the time of the arbitration," Weiner Decl. Ex. 1 § 8.15, they clearly and unmistakably agreed "to delegate decisions regarding arbitrability to the arbitrator." *Norfolk Southern Ry. Co. v. Florida East Coast Ry., LLC*, 2014 WL 757942 at *10.

Even if the parties' intent to delegate the determination of arbitrability to the Tribunal were not clear and unmistakable from the face of the Shareholders Agreement (though it is), it is equally apparent that Plaintiffs' claims fall squarely within the Arbitration Agreement. The Arbitration Agreement here is broad and comprehensive, governing "***any*** controversy, claim or dispute ***arising out of or relating to or in connection with*** this [Shareholders] Agreement including, without limitation, any dispute regarding its breach, termination, enforceability or validity hereof." Weiner Decl., Ex. 1 § 8.15 (emphasis added). Clauses that cover "any controversy or dispute arising from [the agreement]" are "paradigm[atically] broad." *Calamia v. Riversoft, Inc.*, No. 02-CV-1094, 2002 WL 31779991, at *3 (E.D.N.Y. Dec. 13, 2002); *Marks v. Prisant*, 567 N.Y.S.2d 146, 146 (N.Y. App. Div. 1991) (finding "any disputes, claims, differences, or controversies arising out of" to be a broad clause); *Lehman v. Sage Metal Trading Corp.*, 503 N.Y.S.2d 804, 805 (N.Y. App. Div. 1986) (clause covering "any dispute or controversy of any kind or nature, relating to this Agreement or the breach thereof" is broad). Plaintiffs' Complaint, which challenges whether Mr. Gaitan was the Company's CEO on March 19, 2021 and whether he had the authority to sign the Framework Agreement and retain counsel on the Company's behalf for the Arbitration, plainly relates to and arises out of the Shareholders Agreement. Indeed, the "hiring or firing and compensation of members of the Management team, including the Executive Team" and the retention of counsel for the Company in the Arbitration are both squarely within the Company's Board's province. *See* Weiner Decl., Ex. 1 §§ 4.04(a), 4.06(a). Thus, the Complaint is unquestionably related to and connected with the Shareholders Agreement.

Moreover, the Tribunal ***already*** unanimously ruled that "a dispute between the shareholders over who should represent the Company as arbitration counsel in this arbitration"—

15

*i.e.*, the central dispute in the Complaint—"arise[s] out of the Shareholders Agreement" and thus falls under this broad arbitration clause.  Weiner Decl., Ex. 16 ¶ 7.  The Shareholders Agreement requires Board approval before the Company may enter into any agreement, including one related to engaging counsel for the Company.  Section 4.04(a) explicitly authorizes *only* the Board "to make any and all contracts and decisions, enter into transactions and make and obtain any commitments on behalf of the Company to conduct or further its business."  Weiner Decl., Ex. 1 § 4.04(a).  Additionally, pursuant to Section 4.04(a)(xviii), the Board must approve "entry by the Company . . . into any agreement . . . not included in the Annual Budget," which would include any agreement related to the engagement of counsel for the Company.  *Id.* § 4.04(a)(xviii).  By ruling that the Board approved the Framework Agreement, the Tribunal explicitly held that it had jurisdiction to resolve this dispute.  This dispute is unequivocally arbitrable.

## IV.   PLAINTIFFS WAIVED THE ABILITY TO LITIGATE THEIR CHALLENGE.

Plaintiffs waived their right to challenge the arbitrability of this dispute by submitting it to the Tribunal months ago.  Although "[m]ost cases on waiver in the context of arbitration deal with the more common issue of whether a party waives arbitration by litigation […] waiver can also work in reverse," that is, "a party can waive its ability to litigate by engaging in arbitration."  *City of Miami v. Fraternal Order of Police Lodge #20*, 248 So.3d 273, 278 (Fla. 3d DCA 2018); *see also* 2 Am. Jur. Prof of Facts 3d 1, § 52 (Apr. 2022 Update) ("if the parties clearly and unmistakably submit the issue to the arbitrator without reservation, then the parties have waived their right to have a court make the decision"); *Cleveland Elec. Illuminating Co. v. Utility Workers Union of America*, 440 F.3d 809, 813 (6th Cir. 2006) (same); *Graphic Packing Intern., Inc. v. United Steel, Paper and Forestry*, No. 4:06-CV-74, 2007 WL 187700, *5 (W.D. Mich. Jan. 22, 2007) (same).  Plaintiffs have clearly waived any claimed right they may have had to have a Court decide this issue by submitting it to the Tribunal ***three times***.  *See, e.g.,* Weiner Decl. Exs. 10, 12, and 15.  Stated differently, Plaintiffs submitted this dispute to the Tribunal ***three times—and received three adverse rulings***—before they decided to try their luck in this Court.  Plaintiffs' prior attempts to arbitrate this dispute unquestionably demonstrate that they waived their right to now petition this Court for relief.

## V.    PLAINTIFFS MAY NOT PLEAD AROUND THE BINDING ARBITRATION PROVISION BY JOINING NON-SIGNATORIES.

Plaintiffs *admit* that the governing Shareholders Agreement "contains a dispute resolution clause requiring the parties to submit certain disputes to arbitration."  Compl. at ¶ 23.  Yet they fail to explain—indeed, they *cannot* explain—how their claims for rescission of the Framework Agreement, and injunctive relief regarding the same, fall outside the scope of the arbitration provision of the Shareholders Agreement.  So instead, Plaintiffs have sued non-signatories to the arbitration agreement in a last-ditch effort to buttress their blatant forum-shopping.

In addition to the parties to the arbitration, Plaintiffs also sued non-signatories to the arbitration agreements, Mr. Schachter and GSG.  But courts regularly enforce arbitration agreements where claims are lodged against non-signatories.  In deciding whether claims against non-signatories can be arbitrated, courts apply state-law principles that govern the formation of contracts.  *See GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1643-44 (2020).

Under New York law, a claim against a non-signatory to an arbitration agreement may be compelled to arbitration based on an estoppel theory, specifically to prevent parties (like Plaintiffs here) from escaping their obligations to arbitrate through creative pleading.  *See Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co*., 271 F.3d 403, 408 (2d Cir. 2001) (compelling claims to arbitration even though they involved a non-signatory to the operative arbitration agreement, in part, because the controversy before the court was "an aspect of the same controversy now in arbitration between the two signatories to the Construction Contract.").  Estoppel applies when two factors are present: "(1) the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed, and (2) the relationship among the parties justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with" the non-signatory.  *Medidata Sols., Inc. v. Veeva Sys. Inc*., 748 F. App'x 363, 366 (2d Cir. 2018) (internal quotation omitted).  Both factors are easily satisfied here.[13]

---

[13]    The Tribunal recently determined that "[t]he combination of related agreements, the relationships among the Respondents, and the intertwined claims" in the Arbitration estops certain non-signatories to the Arbitration Agreement "from denying [their] obligations to arbitrate." Weiner Decl. at Ex. 21 at pp. 15-18.  This analysis, and the authority cited by the Tribunal, *see id*., is wholly applicable to Mr. Schachter and GSG.

*First*, Plaintiffs would not have *any* claims against Mr. Schachter or GSG without the Shareholders Agreement.  Section 4.04 of the Shareholders Agreement governs the engagement of Company counsel and provided the Board with the authority to enter into the Framework Agreement in the first place.  Plaintiffs cannot challenge the validity of the Framework Agreement, or the engagement of Company counsel, without reference to the Shareholders Agreement.  As the Tribunal has already determined, "a dispute between the shareholders over who should represent the Company as arbitration counsel in this arbitration . . . *arise[s] out of the Shareholders Agreement*."  Weiner Decl., Ex. 16 ¶ 7 (emphasis added).

*Second*, the relationships with Mr. Schachter and GSG are sufficiently "close" to estop Plaintiffs from denying their obligation to arbitrate disputes with them.  Courts evaluate the parties' relationship to determine whether it would be "unfair" for the signatory to "refuse to arbitrate on the ground that it had made no agreement with" the non-signatory.  *Sokol Holdings, Inc. v. BMB Munai, Inc*., 542 F.3d 354, 361 (2d Cir. 2008).  Here, it would be grossly unfair for Plaintiffs to sidestep arbitration with Mr. Schachter and GSG, whom it agreed to retain as counsel and agents for the Company as party to the ongoing Arbitration.  *See Carroll v. LeBoeuf, Lamb, Greene & McCrae*, 374 F. Supp. 2d 375, 378 (S.D.N.Y. 2005) (estopping plaintiffs from avoiding arbitration with non-signatory defendants who had a principal-agent relationship with signatory defendants).  Courts find a sufficiently close relationship where the complaint treats signatory and non-signatory defendants as a "single unit."  *Victoria v. Sammy's Fishbox Realty Co*., LLC, No. 14 Civ. 8679, 2015 WL 2152703, at *18 (S.D.N.Y. May 6, 2015); *see also Valdez-Mendoza v. Jovani Fashion Ltd.*, No. 15-CV-7261, 2017 WL 519230 at *3 n.2 (E.D.N.Y. Feb. 7, 2017) (finding that equitable estoppel could compel a non-signatory to arbitrate claims where the "Complaint consistently reference[d] the "*Defendants*," without differentiating between [them].").  Here, Plaintiffs' entire case rests on an alleged mutual mistake by all parties, without distinguishing between the Defendants in any significant way.  *See* e.g., Compl. ¶ 40 ("Plaintiffs and *Defendants* erroneously believed . . . ."); *id.* ¶ 49 ("*Defendants'* position has not changed. . . ."); *id.* ¶ 50 ("[I]t is Plaintiffs who have been harmed due to *Defendants'* efforts. . . .").  Because the relationships and allegations involved here are so "intimately founded and intertwined with the underlying" Shareholders Agreement, it would be unfair to permit Plaintiffs to avoid arbitrating the claims in this Complaint against GSG and Mr. Schachter.  *See Choctaw Generation Ltd. P'ship v. Am. Home Assur. Co*., 271 F.3d 403, 406 (2d Cir. 2001).  Based on estoppel principles, the Court should dismiss the case

in favor of the agreed-upon arbitration forum, or alternatively, stay the proceedings pending the Arbitration.

## VI.  THE ISSUES RAISED IN PLAINTIFFS' COMPLAINT SHOULD CONTINUE TO BE ADDRESSED BY THE TRIBUNAL.

The law does not permit Plaintiffs to re-litigate before this Court the very same claims they have already lost in the Arbitration.  The issues raised by Plaintiffs' Complaint have already been decided by the Tribunal, and Plaintiffs' non-compliance with the Tribunal's orders is an issue presently before the Tribunal:

| Plaintiffs' Argument in the Arbitration | The Tribunal's Decision |
|---|---|
| **October 20, 2021 Briefing** <br><br> "Indeed, Mr. Gaitan is not the CEO of the Company. […]  Although he was the original CEO of the Company, he stopped serving in that role in 2016, when a replacement was appointed, and he became COO." Weiner Decl. Ex. 10. | **November 12, 2021 Order** <br><br> "On March 19, 2021, after this arbitration had begun, it was agreed in writing among the Company, all of the Shareholders, DTH, Jorge Hernandez (the principal of DTH, TBS, and Terra) and Jorge Gaitan, that Mr. Gaitan was the Chief Executive Officer of the Company." *Id*., Ex. 11. |
| **November 22, 2021 Motion for Reconsideration** <br><br> "The Framework Agreement was *solely signed* by counsel, who read and relied on the Shareholders' Agreement not knowing that a subsequent Board Resolution had removed Gaitan as CEO. […]  Gaitan knew he was not the duly appointed CEO of the Company, and still misled counsel. […]  The Framework Agreement is thus void as it was executed under mutual mistakes of fact. . . ." Weiner Decl. at Ex. 12. | **December 8, 2021 Order** <br><br> "By this Order, Respondents' motions for reconsideration and clarification are denied." *Id*., Ex. 13. |
| **December 20, 2021 Briefing** <br><br> The Framework Agreement "has since been repudiated by [Plaintiffs], the majority shareholders, due to mutual mistake.  All undersigned counsel to the Framework Agreement mistakenly believed at the time of its execution that Mr. Gaitan was in fact the CEO of the Company and therefore, as a member of the Company's Executive Team, had the authority to engage counsel for the Company." Weiner Decl. at Ex. 15. | **December 23, 2021 Order** <br><br> "The shareholders of the Company, by signing the [Framework Agreement] through their counsel, not only confirmed that Mr. Gaitán was the CEO, but also approved the engagement of GSG and Mr. Schachter as counsel to the Company in this arbitration. […] The signing of the [Framework Agreement] by all the shareholders through their arbitration counsel at a time when this arbitration had already been pending for six weeks was effectively an action by unanimous written consent of the Board of Directors of the Company. To treat it otherwise would be |

|  | an inappropriate triumph of form over substance."  Weiner Decl. at Ex. 16. |
|---|---|

As detailed above, the parties to this action have repeatedly considered, and the Tribunal has repeatedly considered and rejected, Plaintiffs' claims of "mistake," the viability of the Framework Agreement, and the propriety of Mr. Schachter's and GSG's ongoing representation of the Company.  Plaintiffs' failure to succeed in their efforts to remove, dilute or impair Mr. Schachter and GSG in the Arbitration does not render this attempted end-run or collateral attack appropriate.  Indeed, just the opposite.  The repeated submission of these disputes to the Tribunal demonstrates that all parties and the Tribunal understood that these claims ***belong*** in arbitration, not court, pursuant to the various agreements containing broad arbitration provisions.

Even if Plaintiffs' own course of conduct did not prove that this dispute belongs before the Tribunal, Chapter 2 of the FAA sets forth the procedure for enforcement of international arbitration agreements under the New York Convention.  *See* 9 U.S.C. §§ 201-08.  The New York Convention aims "to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries."  *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974).  The United States' federal policy in favor of arbitral dispute resolution "appl[ies] with special force in the field of international commerce."  *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614, 631 (1985).

<u>CONCLUSION</u>

For the foregoing reasons, the Moving Parties respectfully request that this Court compel Plaintiffs to arbitrate their claims in the Arbitration and dismiss the Complaint or, in the alternative, stay these proceedings pending the outcome of the Arbitration.

## <u>LOCAL RULE 7.1(A)(3) CERTIFICATION</u>

I HEREBY CERTIFY that, on April 26, 2022 and again on April 21, 2022 I made reasonable efforts via email to confer with Plaintiffs' and DT Holdings, Inc's counsel in a good-faith effort to resolve by agreement the issues raised in this motion; however, after conferring, the parties were unable to reach a resolution.  Counsel for Plaintiffs and DT Holdings represented that Plaintiffs and DT Holdings intend to oppose this Motion.

*Marcos D. Jiménez*
Marcos D. Jiménez

*Counsel for Defendants Telecom Business Solution, LLC, LATAM Towers, LLC, AMLQ Holdings (Cay), Ltd.*

Dated:  April 26, 2022

By:  _/s/ Roberto Martínez_____
Roberto Martínez
Florida Bar No. 305596
Stephanie A. Casey
Florida Bar No. 97483
**COLSON HICKS EIDSON, P.A.**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Phone: (305) 476-7400
bob@colson.com
scasey@colson.com

*Counsel for Adam Michael Schachter and
Gelber Schachter & Greenberg, P.A.*

Respectfully submitted,

By:  _/s/ Marcos D. Jiménez_____
Marcos D. Jiménez
**MARCOS D. JIMÉNEZ, P.A.**
255 Alhambra Circle
Coral Gables, FL 33134
Phone: (305) 570-3249
mdj@mdjlegal.com

Michael N. Ungar*
Katherine M. Poldneff*
**ULMER & BERNE LLP**
1660 W 2nd Street, Suite 1100
Cleveland, OH 44113
Phone: (216) 583-7000
mungar@ulmer.com
kpoldneff@ulmer.com

Gregg L Weiner*
Ethan R. Fitzgerald*
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, NY 10036-8704
Phone: (212) 596-9000
Gregg.Weiner@ropesgray.com
Ethan.fitzgerald@ropesgray.com

Daniel V. Ward*
Katherine M. McDonald*
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Daniel.Ward@ropesgray.com
Katherine.McDonald@ropesgray.com

*Application seeking admission *pro hac
vice* forthcoming

*Counsel for Defendants Telecom Business
Solution, LLC, LATAM Towers, LLC,
AMLQ Holdings (Cay), Ltd.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 26, 2022, the foregoing was filed through the Court's electronic filing system, which will provide notice of the filing to all counsel of record.

I further certify that I shall serve a copy of the foregoing by Electronic Mail to the following counsel:

John F. Baughman
jbaughman@jfblegal.com

George W. Kroup
gkroup@jfblegal.com

Juan J. Rodriguez
jrodriguez@careyrodriguez.com

Jennifer M. Hernandez
jhernandez@careyrodriguez.com

*Counsel for Terra Towers Corp. and TBS Management, S.A.*,

Allan A. Joseph
ajoseph@fidjlaw.com

*Counsel for DT Holdings, Inc.*

 /s/ Marcos D. Jiménez
Marcos D. Jiménez

*Counsel for Defendants Telecom*
*Business Solution, LLC; LATAM*
*Towers, LLC; and AMLQ Holdings*
*(Cay), Ltd.*