**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No. 1:22-cv-21204-SCOLA/GOODMAN**

TERRA TOWERS CORP. and TBS
MANAGEMENT, S.A.,

                  Plaintiffs,

      v.

ADAM MICHAEL SCHACHTER,
GELBER SCHACHTER & GREENBERG,
P.A., CONTINENTAL TOWERS LATAM
HOLDINGS LIMITED, TELECOM
BUSINESS SOLUTION, LLC, LATAM
TOWERS, LLC, AMLQ HOLDINGS (CAY)
LTD., and DT HOLDINGS, INC.,

                  Defendants.

_____/

**DEFENDANTS' JOINT RESPONSE TO**
**PLAINTIFFS' AMENDED RENEWED**
**MOTION FOR LEAVE TO AMEND COMPLAINT**

Defendants Adam Michael Schachter and Gelber Schachter & Greenberg, P.A. (collectively, "GSG"), and specially appearing Defendants Telecom Business Solution, LLC and LATAM Towers, LLC (collectively, "Peppertree"), submit this response to Plaintiffs' Amended Renewed Motion for Leave to File a First Amended Complaint (the "Renewed Motion," ECF No. 35) filed by Plaintiffs Terra Towers Corp. ("Terra Towers") and TBS Management, S.A. ("Terra TBS") (collectively, "Terra"). This response is submitted as a joint filing pursuant to the Court's May 10, 2022 Paperless Order (ECF No. 30), but the Defendants each submit their respective positions separately.

### DEFENDANT GSG'S OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR LEAVE TO AMEND

#### INTRODUCTION

The Plaintiffs are respondents/counter-claimants in an ongoing arbitration in New York relating to a shareholders' dispute about the management and operations of Continental Towers LATAM Holdings Limited ("Continental" or the "Company"). The lawyers against whom they seek to assert derivative claims on behalf of Continental for legal malpractice and breach of fiduciary duty are the same lawyers who are *actively* representing Continental, as the nominal party, in that arbitration.

The purpose of this lawsuit is to interfere with that attorney-client relationship and the arbitration process itself. As just one example of this, a few days before Terra filed this latest motion, the Arbitral Tribunal issued an order contemplating sanctions against Terra for asserting similar issues before the Tribunal. The Tribunal noted that all of the shareholders (including Terra) agreed to GSG's representation of the Company until Terra "became dissatisfied" with that representation, and that legal representation of the Company is a "procedural issue" that was addressed by the Tribunal to "enable the arbitration to proceed in an effective fashion." (May 9, 2022 Order ¶ 6 n.1[1]). It is against this backdrop that Terra now seeks leave to bring its new claims.

As explained below, this Court should deny Terra leave to amend for two independent reasons: bad faith and futility.

---

[1] GSG will file a copy of the May 9, 2022 order in a separate notice after the filing of this response. Because of the expedited nature of this briefing, GSG did not receive a response from Plaintiffs on whether they object to the filing of the May 9, 2022 order on the public docket (as opposed to under seal) prior to the noon deadline to file GSG's opposition.

<u>**ARGUMENT**</u>

"Grant of leave to amend is within the trial court's discretion and denial is reviewed for abuse of discretion." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999). Under Rule 15, leave to amend a pleading should be denied when (1) the amendment would be prejudicial to the opposing party, (2) there has been bad faith or undue delay on the part of the moving party, or (3) the amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

**I.   Plaintiffs Seek to Amend Their Complaint in Bad Faith.**

A district court may deny leave to amend based on bad faith where the purpose of the amendment is to defeat federal jurisdiction and forum shop. *See, e.g.*, *Bouie v. Equistar Chemicals LP*, 188 F. App'x 233, 238 (5th Cir. 2006); *VTX Commc'ns, LLC v. AT&T Inc.*, No. 19-269, 2020 WL 918670, at *6 (S.D. Tex. Feb. 26, 2020) ("[I]t is clear that Plaintiffs' proposed amended complaint is an attempt to divest this Court of jurisdiction. Thus, the Court finds it was filed in bad faith."); *Sutton v. Seaman*, No. 13-61933, 2014 WL 12861089, at *2 (S.D. Fla. July 17, 2014) (denying leave to amend where plaintiff sought to add defendant "in a bad faith attempt to divest the Court of jurisdiction and obtain remand"); *Mr. Charley's Fun Jumps, LLC v. JRK Residential Grp., Inc.*, No. 12-703, 2013 WL 3543685, at *2 (S.D. Miss. July 11, 2013) (denying leave to amend, and finding motion was "a bad faith attempt at forum manipulation").

The evidence of bad faith here is obvious, as demonstrated by Terra's own words. By way of the amendment, Terra seeks to eliminate the Court's jurisdiction to secure a remand and avoid a ruling by this Court on the Defendants' pending motions, including the motion to compel arbitration (ECF No. 17). In their Renewed Motion, Terra admits as much:

> If Plaintiffs' Motion for Leave is granted, Plaintiffs intend to file a motion seeking remand of this cause back to the Circuit Court of Miami-Dade County because the pendency of claims and Parties related to the New York Convention have been removed, thereby eliminating the claims Defendants relied on in their Notice of Removal.

(ECF No. 35, at 2, n.1.)  In an email, Terra further detailed its tactical maneuver:

> Our view is that the Court must first determine whether it has subject matter jurisdiction over this action before assessing whether it may order the parties to submit to arbitration pursuant to the arbitration provisions in the Shareholders' Agreement. [Case citation omitted.] The Court will complete this task when evaluating our motion to remand, which is currently due on May 18, 2022, *and will be based upon the claims asserted in our proposed First Amended Complaint*. Our forthcoming motion to remand will argue that this Court has no subject matter

jurisdiction to hear state law claims based on allegations of professional misconduct against Mr. Schachter and GSG. Given the current juncture of these proceedings and the absence of a scheduling order setting forth an amended pleading deadline, *we believe it is a foregone conclusion that Judge Scola will grant us leave to amend well before he considers the merits of Defendants' Motion to Compel Arbitration* [ECF No. 17], especially since yesterday the Judge ordered an expedited briefing schedule on our motion for leave. *At that point, we believe remand will almost certainly be granted.*

(*See* Ex. 1, at 1, attached.) In other words, Terra is leveraging that this is a first amendment—such that it believes it will be "a foregone conclusion that Judge Scola will grant [] leave to amend"—to forum shop, obtain a remand, and avoid a ruling on the merits of the motion to compel arbitration.[2] Here, the facts amply support the denial of leave to amend based on bad faith. *See Pfeiffer v. Ajamie PLLC*, No. 19-02760, 2020 WL 5441441, at *2 (S.D. Tex. Sept. 10, 2020) (denying leave on a finding of bad faith upon consideration of emails from plaintiff that showed the motive for the amendment was "an attempt to evade this Court's jurisdiction in hopes of a more favorable forum in state court").

Terra's purported "neutral" reason for the amendment also rings hollow. In the Renewed Motion, Terra states that "[b]y providing additional allegations addressing Schachter and GSG's misconduct, Plaintiffs' effort to enjoin Schachter and GSG from taking further action on behalf of the Company is more direct and colorable." (ECF No. 35, at 5.) But Terra does not provide any additional allegations to support its claims. The additional facts contained in the proposed amendment either concern corporate mismanagement issues that do not pertain to GSG (*e.g.*, facts related to Mr. Gaitán's purported malfeasance) or fail to support any cognizable claim (*see infra* at 15-17). Nor do the new claims pave a more direct path to Terra's stated "effort to enjoin [GSG]

---

[2] In any event, Terra's efforts are misguided. First, this Court must look to whether there was jurisdiction at the time of removal. *See Ehlen Floor Covering, Inc. v. Lamb*, 660 F.3d 1283, 1287 (11th Cir. 2011). Second, courts may retain jurisdiction and deny remand where, as here, a post-removal amendment was made in bad faith. *See, e.g.*, *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988) ("A district court can consider whether the plaintiff has engaged in any manipulative tactics when it decides whether to remand a case."); *Dewey v. Johnson*, No. 08-80344, 2008 WL 11331747, at *2 (S.D. Fla. July 8, 2008) ("Even if there were no federal question accompanying the state law claims, the Court may still retain jurisdiction where 'the plaintiff has used manipulative tactics…such as simply…deleting all federal-law claims from the complaint and requesting that the district court remand the case.'"). And, as discussed below, the proposed amended claims would still be subject to jurisdiction in this Court for the very same reasons articulated in the notice of removal and remand would still properly be denied.

from taking further action on behalf of the Company." (ECF No. 35, at 5.) In the initial complaint, Terra sought rescission of the Framework Agreement—a cause of action that is far more directly aimed at achieving the stated goal of enjoining GSG from taking further action on behalf of the Company by undoing the agreement. The proposed amendment, on the other hand, principally seeks damages; it does not support a request for injunctive relief. *See Rosen v. Cascade Int'l, Inc.*, 21 F.3d 1520, 1527 (11th Cir. 1994) ("It is axiomatic that equitable relief is only available where there is no adequate remedy at law . . . .").

At bottom, Terra's proposed amendment repackages the same core factual allegations in the initial complaint—which are themselves repackaged contentions from the arbitration—into new state law claims to attempt to remove as defendants the signatories of the Shareholders Agreement (which contains the core arbitration provision). The new claims—based on the same factual allegations that were plainly known to Terra at the time of the filing of the initial complaint—are being asserted now in an improper attempt to eliminate subject matter jurisdiction (and to achieve some sort of tactical advantage in the arbitration by attacking another party's lawyers). *See Sutton*, 2014 WL 12861089, at *2 (finding bad faith precluded leave to amend where plaintiff had known the operative facts against defendant but only added defendant after removal); *Mr. Charley's Fun Jumps, LLC*, 2013 WL 3543685, at *2 (finding bad faith and noting it was not a "coincidence that the plaintiff is only seeking to dismiss the federal claims after the case has been removed to federal court"); *see also Andrews v. Radiancy, Inc.*, No. 16-cv-1061, 2017 WL 552873, at *2 (M.D. Fla. Feb. 10, 2017) ("An inference of bad faith sufficient to deny leave to amend may arise when a movant fails to include known facts in an initial complaint as a tactical maneuver to force the court to consider various theories seriatim.") (internal quotation marks omitted).

This Court should reject Terra's improper tactical maneuvers and deny leave to amend based on bad faith.[3]

## II.   The Proposed Amendment Is Futile Because Plaintiffs Lack Standing, the Proposed Claims Belong in Arbitration, and It Otherwise Fails to State a Claim.

Terra's proposed amended complaint is also foreclosed because it is futile for at least three reasons. First, Terra lacks the requisite derivative standing to assert claims on behalf of

---

[3] Although addressed below in the context of futility, Terra's attempt to bring claims that it knows—or should know—are barred as a matter of law is further evidence of bad faith that compels denial of the motion for leave to amend.

Continental. Second, the dispute identified in the proposed amendment is arbitrable, and the Arbitral Tribunal has already ruled on its arbitrability. Third, even if Terra could assert claims in this Court, those stated in the proposed amended complaint are deficient on their face.

"[A] district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004). Leave to amend is futile "if an amended complaint would still fail at the motion-to-dismiss or summary-judgment stage." *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020); *Hall*, 367 F.3d at 1263 (denial of leave to amend "is justified by futility when the complaint as amended is still subject to dismissal"); *Christman v. Walsh*, No. 09-14357, 2010 WL 11507270, at *2 (S.D. Fla. July 30, 2010), *aff'd*, 416 F. App'x 841 (11th Cir. 2011) ("[I]f the amended complaint could not survive Rule 12(b)(6) scrutiny, then the amendment is futile and leave to amend is properly denied.").

### A. Plaintiffs Cannot Assert Derivative Claims on Behalf of Continental Under BVI Law.

As a shareholder, Terra cannot bring a lawsuit against the Company's independent counsel absent prerequisites that have not been satisfied. Terra lacks standing to bring this proposed derivative action because it did not (and does not allege that it has) sought and obtained leave from the High Court of the British Virgin Islands (the "BVI High Court") to assert them here, as required under BVI law. For this reason alone, the proposed amendment is futile.

Standing to bring a derivative action is a question of substantive law that is decided according to the state of incorporation.[4] *See, e.g.*, *Freedman v. magicJack Vocaltec Ltd.*, No. 17-

---

[4] Florida choice-of-law rules also compel the application of BVI law. Under Florida law, courts apply "the law of the state of incorporation where legal disputes concern the 'internal affairs' of a foreign corporation." *Monaker Grp., Inc. v. RealBiz Media Grp., Inc.*, No. 16-24978-CIV, 2017 WL 11632199, at *4 (S.D. Fla. Dec. 18, 2017). "Claims involving or implicating the relationship among and between a corporation and its officers, directors, or shareholders are subject to the 'internal affairs' doctrine." *100079 Canada, Inc. v. Stiefel Labs., Inc.*, No. 11-22389, 2011 WL 13116079, at *9 (S.D. Fla. Nov. 30, 2011) (Scola, J.). The issue at the heart of the proposed amendment concerns the relationship between the Company and one of its officers (Mr. Gaitán), including whether the Shareholder Agreement gave Mr. Gaitán the corporate authority to engage GSG and act on behalf of the Company with respect to that engagement and representation, as well as other agreements with third parties. (*See* ECF No. 35-1 ¶ 36-42 (allegations that Mr. Gaitán "had no authority or corporate capacity" to retain GSG); ¶ 43-49 (allegations of Mr. Gaitán's alleged malfeasance); ¶ 50-54 (allegations about GSG's alleged improper "adherence" to Mr. Gaitán's instructions, when he was allegedly not the CEO).)

80940, 2018 WL 6110996, at *3 (S.D. Fla. Nov. 21, 2018), *aff'd,* 963 F.3d 1125 (11th Cir. 2020) (court applies the law of the state of incorporation to determine whether shareholder claims are derivative for standing purposes); *Dragon Investments Co. II LLC v. Shanahan*, No. 0602868/2005, 2007 WL 4144251 (N.Y. Sup. Ct. 2007) ("Whether a party has standing to proceed in a derivative action is a question of substantive law. Therefore, standing must be decided according to the law of the state of incorporation, in this case the British Virgin Islands (BVI).").

Continental is a company incorporated in the British Virgin Islands[5] and thus subject to the BVI Business Companies Act (the "BCA"). Pursuant to Section 184C of the BCA, derivative actions are expressly prohibited except by leave of the BVI High Court. (*See* BCA, attached as Exhibit 2.) Accordingly, a shareholder of a BVI company may bring a derivative action only if it first gets the approval of the BVI High Court.[6]

Terra does not allege that it has complied with the BCA and obtained leave of the BVI High Court before filing this derivative lawsuit on behalf of Continental, a BVI company. Terra fails to establish its standing to bring this derivative action and thus the proposed amendment is

---

[5] Conspicuously omitted from Terra's proposed amendment are allegations pertaining to Continental's citizenship, even though it is listed as a plaintiff and nominal defendant. (*Compare* ECF No. 35-1 ¶¶ 2-4, *with* ECF No. 1-4, ¶ 10 ("Defendant Continental Towers, the Company, is incorporated in the British Virgin Islands and has its registered office at Commerce House, Wickhams Cay 1, PO Box 3140, Road Town, Tortola, British Virgin Islands.").) But the Court may look to Exhibit A of the proposed amendment, which states that the Company has a registered office in the British Virgin Islands (ECF No. 35-1, at 20), and the Shareholders Agreement, which identifies Continental as "a company incorporated in the British Virgin Islands" (ECF No. 14-1, at 3). *See Cone Corp. v. Fla. Dep't of Transp.,* 921 F.2d 1190, 1206 n.50 (11th Cir. 1991) (when addressing standing, the court may consider facts beyond the four corners of the complaint).

[6] In addition to not seeking or obtaining the required leave from the BVI High Court, Terra's proposed amendment also demonstrates its non-compliance with other provisions of the BVI Act. Indeed, "in determining whether to grant leave under [] subsection [(1)], the [BVI High] Court must take the following matters into account—*(a)* whether the member is acting in good faith; *(b)* whether the derivative action is in the interests of the company taking account of the views of the company's directors on commercial matters; *(c)* whether the proceedings are likely to succeed; *(d)* the costs of the proceedings in relation to the relief likely to be obtained; and *(e)* whether an alternative remedy to the derivative claim is available." § 184C(2)(a)-(e) (Ex. 2, at 127). Even setting aside the obvious bad faith and that the alleged derivative action is not in the interests of the Company, Terra concedes in its proposed amendment that it does not take into account the views of the Company's other directors (ECF No. 35-1 ¶ 59), and it is clear the proceedings are not likely to succeed as the Arbitral Tribunal has already ruled against Terra on these same issues.

futile, as it would be subject to immediate dismissal as a matter of law. *See, e.g.*, *Microsoft Corp. v. Vadem, Ltd.*, NO. CIV.A. 6940-VCP, 2012 WL 1564155, at \*6 (Del. Ch. Apr. 27, 2012), *aff'd*, 62 A.3d 1224 (Del. 2013) (dismissing derivative claims for lack of standing due to failure to seek leave from the BVI High Court before bringing the derivative claims); *Vaughn v. LJ Internat., Inc.*, 94 Cal. Rptr. 3d 166, 178 (Ct. App. 2009) (same). Section 184C(6) is clear. "Except as provided in this section [interim relief from the BVI High Court, *see* § 184(C)(5)], a member is not entitled to bring or intervene in any proceedings in the name of or on behalf of a company." (Ex. 2, at 127.)

Importantly, Terra is aware of this particular standing issue, as it has previously confronted this very same dismissal argument in response to another lawsuit that it filed. In March 2021, Plaintiffs filed this other lawsuit—arising out of this *same arbitration*—in Florida state court in Broward County. *See Terra Towers Corp. et al. v. Torrecom Partners, LLC*, No. CACE21-00643 (Fla. 17th Jud. Cir. Ct.) ("Torrecom Action"). There, the defendant made this exact argument regarding standing under BVI law, and in response to that argument, Terra did not dispute that BVI law requires leave from the BVI High Court to bring derivative claims, but rather argued that its claims in that lawsuit were not derivative and thus no leave was required.[7] Here, of course, Terra can make no such argument since the claims are indisputably derivative on the face of the proposed amendment, yet it now seeks leave to file those derivative claims anyway. Ultimately, Florida Circuit Judge Jack Tuter granted a motion compelling the *Torrecom* case to arbitration. *See* Torrecom Action, Order dated October 14, 2021.

Terra's lack of standing forecloses the proposed claims at the threshold.

**B. The Proposed Claims Are Subject to Arbitration and Are Currently Being Arbitrated.**

The proposed amendment is also futile because the dispute underlying the proposed claims are subject to arbitration, the Arbitral Tribunal has determined they are arbitrable, and, indeed they

---

[7] *See* Torrecom Action, Motion to Dismiss dated May 14, 2021, at 6-10 & Response to Motion to Dismiss dated June 18, 2021, at 8 n.1. The case docket and filings are publicly available on the Broward County Clerk's website at
https://www.browardclerk.org/Web2/CaseSearchECA/CaseDetail/?caseid=MTExNTkwNDM%3d-0sJAQ4fsT1U%3d&caseNum=CACE21006643&category=CV&accessLevelCodeOUT=ANONYMOUS&ato=D.

are currently being arbitrated.[8] The proposed amendment would therefore be subject to dismissal. *See, e.g.*, *Halliburton & Assocs., Inc. v. Henderson, Few & Co.*, 774 F.2d 441, 445 (11th Cir. 1985) (affirming denial of leave to amend based on futility because of arbitrability of claim); *Caley v. Gulfstream Aerospace Corp.*, 333 F. Supp. 2d 1367, 1379 (N.D. Ga. 2004), *aff'd*, 428 F.3d 1359 (11th Cir. 2005) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.") (internal quotation omitted).

### 1. The Arbitration Panel Has Already Determined the Dispute Underlying the Proposed Amendment Is Arbitrable.

The threshold question of whether a dispute is arbitrable may be delegated to the arbitrator by the parties to the arbitration agreement. *Terminix Intern. Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005). The Shareholders Agreement broadly provides that "any controversy, claim or dispute arising out of or relating to or in connection with [the Shareholders] Agreement" "will be finally settled by binding arbitration." (ECF No. 14-1, at 50-51 §§ 8.14, 8.15.) The arbitration provision expressly provides that the Commercial Arbitration Rules of the AAA will govern any arbitration. (*Id*.) Rule 7 of the Commercial Arbitration Rules provides that the arbitrator has the power to rule on his or her own jurisdiction and determine the arbitrability of a claim. *See* AAA Commercial Arbitration Rules and Mediation Procedures, *available at* https://www.adr.org/Rules; *It Works Mktg., Inc. v. Melaleuca, Inc.*, No. 20-1743, 2021 WL 1627471, at *3 (M.D. Fla. Apr. 27, 2021) (quoting Rule 7(a)). Thus, the parties to the Shareholders Agreement (including Terra) have agreed that the arbitration panel will determine questions of arbitrability of its disputes with the remaining shareholders (Peppertree and AMLQ Holdings (Cay) Ltd. ("AMLQ")). *See JPay, Inc. v. Kobel*, 904 F.3d 923, 937-38 (11th Cir. 2018) (party that enters into arbitration agreement that references Commercial Arbitration Rules of the AAA "clearly and unmistakably give the arbitrator power to rule on his own jurisdiction, thus delegating questions of arbitrability to the arbitrator").

As noted by the Tribunal, and agreed to by all parties in the arbitration, "the engagement of counsel for this arbitration is within the powers of the Company's Board under Section 4.04(a) and in particular subsection (xviii) thereof." (ECF No. 17-1, at 568-69 (Dec. 23, 2021 Order ¶ 5).)[9]

---

[8] GSG also refers the Court to the arguments set forth fully in the Defendants' motion to compel arbitration (ECF No. 17).

[9] Section 4.04(a), titled "Action by the Board," provides, in relevant part:

And the Tribunal already determined that "a dispute between the shareholders over who should represent the Company as arbitration counsel in this arbitration"—*i.e.*, the central dispute underlying the proposed amended complaint—"arise[s] out of the Shareholders Agreement" and thus falls under this broad arbitration clause. (ECF No. 17-1, at 568-69 (Dec. 23, 2021 Order ¶ 7).) To the extent the proposed amendment attempts to raise additional issues regarding the conduct of GSG, Terra relies solely on conclusory statements devoid of facts and, in any event, any such issues are premature. (*See infra* 15-17.)

### 2. Terra's Attempt to Circumvent the Tribunal's Findings Through Creative Pleading Is Futile.

Terra attempts to plead around the Shareholders Agreement's binding arbitration provision by amending this suit to assert derivative claims solely against GSG, a non-signatory to that agreement. This strategy is unavailing. The labels Terra assigns to its proposed causes of action are irrelevant; whether a claim is arbitrable is determined by the factual allegations. Here, the claims are inextricably intertwined with the Shareholders Agreement. Terra cannot do an end-run around the Tribunal by fashioning a claim asserted only against GSG.

Terra's attempt to recast its complaint as a derivative claim against GSG does not remove the dispute from arbitration. "Whether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted." *Gregory v. Electro-Mechanical Corp.*, 83 F.3d 382, 384 (11th Cir. 1996); *see also Halliburton & Assocs., Inc. v. Henderson, Few & Co.*, 774 F.2d 441, 445 (11th Cir. 1985) (affirming district court's order denying leave to amend complaint because "[t]he claims contained in the amendment to [the] complaint [were] subject to the parties' agreement to arbitrate" and "[a]ccordingly, the amendment was futile"); *Prof. Mgmt. Servs. Grp., Inc. v. Zurich Am. Ins. Co., Inc.*, No. 8:14-cv-

---

(a) Except as otherwise expressly provided in this Agreement, the Memorandum of Association or the Articles, or under applicable Law, the Board shall have the authority to manage the Company and is authorized to make any and all contracts and decisions, enter into transactions and make and obtain any commitment son behalf of the Company to conduct or further its business, including but not limited to the following (each of which shall require the approval of the Board):

…

(xviii) entry by the Company or a Company Subsidiary into any agreement, or the consummation by the Company or a Company Subsidiary of any transaction (whether in one transaction or series of related transactions, not included in the Annual Budget[.]

2180, 2015 WL 1310989, at *2-3 (M.D. Fla. Mar. 24, 2015) (granting motion to stay and compel arbitration and denying first motion for leave to amend complaint where proposed claims fell "within the purview of the arbitration clause").

Despite Plaintiffs' wordsmithing, the proposed claims belong in arbitration. Plaintiffs' proposed amendment challenges: (1) whether Mr. Gaitán was the Company's CEO on March 19, 2021; (2) whether Mr. Gaitán had the authority to sign the Framework Agreement and retain GSG on the Company's behalf for the arbitration; (3) whether GSG is properly taking direction from Mr. Gaitán (*i.e.*, whether Mr. Gaitán has authority to direct GSG's representation of the Company); (4) whether Mr. Gaitán had authority to enter into a Letter of Intent with O.C.G., or whether Mr. Gaitán's action are ultra vires and therefore create a conflict of interest for GSG; and (5) whether Terra, as majority shareholder, had the authority to terminate employees of the Company. (ECF No. 35-1 ¶ 10-17, 23-49.) These allegations plainly relate to and arise out of the Shareholders Agreement. (*See, e.g.*, ECF No. 14-1, at 23-24 §§ 4.04(a) (governing who can enter into contracts or transactions, or make decisions, on behalf of the Company), 4.06(a) (delineating the members and authority of management team of Company).)

As noted in the pending Motion to Compel Arbitration (ECF No. 17), in deciding whether claims against non-signatories can be arbitrated, courts apply state-law principles that govern the formation of contracts.[10] *See GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1643-44 (2020). And, under New York law, "[u]nder principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of 'the relationship among the parties, the contracts they signed…, and the issues that had arisen' among them discloses that 'the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'" *See Ragone v. Atlantic Video at Manhattan Center*, 595 F.3d 115, 126-127 (2d Cir. 2010) (internal citations omitted). That is the situation here.

---

[10] The relevant law to be applied here is New York law because the Shareholders Agreement contains a New York choice-of-law provision. *See De Gracia v. Royal Caribbean Cruises Ltd.*, 21-cv-22948, 2022 WL 91945, at *4-6 (S.D. Fla. Jan. 7, 2022) (court applies the choice-of-law provision contained in the agreement to arbitrate).

The claims raised in the proposed amended complaint are inextricably intertwined with the Shareholders Agreement signed by Terra, and, therefore, Terra should be compelled to arbitrate this dispute. The proposed amendment itself shows Terra cannot challenge GSG's representation of the Company without reference to the Shareholders Agreement. (*E.g.*, ECF No. 35-1, ¶ 10-17, 23-28, 38-39.) Yet, Terra seeks to do circumvent the Tribunal with the proposed amendment, and concedes as much, alleging:

> [Plaintiffs] ha[ve] not made formal demand upon the board of directors to institute this action because such a demand would be futile. Both Mr. Ranieri and Mr. Mandel, the board directors who were appointed by Peppertree, are interested in having Schachter and GSG represent the Company in the Underlying Arbitration, to which they are also a party to.

*See id.* ¶ 59. This is also clear from Plaintiffs' prayer for relief in the proposed amended complaint where they seek "an order that disqualifies Mr. Schachter and GSG from representing the Company in the Underlying Arbitration." (*See id.* at16.) While now masquerading as claims for legal malpractice and breach of fiduciary duty, the proposed amended complaint, in reality, seeks to relitigate arbitrable issues that relate to a controversy, claim, or dispute arising out of or in connection with the Shareholders Agreement, namely, whether GSG should continue to be engaged as Company counsel. *See* § 4.04(a)(xviii). Accordingly, these issues, which are intertwined with the Shareholders Agreement, should be arbitrated.

While GSG may not be a signatory to the Shareholders Agreement, Plaintiffs' alleged dispute and proposed claims against GSG arise from "a relationship which is governed by an agreement to arbitrate." *See Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 358 (2d Cir. 2008). In this case, all of the Company's shareholders—including Terra—affirmatively entered into a relationship with GSG by executing the March 19, 2021 Framework Agreement and by engaging GSG as Company counsel. (ECF No. 35-1 ¶ 28.) This relationship is governed by the Shareholders Agreement. *See* § 4.04(a)(xviii).  It would be "inequitable for [Plaintiffs] to refuse to arbitrate on the ground that [they] had made no agreement with [GSG]." *Sokol Holdings, Inc.*, 542 F.3d at 361. Thus, based on principles of estoppel, the issues raised in Plaintiffs' proposed amended complaint would have to be dismissed or stayed in favor of the agreed-upon arbitration forum, and would therefore be futile.

### 3. Even if Plaintiffs Had the Right to Litigate These Matters in Court, They Waived any Right by Litigating Them in the Arbitration.

Even assuming that the Plaintiffs had a right to litigate these issues in a court (they do not), "a party can waive its ability to litigate by engaging in arbitration," and that is precisely what Plaintiffs have done. *See City of Miami v. Fraternal Order of Police Lodge, #20*, 248 So. 3d 273, 278 (Fla. 3d DCA 2018).

Plaintiffs are effectively asking this Court to vacate and/or revisit the Tribunal's interim orders in the arbitration, including the December 8 and 23, 2021 orders that confirmed GSG's role as Company counsel in the arbitration and its entitlement to its attorneys' fees for services rendered in connection with the arbitration. (ECF No. 17-1, at 555-56, 567-71.) The relief sought by the proposed amended complaint is for this Court to: (A) "disqualify Mr. Schachter and GSG from representing the Company in the Underlying Arbitration"; and (B) "terminate any further payment obligations for attorneys' fees incurred by [the Company]." (*See* ECF No. 35-1, at 16.)

Plaintiffs are pursuing this relief in the wake of orders by the Tribunal that have clearly and plainly stated that "a change in Company counsel…is central to the management of the Company's affairs, and should be decided by the Board upon the proposal of those shareholders seeking to change the status quo." (*See* ECF No. 17-1, at 567-71 (Dec. 23, 2021 Order ¶ 6).) In the event of a dispute about who should represent the Company in the arbitration as Company counsel, such a dispute arises out of the Shareholders Agreement and, therefore, is "squarely within [the Tribunal's] jurisdiction" to adjudicate. *See id.* And Plaintiffs concede in the proposed amended complaint that the issues therein have not been brought to the Board (*see* ECF No. 35-1 ¶ 59).

To illustrate these points, below are two charts showing that: (1) Plaintiffs have already raised these same issues in the arbitration, (2) the Tribunal has decided those issues; and, (3) Plaintiffs are now attempting to relitigate them in this forum:

Chart 1 shows Plaintiffs' recycled contention that Jorge Gaitán is not the CEO of Continental Towers.

### Chart 1

| Plaintiffs' Arguments in the Arbitration | Tribunal's Rulings | Plaintiffs' proposed amended complaint |
| --- | --- | --- |
| | | |

| October 20, 2021 Briefing | November 12, 2021 Order | Paragraphs 36, 37, 51 |
|---|---|---|
| "Indeed, Mr. Gaitán is not the CEO of the Company…. Although he was the original CEO of the Company, he stopped serving in that role in 2016, when a replacement was appointed, and he became COO. *See* Ex. R-51. [Exhibit A to proposed amended complaint]." (ECF No. 17-1, at 535.) | "On March 19, 2021, after this arbitration had begun, it was agreed in writing among the Company, all of the Shareholders, DTH, Jorge Hernandez (the principal of DTH, TBS, and Terra) and Jorge Gaitán, that Mr. Gaitán was the Chief Executive Officer of the Company." (ECF No. 17-1, at 539.) | "36. On October 19, 2021, Plaintiffs learned that Gaitán was not in fact the CEO of the Company when he retained GSG and Schachter to represent Continental Towers." <br><br> "37. Instead, Gaitán had been removed by the Board of Directors as the Company's CEO and was appointed the COO on May 16, 2016. *See* Exhibit A." |
| **November 22, 2021 Motion for Reconsideration** <br> "Since Gaitán was the Board appointed COO of the Company on March 19, 2021, not the CEO, DTH and Terra request that the Tribunal reconsider and reverse its preliminary finding that Gaitán is the Company's CEO and that the Board, through the Framework Agreement, agreed to his appointment as such." (ECF No. 17-1, at 546.) | **December 8, 2021 Order** <br> "By this Order, Respondents' motions for reconsideration and clarification are denied." (ECF No. 17-1, at 555.) | "51. GSG and Schachter have engaged in the following acts . . . Continuing to represent Gaitán and adhering to his instructions even after learning that Gaitán is not the Company's CEO and that he, therefore, has no authority to supervise and control the Company's affairs[.]" (ECF No. 35-1) |

Chart 2 shows how Plaintiffs are seeking the removal of GSG as counsel for Continental.

**Chart 2**

| Plaintiffs' Arguments in the Arbitration | Tribunal's Rulings | Plaintiffs' proposed amended complaint |
|---|---|---|
| **December 20, 2021 Briefing** <br> The Framework Agreement "has since been repudiated by [Plaintiffs], the majority shareholders, due to mutual mistake. All undersigned counsel to the Framework Agreement mistakenly believed at the time of its execution that Mr. Gaitán was in fact the CEO of the Company and therefore, as a member of the Company's | **December 23, 2021 Order** <br> "The shareholders of the Company, by signing the [Framework Agreement] through their counsel, not only confirmed that Mr. Gaitán was the CEO, but also approved the engagement of GSG and Mr. Schachter as counsel to the Company in this arbitration. […] The signing of the [Framework Agreement] by all the | **PRAYER FOR RELIEF** <br> "As to Count I, this Court should enter…an order that disqualifies Mr. Schachter and GSG from representing the Company in the Underlying Arbitration." (ECF No. 35-1.) |

| | | |
|---|---|---|
| Executive Team, had the authority to engage counsel for the Company." (ECF No. 17-1, at 563.) | shareholders through their arbitration counsel at a time when this arbitration had already been pending for six weeks was effectively an action by unanimous written consent of the Board of Directors of the Company. To treat it otherwise would be an inappropriate triumph of form over substance." (ECF No. 17-1, at 568.) | |

As recently as May 9, 2022, the Tribunal (again) ordered GSG's invoices to be paid and also contemplated sanctions against Plaintiffs for non-compliance with the Tribunal's December 8, 2021 Order on the same issue. (*See generally* May 9, 2022 Order). Yet, notwithstanding the Tribunal's May 9 Order, and those that preceded it, Plaintiffs are now pursuing the proposed amendment to get a court to intervene and "terminate any further payment obligations for attorneys' fees incurred by [the Company]." (ECF No. 35-1, at 16.) Plaintiffs' aim is to gut the Tribunal's interim orders related to the full payment of GSG's invoices, despite the Tribunal's finding that "the effective assistance of counsel is important to the integrity of the arbitration as well as the right of a party to participate in the arbitration" (ECF No. 17-1, at 555.)

Accordingly, because the Plaintiffs have already arbitrated these issues, the Court should deny leave to amend, and compel the arbitration of these issues, which have already been decided by the Tribunal.[11]

### C.  The Proposed Amendment Is Deficient and Fails to State a Claim.

Finally, even if Terra could pursue claims arising under the Shareholders Agreement in this Court, the proposed amendment is futile because it would be subject to dismissal for failure to state a claim.

To begin, the claims are not yet ripe because they are premised on an ongoing representation of the Company in an arbitration proceeding that has not yet concluded. A

---

[11] Notably, while now trying to re-litigate arbitration issues relating to GSG in this forum, Plaintiffs are simultaneously pursuing an actual vacatur proceeding in the United States District Court for the Southern District of New York. (*See* Defendants' Motion to Transfer Venue, ECF No. 14.)

malpractice cause of action accrues only when the client "incurs damages at the conclusion of the related or underlying judicial proceedings or, if there are no related or underlying judicial proceedings, when the client's right to sue in the related or underlying proceeding expires." *Perez-Abreu, Zamora & De La Fe, P.A. v. Taracido*, 790 So. 2d 1051, 1054 (Fla. 2001). The reasoning behind this bright-line rule is evident: "it cannot be known with sufficient certainty that the client has suffered *any loss* caused by the lawyer's negligence until the finality of a judgment adverse to the client." *Larson & Larson, P.A. v. TSE Indus., Inc.*, 22 So. 3d 36, 42 (Fla. 2009) (emphasis in original) (citing *Silvestrone v. Edell*, 721 So.2d 1173, 1175-76 (Fla. 1998)). As Terra explains, GSG was retained to represent the interests as a nominal party in the Underlying Arbitration proceeding." (ECF No. 35-1 ¶ 23.) Because the underlying arbitration is ongoing, it cannot be known whether the client will ultimately suffer any loss. Terra's claims would therefore be subject to dismissal. *See Picazio v. Melvin K. Silverman & Assocs., P.C.*, 965 F. Supp. 2d 1411, 1415 (S.D. Fla. 2013) (dismissing malpractice and breach of fiduciary duty claims on the ground that they were not yet ripe because the patent in question had not yet been issued).

Relatedly, the proposed complaint fails to allege facts to plausibly allege breach of duty or proximate causation. Both a legal malpractice claim and a breach of fiduciary duty claim require the plaintiff to show that there was a breach or neglect of a duty that was the proximate cause of the loss to the client. *See Picazio*, 965 F. Supp. 2d at 1414-15. Aside from conclusory allegations, Terra fails to allege any *facts* to establish any breach of duty or to plausibly show that such a breach proximately caused an injury to the Company.

Terra has "simply not connected" any breaches of duty "as proximate causes to any particular damages [the Company] has incurred." *See Hakim-Daccach v. Knauf Int'l GmbH*, No. 17-20495, 2017 WL 5634629, at *6 (S.D. Fla. Nov. 22, 2017) (Scola, J.) (denying motion for leave to file amended complaint). Instead, it merely rehashes the same issues it has complained about in the pending arbitration. First, Terra complains that GSG breached its duty to the Company because GSG distributed to all shareholders documents received from the Company's CFO containing information "relevant in rendering legal advice to the Company." (ECF No. 35-1 ¶ 30-33.) Terra states that this was an improper disclosure of privileged communications, but does not explain how or why these materials were supposedly privileged, nor how that disclosure harmed the Company in any way. Second, Terra alleges that, in the underlying arbitration, GSG "expressly undertook to represent the personal interests of Gaitán" and other employees by stating that they were

wrongfully terminated by Terra and making them available for interviews with Peppertree and AMLQ. (*Id.* ¶ 34-35.) Even assuming these facts are true,[12] Terra does not explain why these actions were not in the best interests of the Company or how they injured the Company. (*Id.*) Third, Terra alleges that pursuant to the Shareholders Agreement, Gaitán did not have authority to engage GSG. (*Id.* ¶ 36-39.) Terra does not allege that GSG knew Gaitán purportedly was not the CEO, nor does it identify how Gaitán's lack of capacity resulted in GSG proximately injuring the Company.[13] Finally, Terra alleges several purported "acts of malfeasance that harmed the Company," including several supposed ultra vires actions taken by Gaitán to contract with a Panamanian company (O.F.G.) to perform certain construction work. (*Id.* ¶ 43-48.) These allegations have nothing to do with GSG. Terra does not allege, for example, that GSG knew or had any involvement in Gaitán's purported malfeasance.

In short, Terra does not explain how any actions by GSG—even if true—proximately caused injury to the Company. The proposed claims thus fail to state a claim.

<u>CONCLUSION</u>

Allowing the filing of a professional malpractice lawsuit (even a frivolous one such as the proposed amendment) has potentially serious and significant consequences for a law firm and a lawyer. Plaintiffs know this and seek leave to continue their campaign to try to intimidate and force the ouster of GSG as counsel for Continental. GSG respectfully requests that the Court not permit this amendment.

For the foregoing reasons, Defendants Adam Michael Schachter and Gelber Schachter & Greenberg, P.A. respectfully request that the Court enter an order denying Plaintiffs' Amended Motion for Leave to Amend their Complaint.

---

[12] Terra fails to allege that the employees were <u>not</u> wrongfully terminated by Terra.

[13] In any event, Terra alleges that it has begun the process before the Arbitral Tribunal to remove Mr. Gaitán from the Company. (ECF No. 35-1 ¶ 49.) The Framework Agreement contemplates that, should Mr. Gaitán no longer be the CEO, GSG will take direction from another designated person. (*Id.* at 36.) Thus, the remedy for this dispute is already being handled in arbitration.

**SPECIALLY APPEARING DEFENDANTS TELECOM BUSINESS
SOLUTION, LLC AND LATAM TOWERS, LLC' RESPONSE TO
PLAINTIFFS' RENEWED MOTION FOR LEAVE TO AMEND**

Procedurally, the Court should not entertain the Renewed Motion because the claims set forth in the current operative Complaint (ECF No. 31-4) are arbitrable, and arbitrability is a *threshold* issue of subject matter jurisdiction.  Peppertree's position is that this threshold issue of arbitrability (including the issue of who decides it) should be decided by the United States District Court for the Southern District of New York (the "SDNY")—the court in which matters related to the underlying arbitration are already pending and that has personal jurisdiction over Peppertree and AMLQ.  Therefore, Peppertree respectfully requests that the Court grant Defendants' Motion to Transfer Venue (the "Motion to Transfer," ECF No. 14), so that the SDNY may grant Defendants' Motion to Compel Arbitration or, in the Alternative, Stay the Proceedings Pending Arbitration (the "Motion to Compel Arbitration," ECF No. 17).  In the alternative, Peppertree respectfully requests that this Court grant the pending Motion to Compel Arbitration.

In 2015, Terra, Peppertree, and AMLQ agreed that "any controversy, claim or dispute arising out of or relating to or in connection with" the Shareholders Agreement of the Company— of which Terra, Peppertree, and AMLQ are shareholders—would "be settled by binding arbitration" which "shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association [the "AAA Rules"]."  (ECF No. 17-1 at Ex. 1 §§ 8.14-8.15.)  For the reasons set forth in the Motion to Compel Arbitration, the operative Complaint, which was filed on March 7, 2022 and removed to this Court on April 18, 2022, improperly asks a court to decide issues that are undoubtedly arbitrable.  Now, by filing its Renewed Motion, Terra doubles down on its improper gambit by asking this Court to permit it to amend its facially flawed Complaint—which belongs in arbitration—pursuant to the ***Federal Rules of Civil Procedure***. (ECF No. 32 (Renewed Motion) at 1.)  Yet, in 2015, Terra agreed that this dispute would be controlled by "***the Commercial Arbitration Rules of the American Arbitration Association***." (ECF No. 17-1 at Ex. 1 § 8.15 (emphasis added).)  In sum, Terra's attempt to circumvent the binding arbitration agreement and the AAA Commercial Rules should be rejected, and the operative Complaint should be compelled to arbitration, where it belongs.

When an agreement, such as the Shareholders Agreement, "incorporat[es] the AAA Rules," the "parties clearly and unmistakably agreed that ***the arbitrator*** should decide" the

threshold issue of arbitrability. *Terminix Intern. Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005) (emphasis added); *see also Norfolk Southern Ry. Co. v. Florida East Coast Ry., LLC*, No. 3:13-cv-576, 2014 WL 757942, at *10 (M.D. Fla. Feb. 26, 2016) (the "Agreement's reference to the AAA Commercial Rules constitutes evidence of a clear and unmistakable mutual intent to delegate decisions regarding arbitrability to the arbitrator."). Because the Shareholders Agreement clearly and unmistakably delegates the decision of arbitrability to an arbitrator, an arbitrator—not this Court—must decide the "***threshold jurisdictional questions***" at issue here. *De Pombo v. IRINOX North America, Inc.*, No. 20-cv-20533, 2020 WL 2526499, at * 7 (S.D. Fla. May 18, 2020) (emphasis added). Indeed, the arbitrability of the claims in the operative Complaint is a threshold matter of this Court's very subject matter jurisdiction. *See, e.g., Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 229 F. Supp. 3d 1284, 1293 (S.D. Fla. 2017) ("The Eleventh Circuit treats a motion to compel arbitration as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.").

Terra's attempt to submit arbitrable issues to a court, and then to use court rules, instead of the agreed AAA Rules, to amend its fatally flawed Complaint is wholly improper. Because the operative Complaint presents arbitrable issues, it must be compelled to arbitration. Once in arbitration, Terra can avail itself of the amendment process set forth in the AAA Rules. It cannot, however, use court rules to avoid its promise to arbitrate. *See, e.g., Suarez-Valdez v. Shearson Lehman/American Exp., Inc.,* 858 F.2d 648, 649 (11th Cir. 1988) ("An agreement to arbitrate is an agreement to proceed under arbitration and ***not under court rules***") (emphasis added).

This is especially critical here, where the Court does not have personal jurisdiction over Peppertree or AMLQ in the first instance. (*See* ECF Nos. 12 and 13.) Because the Court lacks personal jurisdiction over Peppertree and AMLQ, as set forth in its prior filings, Peppertree contends that the Court should transfer this matter to the SDNY because (1) it is the proper and contractually agreed venue for disputes among the parties; (2) it has personal jurisdiction over Peppertree and AMLQ (and GSG has agreed to submit to jurisdiction there for purposes of this matter); and (3) litigation related to the underlying arbitration, in which Terra, DT Holdings, Inc., Peppertree, and AMLQ are all parties, is already pending there before Judge Kaplan. (*See* ECF No. 14 (Motion to Transfer).) The SDNY should then rule on the pending Motion to Compel Arbitration.

For the foregoing reasons, Peppertree respectfully requests that this Court not entertain the Renewed Motion but, rather, either (1) grant the Motion to Transfer Venue (ECF No. 14) and transfer this case to the SDNY, which then should grant the Motion to Compel (ECF No. 17) to permit the arbitrators to resolve the *threshold* jurisdictional issue of arbitrability; or (2) in the alternative, grant the pending Motion to Compel Arbitration.

Dated:  May 16, 2022                    Respectfully submitted,

                                        By: */s/ Roberto Martínez*
                                        Roberto Martínez
                                        Florida Bar No. 305596
                                        Stephanie A. Casey
                                        Florida Bar No. 97483
                                        **COLSON HICKS EIDSON, P.A.**
                                        255 Alhambra Circle, Penthouse
                                        Coral Gables, Florida 33134
                                        Phone: (305) 476-7400
                                        bob@colson.com
                                        scasey@colson.com

                                        *Counsel for Adam Michael Schachter and
                                        Gelber Schachter & Greenberg, P.A.*


                                        By: */s/ Marcos D. Jiménez*
                                        Marcos D. Jiménez
                                        **MARCOS D. JIMÉNEZ, P.A.**
                                        255 Alhambra Circle
                                        Coral Gables, FL 33134
                                        Phone: (305) 570-3249
                                        mdj@mdjlegal.com

                                        Michael N. Ungar*
                                        Katherine M. Poldneff*
                                        Gregory C. Djordjevic*
                                        **ULMER & BERNE LLP**
                                        1660 W 2nd Street, Suite 1100
                                        Cleveland, OH 44113
                                        Phone: (216) 583-7000
                                        mungar@ulmer.com
                                        kpoldneff@ulmer.com
                                        gdjordjevic@ulmer.com

                                        *Application seeking admission pro hac vice
                                        forthcoming

                                        *Counsel for Defendants Telecom Business
                                        Solution, LLC and LATAM Towers, LLC*