UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO: 1:22-cv-21204-SCOLA/GOODMAN

TERRA TOWERS CORP. and TBS
MANAGEMENT, S.A.,

    Plaintiffs,

vs.

ADAM MICHAEL SCHACHTER,
GELBER SCHACHTER & GREENBERG,
P.A., CONTINENTAL TOWERS LATAM
HOLDINGS LIMITED, TELECOM
BUSINESS SOLUTION, LLC, LATAM
TOWERS, LLC, AMLQ HOLDINGS
(CAY) LTD., and DT HOLDINGS, INC,

    Defendants.
_____/

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF AMENDED
RENEWED MOTION FOR LEAVE TO AMEND COMPLAINT**

Plaintiffs Terra Towers Corp. and TBS Management, S.A, (collectively "Plaintiffs"), by and through undersigned counsel, file the instant Reply in further support of their Amended Renewed Motion for Leave to File a First Amended Complaint (the "Motion), *see* [ECF No. 35]. In support thereof, Plaintiffs state as follows:

### PLAINTIFFS' REPLY TO DEFENDANTS GSG'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR LEAVE TO AMEND

**I. Plaintiffs have not sought leave to amend the state court complaint in bad faith.**

GSG first argues that the Court should deny the Motion because Plaintiffs have purportedly made a bad faith attempt to amend the state court complaint to "forum shop, obtain a remand, and avoid a ruling on the merits of the motion to compel arbitration." [ECF No. 36 p. 4]. In support of this contention, GSG asserts, among other things, that Plaintiffs have revealed their purported intention to improperly circumvent this Court's federal subject matter jurisdiction in both their Motion seeking leave and in e-mail communications that counsel for Plaintiffs circulated among the Parties to comply with the conferral requirements set forth in the Local Rules [ECF No. 36 pp. 3-4]. There is, however, no indication in the record that Plaintiffs have sought leave to amend in bad faith, and the inapposite authority that GSG relies on in opposition to the Motion does not support denial of leave to amend in the instant case.

As an initial matter, in opposing Plaintiffs' Motion, GSG relies on the mistaken assumption that Plaintiffs' current claims for rescission and injunctive relief provide them an entitlement to removal on the basis of federal question jurisdiction. GSG also mistakenly assumes that, through the act of seeking leave to amend and communicating the legal basis for seeking leave to opposing counsel, Plaintiffs have somehow conceded that their current claims for relief are subject to removal. Plaintiffs, however, argue in their pending Motion to Remand that the Court should enter an Order remanding these proceedings under either the current iteration of the complaint or Plaintiffs' proposed First Amended Complaint [ECF No. 38 pp. 8-9]. As to the current iteration of the complaint, Plaintiffs have argued that removal is inappropriate because there is, at most, an attenuated nexus between Plaintiffs' current state law equitable claims, the Framework Agreement executed by the Parties, the compulsory arbitration provisions in the Shareholders Agreement and the removal procedure set forth in the New York convention, *see* 9 U.S.C. § 205. With respect to

the proposed First Amended Complaint, Plaintiffs raise the uncontroversial and well-settled point that state law causes of action based on allegations of professional misconduct by an attorney are best left to resolution by a state court [ECF No. 38 p. 10 (citing *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996))]. Plaintiffs, therefore, have maintained that remand is appropriate under either iteration of the complaint, and they are seeking to replace the current state law equitable claims with state law legal claims, *see* [ECF No. 35-1], that better serve Plaintiffs' ultimate objective of preventing GSG from continuing its deleterious representation of the Company. In contrast, GSG has cited a litany of inapposite decisions where courts denied motions seeking leave to amend a complaint because the plaintiffs in those cases made deliberate attempts to circumvent federal subject matter jurisdiction by eliminating federal statutory causes of action from their original pleadings, because they attempted to destroy diversity jurisdiction by adding new, non-diverse defendants or for reasons completely unrelated to the bad faith factor.[1] As such, Plaintiffs' Motion and the contemporaneously filed Motion to Remand [ECF No. 38] are factually distinguishable from the litany of irrelevant decisions that GSG cite in opposition to the Motion because Plaintiffs' proposed First Amended Complaint does not attempt to eliminate any federal

---

[1] *See* [ECF No. 36 pp. 3-4 (citing *Bouie v. Equistar Chemicals LP*, 188 F. App'x 233, 238 (5th Cir. 2006) (affirming district court's denial of motion for leave to amend where the plaintiff attempted to remove federal statutory causes of action in proposed amended complaint to obtain remand)); *VTX Commc'ns, LLC v. AT&T Inc.*, No. 7:19-CV-269, 2020 WL 918670, at *6 (S.D. Tex. Feb. 26, 2020) (denying leave to amend where plaintiffs omitted "federal question language" from operative pleading in proposed amended complaint and where allowing amendment would cause undue delay in a case that had been pending for over three years); *Sutton v. Seaman*, No. 13-61933-CIV, 2014 WL 12861089, at *2 (S.D. Fla. July 17, 2014) (denying motion seeking leave to amend because plaintiff attempted to add unrelated claims against a new defendant for the purpose of destroying diversity and the plaintiff failed to offer any reason why adding this unrelated defendant was appropriate at such an advanced juncture of the proceedings); *Mr. Charley's Fun Jumps, LLC v. JRK Residential Grp., Inc.*, No. 3:12-CV-703-CWR-LRA, 2013 WL 3543685, at *2 (S.D. Miss. July 11, 2013) (denying motion for leave to amend and contemporaneously filed motion to remand where it was clear that plaintiff's motion was a bad faith attempt at forum manipulation because it attempted to eliminate the complaint's claims under the Telephone Consumer Protection Act, which served as the basis for federal subject matter jurisdiction); *Andrews v. Radiancy, Inc.*, No. 616CV1061ORL37GJK, 2017 WL 552873, at *2 (M.D. Fla. Feb. 10, 2017) (denying defendant's bad faith argument in opposition to plaintiff's motion for leave to amend and granting plaintiff leave to file amended pleading).

statutory causes of action (none were asserted in the state court complaint), it does not add any new, non-diverse defendants to destroy diversity, and it was filed with the Court on a timely basis.[2]

Next, GSG argues, without citation to authority, that leave should be denied because, among other reasons, "Terra's purported 'neutral' reason for the amendment also rings hollow[,] [and]… Terra does not provide any additional allegations to support its claims." [ECF No. 36 p. 4]. As the new allegations within the proposed First Amended Complaint reveal, this contention is not factually accurate, *compare* [ECF No. 35-1 ¶¶50-54 (proposed First Amended Complaint)] *with* [ECF No. 1-4 ¶¶32-38 (state court complaint)]), but, even if it were, GSG have not offered any authority that would preclude Plaintiffs' proposed amended pleading on this ground.

Moreover, following the submission of Defendants' myriad of dispositive motions, Plaintiffs determined that they could more expeditiously achieve their goal of preventing GSG from continuing its harmful representation of the Company by proceeding with the claims set forth in the proposed First Amended Complaint, which is a permissible maneuver pursuant to the Federal rules of civil procedure. *See Gomer v. Home Depot U.S.A., Inc.*, No. CV GLR-16-356, 2016 WL 5791226, at *5 (D. Md. Oct. 4, 2016) "[T]here is nothing improper about [plaintiff] using his Second Amended Complaint to attempt to shore up his allegations in response to [defendant's] Motion to Dismiss, as long as [plaintiff] has not repeatedly failed to remedy deficiencies by amendments the Court previously allowed."); *In re Chesapeake Energy Corp. 2012 S'holder Derivative Litig.*, No. CIV-12-436-M, 2015 WL 12831483, at *2 (W.D. Okla. Feb. 9, 2015) ("Plaintiff's proposed amendments are in response to arguments made by Chesapeake in its motion to dismiss, and plaintiff filed his motion to amend within a month of Chesapeake's motion.

---

[2] The final inapposite case GSG relies on in support of their bad faith argument is *Pfeiffer v. Ajamie PLLC*, No. 4:19-CV-02760, 2020 WL 5441441, at *2 (S.D. Tex. Sept. 10, 2020). In this case, the district court denied a plaintiff's motion for leave to amend where the plaintiff sought to eliminate the federal claims that conferred subject matter jurisdiction upon the court just one day after the court entered a preliminary injunction against the plaintiff. *Id* at *2-3. Among other things, the court found that plaintiff had engaged in bad faith where its attorney had sent *ex parte* e-mails to the court's case manager expressing plaintiff's intention to "voluntarily dismiss the federal claims and deprive the [c]ourt of jurisdiction." *Id*. As with the aforementioned cases cited by GSG, the *ex parte* e-mails sent to the court by the plaintiff's attorney in *Pfeiffer* are not factually analogous to the e-mails that counsel for Plaintiffs circulated among the Parties in the instant case for the purpose of conferring on a good-faith basis.

Additionally, the Court finds no bad faith or dilatory motive on the part of plaintiff in filing the motion to amend."); *Erickson v. Alacrity Servs., LLC,* No. 1:16-CV-459-SCJ, 2017 WL 7615572, at *3 (N.D. Ga. Mar. 31, 2017) (noting that a plaintiff may request leave to amend in response to arguments raised in a motion to dismiss.).

Finally, even if Plaintiffs attempted to amend their state court complaint for the sole purpose of obtaining remand,[3] forum manipulation is only one non-dispositive factor that courts consider in determining whether to grant remand, and not when considering whether to grant leave to amend a complaint pursuant to Federal Rule of Civil Procedure 15(a)(2). *See Capital, LLC v. KBR Group, LLC*, 2010 WL 1525453 at *2 (S.D. Cal. 2010) ("[Plaintiff's strategy of seeking leave to amend in order to defeat removal] is not grounds for finding bad faith and has not been held impermissible by the United States Supreme Court or the Ninth Circuit. Rather, the alleged use of manipulative tactics may be taken into account, if at all, in determining whether remand is appropriate.") (citations omitted); *Parker v. Exterior Restorations, Inc*., No. CV 21-0425-WS-B, 2022 WL 1239466, at *3 (S.D. Ala. Apr. 27, 2022) ("The defendants' invitation to consider forum manipulation under Rule 15(a)(2) would appear to be in hopeless tension with [*Carnegie-Mellon University v. Cohill*, 484 U.S. 343 (1988)]."). Additionally, some courts have determined that forum shopping concerns are not implicated where a plaintiff attempts to omit claims that confer subject matter jurisdiction upon a federal court and subsequently moves to remand. *See Lake Cnty. v. NRG/Recovery Grp., Inc.,* 144 F. Supp. 2d 1316, 1321 (M.D. Fla. 2001) ("[A] remand to state court would merely effectuate [plaintiff's] original choice of a state forum and, therefore, the traditional aversion of federal courts to forum shopping is not substantially implicated"). Accordingly, this Court should reject GSG's bad faith argument in opposition to Plaintiffs' Motion.

**II. The Proposed First Amended Complaint is not Futile.**

Defendants GSG next contend that Plaintiffs' proposed First Amended Complaint is futile because Plaintiffs cannot assert derivative claims on behalf of the Company pursuant to purportedly governing British Virgin Islands law, the proposed causes of action are subject to

---

[3] Plaintiffs vigorously maintain that remand is appropriate under either iteration of the complaint and that amendment of the pleadings is being sought to more efficiently achieve Plaintiffs' goal of preventing GSG from continuing its harmful representation of the Company.

arbitration, and Plaintiffs have failed to set forth viable claims for legal malpractice and breach of fiduciary duty. [ECF No. 36 pp. 5-17].

### a. British Virgin Islands law does not bar Plaintiffs' proposed derivative suit on behalf of the Company.

GSG insists that Plaintiffs lack standing to bring their proposed First Amended Complaint because they "did not (and does not allege that it has) sought and obtained leave from the High Court of the British Virgin Islands (the "BVI High Court") to assert them here, as required under BVI law." [ECF No. 36 p. 6]. GSG invokes §184C of the BVI Business Companies Act in support of its claim that Plaintiffs must first obtain leave from the BVI High Court prior to initiating a derivative action. [ECF No. 36 p. 7]. GSG's argument, however, is unavailing because this Court is not bound to apply the procedural judicial-permission requirement set forth in §184C of the BVI Business Companies Act. This Section specifies that "[s]ubject to subsection (3), the Court may, on the application of a member of a company, grant leave to that member to—(a) bring proceedings in the name and on behalf of that company; or (b) intervene in proceedings to which the company is a party…." [ECF No. 36-2 p. 13]. Contrary to GSG's argument, §184C of the BVI Business Companies Act does not contain any provision that requires a BVI company to seek leave to file a derivative action outside of the British Virgin Islands. As such, based on the statutory text quoted above, §184C of the BVI Business Companies Act requires only that a plaintiff asserting a derivative action *in the British Virgin Islands'* court system first petition the High Court of the British Virgin Islands for leave before initiating legal proceedings. §184C of the BVI Business Companies Act therefore imposes a procedural bar on derivative actions that are commenced before first obtaining leave, but only as to derivative actions initiated in the British Virgin Islands, not for derivative actions anywhere in the world concerning BVI incorporated companies. Moreover, this Court is not bound by the procedural requirements set forth by foreign courts or legislatures. *See Nigeria Nat. Petroleum Corp. v. S/V Seabulk Merlin*, 410 F. Supp. 2d 1218, 1224 (S.D. Fla. 2005) ("Because limitation of liability pursuant to the Nigerian MSA is a matter of procedural law, the Court will apply the U.S. limitation act….) (citations omitted).

In the alternative, if this Court concludes that Plaintiffs must seek leave from the High Court of the British Virgin Islands before proceeding with the proposed First Amended Complaint under §184C of the BVI Business Companies Act, Plaintiffs respectfully request that any such

denial of leave to amend be done without prejudice. *See Microsoft Corp. v. Vadem, Ltd*., No. CIV.A. 6940-VCP, 2012 WL 1564155, at *6 (Del. Ch. Ct. Apr. 27, 2012), aff'd, 62 A.3d 1224 (Del. 2013) ("Here, there is good cause not to dismiss Microsoft's derivative claims with prejudice…. [t]herefore, I dismiss Counts I through VI without prejudice to Microsoft's ability to refile these claims after it seeks leave in the [British Virgin Islands]").

### b. The claims asserted within the proposed First Amended Complaint are not subject to arbitration and are not currently before the Tribunal in the underlying arbitration proceedings.

GSG next asserts that the proposed First Amended Complaint is futile "because the dispute underlying the proposed claims are subject to arbitration, the Arbitral Tribunal has determined they are arbitrable, and, indeed they are currently being arbitrated." [ECF No. 36 pp. 8-9]. However, the claims for relief set forth in both the current state court complaint and the proposed First Amended Complaint are not subject to arbitration and are completely untethered from the claims at issue in the underlying arbitration proceedings. In brief, the underlying arbitration arises from Peppertree's Request for Arbitration, wherein it asserts various claims, both in its individual capacity and derivatively, for monetary and equitable relief against Plaintiffs and the Company's directors. More specifically, Peppertree seeks damages due to Terra's purported improper refusal to sell the Company pursuant to the Shareholders agreement, or in the alternative, specific performance to compel Terra's sale of the Company. Plaintiffs also filed counterclaims in the underlying arbitration asserting that Peppertree and AMLQ committed breaches of contract and breaches of fiduciary duty due to, among other things, their interference with a potential sale of the Company and their rejection of tower construction projects.

In contrast, the current state court complaint seeks rescission of the Framework Agreement, which only specifies the terms under which Mr. Schachter and GSG will represent the Company in the underlying arbitration. These claims are based on, among other things, allegations that Mr. Gaitan lacked the requisite corporate authority to engage counsel for the Company in the underlying arbitration proceedings. The proposed First Amended Complaint asserts claims for legal malpractice and breach of fiduciary duty against GSG based on allegations that they engaged in professional misconduct when they disseminated privileged communications that were sent to them by a Company official during the pendency of the underlying arbitration proceedings.

These allegations suggest, at most, that there is a tangential nexus between the Framework Agreement, GSG's misconduct in its representation of the Company and the arbitration provisions within the Shareholders Agreement. The arbitration provisions within the Shareholders Agreement broadly provide that "any controversy, claim or dispute arising out of or relating to or in connection with [the Shareholders] Agreement…." "will be finally settled by binding arbitration." [ECF No. 14-1 p. 49 §§ 8.14, 8.15]. Simply put, disputes concerning GSG's improper retention and their subsequent professional misconduct in representing the Company during the underlying arbitration are not controversies that arise under the Shareholders Agreement. This is so because the broad arbitration provisions within the Shareholders Agreement do not encompass the Framework Agreement, which sets forth the terms of the Company's legal representation, and because claims involving professional misconduct by an attorney representing one of the Parties to the Shareholders Agreement simply does not fall within the universe of subject matter covered by the arbitration provisions. *See Frankel v. St.*, No. 07-60948- CIV, 2007 WL 9700558, at *2 (S.D. Fla. Dec. 19, 2007) ("An agreement to arbitrate is contractual and therefore ordinarily third parties do not have standing to invoke the terms of an arbitration agreement."); *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–49 (1986) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration.") (citations and quotations omitted). Importantly, GSG are not signatories to the Shareholders Agreement they invoke to argue that Plaintiffs' current and proposed claims are subject to arbitration. As such, GSG and Mr. Schachter's sole nexus to the underlying arbitration is that they represent a nominal party in those proceedings, the Company, which is the actual signatory to the subject Shareholders Agreement. Finally, because Plaintiffs seek to disqualify GSG from continuing its legal representation of the Company, Plaintiffs' proposed claims are not subject to arbitration as a matter of policy. *See Morgan Stanley DW, Inc. v. Kelley & Warren, P.A.*, 2002 WL 34382748 at *2 (S.D. Fla. May 10, 2002) ("[T]he issue of possible attorney disqualification should be decided, not by arbitrators, but by the courts.") (citation omitted).

### c. Plaintiffs' proposed First Amended Complaint sets forth viable causes of action for legal malpractice and breach of fiduciary duty.

According to GSG, Plaintiffs' proposed First Amended Complaint is futile because the legal malpractice claim is not yet ripe, as GSG's representation of the Company in the underlying proceedings has not concluded. [ECF No. 36 pp. 15-16]. Moreover, in GSG's view, Plaintiffs' proposed breach of fiduciary duty claim "fails to allege any facts to establish any breach of duty or to plausibly show that such a breach proximately caused an injury to the Company." [ECF No. 36 pp. 16].

With respect to Plaintiffs' proposed legal malpractice claim, the fact that the underlying arbitration has not concluded does not foreclose Plaintiffs' proposed legal malpractice claim. Although the underlying arbitration has not concluded, Plaintiffs have already suffered redressable harm due to GSG's improper ongoing representation. For example, the Company has incurred substantial attorneys' fees for legal counsel that is essentially representing a malfeasant official (Mr. Gaitán) against the Company's best interests. Moreover, even if the ongoing arbitration proceedings prevent Plaintiffs' proposed legal malpractice claim at this juncture, a stay or abatement as to the legal malpractice claim pending resolution of the underlying arbitration, and not dismissal, would be the only potential defense available to GSG. *See Blumberg v. USSA Cas. Ins. Co.*, 790 So.2d 1061, 1065 (Fla. 2001) (holding that the proper defense for a legal malpractice claim prior to the conclusion of the underlying proceedings is an abatement or stay of the claim for legal malpractice claim specifically).

As to Plaintiffs' proposed breach of fiduciary duty claim, the proposed First Amended Complaint properly sets forth the requisite allegations in support of this claim. To assert a viable claim for breach of fiduciary duty pursuant to Florida law, a plaintiff must allege "the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). The proposed First Amended Complaint elucidates how GSG, the Company's counsel, breached their duty by disseminating privileged information to all parties in the underlying arbitration and by continuing to represent Mr. Gaitan's personal interest to the detriment of the Company. [ECF No. 35-1 ¶¶72-77]. Indeed, the proposed First Amended Complaint also contains allegations detailing how GSG has continued to counsel Mr. Gaitan despite GSG's awareness of all the harmful acts of corporate malfeasance

that Mr. Gaitan has engaged in. It also contains allegations showing that, as a proximate cause of GSG's negligence, the Company is presently incurring substantial fees to compensate attorneys that violated their duty of loyalty to the Company. As such, neither of Plaintiffs' proposed claims are futile.

**PLAINTIFFS' REPLY TO DEFENDANTS TELECOM BUSINESS SOLUTION, LLC, AND LATAM TOWERS, LLC'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR LEAVE TO AMEND**

**III. The Court should render a ruling on Plaintiffs' Amended Renewed Motion for Leave to Amend prior to considering the pending Motion to Compel Arbitration.**

The Peppertree entities contend that the Court should not render a ruling on Plaintiffs' Motion until it has entered a decision on the pending Motion to Compel Arbitration [ECF No. 17] because, among other things, "arbitrability is a threshold issue of subject matter jurisdiction." [ECF No. 36 p. 18]. Peppertree's arguments are unsupported by relevant federal authority. It is well-settled that the Court must first determine whether it has subject matter jurisdiction over this action before assessing whether it may order the Parties to submit to arbitration pursuant to the arbitration provisions in the Shareholders Agreement. *See Vaden v. Discover Bank,* 556 U.S. 49, 66 (2009) ("[A] party seeking to compel arbitration may gain a federal court's assistance only if, save for the agreement, the entire, actual controversy between the parties, as they have framed it, could be litigated in federal court.") (quotations omitted); *Lower Colorado River Auth. v. Papalote Creek II, L.L.C.*, 858 F.3d 916, 927 (5th Cir. 2017) ("[W]e have made clear that a district court must have subject matter jurisdiction over the underlying dispute in order to compel arbitration…."); *Jiangsu Guotai Int'l Grp. Guomao Corp., Ltd. v. JAD Int'l Incorporation*, No. 18-CV-2699 (JMF), 2019 WL 1227875, at *1 n.1 (S.D.N.Y. Mar. 15, 2019) ("[S]ubject matter jurisdiction is a threshold issue and, in the absence of subject-matter jurisdiction, the Court has no power to compel arbitration.") (citing *Steel Co. v. Citizens* for a Better Env't, 523 U.S. 83, 93-102 (1998)).

The Court will determine whether it may exercise subject matter jurisdiction over this cause when it evaluates Plaintiffs' Motion to Remand, which is currently pending before this Court [ECF No. 38] and will not be fully briefed until at least June 8, 2022. The Motion to Remand brings this Court's subject matter jurisdiction into question over both the current state court

complaint, and the proposed First Amended Complaint for numerous reasons that have been set out at length in previous submissions to the Court. Accordingly, based on the authority cited above, this Court should not proceed to consider the pending Motion to Compel Arbitration until it has entered a ruling on Plaintiffs' Renewed Motion for Leave to Amend [ECF No. 35] and their pending Motion to Remand [ECF No. 38].

### IV. Conclusion

For the foregoing reasons and those set forth in Plaintiffs' Amended Renewed Motion for Leave [ECF No. 35], this Court should grant Plaintiffs leave to file their proposed First Amended Complaint [ECF No. 35-1].

CASE NO: 1:22-cv-21204-SCOLA/GOODMAN

| | |
|---|---|
| Dated: May 23, 2022. | Respectfully submitted,<br>**CAREY RODRIGUEZ MILIAN, LLP**<br>1395 Brickell Avenue, Suite 700<br>Miami, Florida 33131<br>Telephone: (305) 372-7474<br><br>*/s/ Juan J. Rodriguez*<br>Juan J. Rodriguez<br>Fla. Bar No. 613843<br>Email: jrodriguez@careyrodriguez.com<br>Luke T. Jacobs<br>Fla. Bar. No. 1024686<br>Email: ljacobs@careyrodriguez.com<br>Secondary: cperez@careyrodriguez.com<br>*Attorneys for Plaintiffs* |