**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO: 1:22-cv-21204-SCOLA/GOODMAN**

TERRA TOWERS CORP. and TBS
MANAGEMENT, S.A.,

    Plaintiffs,

vs.

ADAM MICHAEL SCHACHTER,
GELBER SCHACHTER & GREENBERG,
P.A., CONTINENTAL TOWERS LATAM
HOLDINGS LIMITED, TELECOM
BUSINESS SOLUTION, LLC, LATAM
TOWERS, LLC, AMLQ HOLDINGS
(CAY) LTD., and DT HOLDINGS, INC,

    Defendants.

_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION**
**TO MOTION TO TRANSFER VENUE**

Plaintiffs Terra Towers Corp. and TBS Management, S.A, (collectively "Plaintiffs" or "Terra"), through undersigned counsel, file the instant Response in Opposition to Defendants' Motion to Transfer Venue (the "Motion), *see* [ECF No. 14]. In support thereof, Plaintiffs state as follows:

**I. RELEVANT FACTUAL & PROCEDURAL HISTORY**

On February 2, 2021, Defendants Telecom Business Solution, LLC, and Latam Towers, LLC (collectively "Peppertree"), filed a Demand for Arbitration and Statement of Claim with the American Arbitration Association, bearing case number 01-21-0000-4309 (the "Arbitration"). The Peppertree Defendants asserted claims in the Arbitration against Terra, DT Holdings, Inc. ("DTH"), various directors appointed by Terra to Continental Towers LATAM Holdings Limited ("Continental Towers" or the "Company"), and the Peppertree entities also named the Company and AMLQ Holdings (Cay) Ltd. ("AMLQ"), as "nominal" and "notice" parties. Peppertree based

its claims upon allegations that Terra, DTH and various directors appointed by Terra purportedly committed various breaches of the subject Shareholders Agreement. This Shareholders Agreement contains a dispute resolution section requiring its signatories, the shareholders, to submit certain disputes to arbitration. Specifically, the relevant arbitration provisions within the Shareholders Agreement provide, in relevant part, as follows: "any controversy, claim or dispute arising out of or relating to or in connection with [the Shareholders] Agreement…." "will be finally settled by binding arbitration." [ECF No. 14-1 p. 49 §§ 8.14, 8.15]. Moreover, the Shareholders Agreement specifies that, in the event of a legal controversy between the shareholders concerning their commercial relationship, any such dispute must be arbitrated in New York, New York and that any such proceedings will be governed by New York state substantive law. *See* [ECF No. 14-1 p. 49 §§ 8.10, 8.15].

On March 9, 2021, Mr. Jorge Gaitan, who purported to act as the Company's CEO, retained Defendants Mr. Schachter and GSG for the purpose of representing the Company as a neutral, nominal party in the underlying Arbitration. GSG's representation of the Company was memorialized in an engagement letter that Mr. Gaitan and GSG executed in Miami, Florida. Thereafter, on March 19, 2021, Mr. Schachter and GSG distributed a letter agreement (the "Framework Agreement") to all parties to the Arbitration—that is, all Plaintiffs and Defendants here—in which he described the "general framework under which [GSG] will serve as independent counsel for Continental Towers LATAM Holdings Limited" as a nominal party in the arbitration. Importantly, this Framework Agreement was also executed by all the shareholders and GSG in Miami, Florida. The Framework Agreement specified that Mr. Gaitan was the CEO of the Company and that Mr. Gaitan had retained GSG in that capacity.

It was subsequently discovered, however, that Mr. Gaitan was not the Company's CEO at the time of the Framework and Engagement Agreement's execution, and that he, therefore, lacked the requisite corporate authority to retain counsel on the Company's behalf. Moreover, on or about August 28, 2021, GSG disseminated privileged communications it received from the Company's Management and CFO to all the parties in the underlying Arbitration, including counsel pursuing claims against the Company. Despite the privileged nature of these materials, Mr. Schachter and GSG refused to retract or destroy the privileged communications that they disseminated to all parties in the Arbitration.

CASE NO: 1:22-cv-21204-SCOLA/GOODMAN

Plaintiffs initiated this action in the Eleventh Judicial Circuit in and for Miami-Dade County on March 7, 2022. In brief, Plaintiffs two-count state court Complaint currently asserts a claim for rescission (Count I) and a claim for injunctive relief (Count II) against Defendant GSG, the Company, the Peppertree Entities, AMLQ, and DTH. *See* [ECF No. 1-4]. The claims for rescission and injunctive relief are based on allegations that Plaintiffs were induced to enter the Framework Agreement due to the material mistake of fact that Mr. Gaitan was the Company's CEO when he was really the Company's COO. *See* [ECF No. 1- 4].

On April 18, 2022, Defendants filed their notice of removal. *See* [ECF No. 1]. Defendants filed their Motion to Transfer Venue on April 25, 2022 [ECF No. 14]. Recently, on May 12, 2022, Plaintiffs submitted their Motion for Leave to file a First Amended Complaint. [ECF No. 35]. The proposed First Amended Complaint attached to the Motion for Leave alleges two new causes of action, Legal Malpractice and Breach of Fiduciary Duty, based on allegations that detail Mr. Schachter and GSG's professional misconduct during their ongoing representation of the Company. In addition, the proposed First Amended Complaint removes the current causes of action for rescission and injunctive relief. The proposed First Amended Complaint also removes four Defendants—Telecom Business Solution, LLC, LATAM Towers, LLC, AMLQ Holdings (CAY) Ltd., and DT Holdings, Inc.—and names the Company as a nominal defendant. Plaintiffs also moved to remand these proceedings to state court on May 18, 2022. [ECF No. 38]. Plaintiffs now file the instant response in opposition to the Motion to Transfer Venue.

**II. LEGAL STANDARD**

Section 1404(a) provides as follows: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). As a threshold requirement, before a transferor court may order a transfer under § 1404(a), it must first determine whether it has subject matter jurisdiction and whether it is a proper venue. *See Regenicin, Inc. v. Lonza Walkersville, Inc.*, No. 1:13-CV-3596-TCB, 2014 WL 11930591, at *2 (N.D. Ga. May 1, 2014) ("District courts ask three questions to decide whether transfer is appropriate under § 1404(a). First, are venue and subject-matter jurisdiction proper in the transferor court, i.e., the court in which the transfer motion is made? ***The transferor court needs both in order to transfer under § 1404(a)***.") (citation omitted) (emphasis supplied); *Van Dusen v. Barrack*, 376 U.S. 612, 634 (1964) ("[Section] 1404(a) operates on the premises that

3

the plaintiff has properly exercised his venue privilege [in the transferor court]."). After this threshold determination has been made, courts consider the relevant factors in determining whether a venue transfer is appropriate.

Even after a court determines that it is a proper venue and that it has the requisite subject matter jurisdiction to enter an order transferring venue, federal courts accord considerable deference to a plaintiff's choice of forum. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). Accordingly, when seeking to transfer venue, it is the movant's burden to establish that an alternative forum is more convenient. *See In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). Specifically, a defendant seeking to transfer venue must show that "(1) the action could have been brought in the transferee court; (2) a transfer is in the convenience of the witnesses and parties; and (3) a transfer serves the interest of justice." *LEMANE DEAN WILLIAMS, Plaintiff, v. TERRINA MONGUE KING, Defendant.*, No. 21-CV-22579, 2021 WL 3079873, at *1 (S.D. Fla. July 21, 2021) (citing *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir.1996)). When evaluating the elements set forth above, courts also consider the following non exhaustive list of factors:

> "Plaintiffs' initial choice of forum, convenience of the parties and witnesses, availability of compulsory process for witnesses, relative ease of access to sources of proof, location of relative documents, financial ability to bear the cost of the change, public interest, and all other practical problems that make trial of the case easy, expeditious, and inexpensive.

*Mason v. Smithkline Beecham Clinical Lab'ys*, 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001).

Importantly, the Eleventh Circuit has noted that "'[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations.'" *Robinson,* 74 F.3d at 260 (quoting *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. 1981)). Indeed, "[t]he party objecting to venue must show that the balance of conveniences strongly favors transfer in order to overcome the presumption in favor of the plaintiff's choice of forum." *Nat'l Beverage Corp. v. Energy Brands, Inc.*, No. 08-60792-CIV, 2008 WL 11333336, at *3 (S.D. Fla. Aug. 14, 2008) (citations omitted). The practical result of this principle is that "[d]efendants moving for transfer have a heightened burden as they must prove with particularity the inconvenience caused by the plaintiff's choice of forum." *Mason*, 146 F. Supp. 2d at 1359 (citing *McEvily v. Sunbeam–Oster Co.*, 878 F.Supp. 337, 345 (D.R.I.1994).

4

**III. DISCUSSION**

**a. This Court must determine the existence of subject matter jurisdiction before it may evaluate Defendants' Motion to Transfer Venue.**

As a threshold matter, a transferor court may only enter an order transferring venue to a sister federal court if venue is proper and if subject-matter jurisdiction has been established. *See Wilmot H. Simonson Co. v. Green Textile Assocs., Inc.*, 554 F. Supp. 1229, 1234 (N.D. Ill. 1983) ("Before a transfer can be made under 28 U.S.C. § 1404(a), venue in the transferor court must be proper. In addition, subject matter jurisdiction must be established [in its district].") (citing *Chicago R.I. & P.R. Co. v. Igoe*, 212 F.2d 378 (7th Cir.1954)); *Betz Lab'ys, Inc. v. Cameron*, No. CIV.A. 96-4059, 1997 WL 164234, at *2 (E.D. Pa. Mar. 31, 1997) ("A potential transferor court may, so long as subject matter jurisdiction and venue are proper in its district, transfer a case even when the court lacks personal jurisdiction over one or more defendants.") (citing *States v. Berkowitz*, 328 F.2d 358, 361 (3d Cir. 1964)) (remaining citations omitted); *Integrated Health Servs. of Cliff Manor, Inc. v. THCI Co.*, 417 F.3d 953, 957 (8th Cir. 2005) ("[A] court without subject matter jurisdiction cannot transfer a case to another court under 28 U.S.C. § 1404(a).").

Accordingly, Defendants' Motion should be summarily denied because this Court has not yet determined whether it possesses subject matter jurisdiction over this cause and because Plaintiffs' pending Motion to Remand [ECF No. 38] raises substantial doubts as to the Court's subject matter jurisdiction. *See Richards v. Fla. Dep't of Corr.*, No. 4:21CV58-MW/MJF, 2021 WL 662301, at *1 (N.D. Fla. Feb. 19, 2021) ("As a general rule, this Court should take up a motion to remand prior to transferring venue, because '[d]eterminations of subject matter jurisdiction are preeminent.'" (quoting *Montgomery Kidney Specialists, LLP v. Physicians Choice Dialysis of Ala., LLC*, No. 2:17-cv-668-ECM, 2020 WL 570137, *1 (M.D. Ala. Feb. 5, 2020)); *Smartmatic USA Corp. v. Dominion Voting Sys. Corp.*, No. 13 CIV. 5349 KBF, 2013 WL 5798986, at *3 (S.D.N.Y. Oct. 22, 2013) ("This Court agrees that it must decide Plaintiffs' motion to remand before deciding Defendants' motion to transfer venue or Defendants' motion to dismiss."); *Bank of N.Y. v. Bank of Am.*, 861 F.Supp. 225, 227 (S.D.N.Y.1994) ("Because the removal statute only allows removal of actions within the Court's original jurisdiction, and because fundamental principles of American jurisprudence forbid the Court from acting in the absence of subject matter jurisdiction, ... plaintiffs' [motion to remand] must be examined before any other matter.") (internal citations omitted) (alteration in original); *Callen v. Callen*, 827 F.Supp.2d 214, 215 (S.D. N.Y. 2011)

("When presented with competing motions to remand a case and to transfer venue, a court is to consider the remand motion first, and then address the motion to transfer venue only if it first denies the motion to remand.").

Applying the foregoing authority to the instant case, the Court should deny Defendants' Motion to Transfer Venue [ECF No. 14] because subject matter jurisdiction has not yet been established, and Defendants themselves contend that venue is not proper in this Court. Moreover, Plaintiffs filed their Motion to Remand [ECF No. 38] on May 18, 2022. Plaintiffs' Motion to Remand brings this Court's subject matter jurisdiction into question over both the current state court complaint, and the proposed First Amended Complaint that is attached to the Motion seeking Leave to Amend [ECF Nos. 35, 35-1]. In brief, the Motion to Remand contends that the Court lacks subject matter jurisdiction over both the current and proposed complaints because disputes concerning GSG's improper retention and their subsequent professional misconduct in representing the Company during the underlying Arbitration are not controversies that arise under the Shareholders Agreement, which forecloses Defendants' argument that this Court has federal question jurisdiction pursuant to 9 U.S.C. § 205.

The Court should therefore establish, before it evaluates any other pending motion, whether it may exercise subject matter jurisdiction over this cause by first evaluating Plaintiffs' Motion to Remand, which will not be fully briefed until at least June 8, 2022. *See Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("A necessary corollary to the concept that a federal court is powerless to act without jurisdiction is the equally unremarkable principle that a court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings."). The Motion to Remand brings this Court's subject matter jurisdiction into question due to the numerous reasons that have been mentioned above and set out at length in previous submissions to the Court. Accordingly, for this reason alone, the Court should summarily deny Defendants' Motion to Transfer Venue.

**b. Both Private and Public factors weigh against transferring this matter to the Southern District of New York.**

Even if the Court does not summarily deny Defendants' Motion to Transfer Venue for the reasons set forth above, the Motion should still be denied because private and public factors weigh against transferring this matter to the Southern District of New York. To begin, it is well-settled that Plaintiffs' choice of forum should be given significant deference in the transfer of venue

6

analysis. *See Robinson*, 74 F.3d at 260. Defendants contend that Plaintiffs' choice of forum should be given limited deference in this cause because the operative facts underlying this action primarily occurred outside of Florida [ECF No. 14 pp. 6-7]. Yet this is not factually accurate. The Framework Agreement, which Plaintiffs seek to rescind under the current iteration of the complaint, was executed in Florida by all parties to the Shareholders Agreement, all of which willingly appeared in Florida for this purpose. As such, the allegations concerning Plaintiffs' material mistake of fact as to Mr. Gaitan's purported corporate authority to retain counsel on the Company's behalf, which Plaintiffs principally rely upon in support of their rescission claim, primarily occurred in Florida, where Plaintiffs initiated these proceedings, and not in New York.

Moreover, the Framework Agreement only specifies the terms under which GSG, a Florida firm, will represent the Company, and it does not incorporate or reference any provision within the Shareholders Agreement. Thus, contrary to Defendants' contentions, the central controversies in the underlying Arbitration—disputes concerning the parties' commercial relationship under the Shareholders Agreement—are not inextricably tethered to the issue of whether the Framework Agreement was executed based on a material mistake of fact by Plaintiffs during the infancy of the underlying Arbitration. Stated differently, disputes concerning GSG's improper retention (which occurred in Florida) and their subsequent professional misconduct in representing the Company during the underlying Arbitration are not controversies that arise under the Shareholders Agreement. Accordingly, the allegations and causes of action in both the current and proposed iterations of the complaint primarily took place here in southern Florida, which undercuts Defendants' argument that this action should have been initiated in New York. *See Gubarev v. Buzzfeed, Inc.*, 253 F. Supp. 3d 1149, 1165 (S.D. Fla. 2017) ("In determining the locus of operative facts, the court must look at the site of events from which the claim arises.") (quotations and citations omitted). For this reason, Florida courts have a much greater interest in adjudicating a case involving an agreement that was executed in Florida to procure the legal services of a Florida lawyer, or, in the context of the proposed First Amended Complaint should leave be granted, allegations of professional misconduct by a Florida lawyer. It is therefore also immaterial that the Shareholders Agreement specifies New York as the governing law and as the location of the arbitral seat because a controversy arising form the improper procurement of the Framework Agreement does not arise under the Shareholders Agreement, and, thus, also not governed by New York law.

With respect to Defendants' contention that the bulk of potential witnesses, evidence and locus of facts are centered around New York, Defendants have failed to demonstrate that these factors weigh in favor of transfer. Defendants make the conclusory claim that convenience of the parties, the location of relevant documents and the convenience of witnesses favors transferring this cause to federal court in New York because the underlying Arbitration is taking place in New York and because most Defendants are located there. *See* [ECF No. 14 pp. 7-8]. Defendants, however, do not bother to identify the potential witnesses who would be burdened with traveling from New York to testify in Florida. *Gubarev v. Buzzfeed, Inc.*, 253 F. Supp. 3d 1149, 1166 (S.D. Fla. 2017) ("[T]his Court does not find speculative non-party witnesses are a sufficient justification to disturb Plaintiffs' choice of forum.") (citing *Elite Flower Servs. v. Elite Floral & Produce, LLC*, No. 13-cv-21212, 2013 WL 12095134, at *5 (S.D. Fla. June 18, 2013)). As to the location of relevant documents, this factor does not weigh in favor of transfer because most of the parties' relevant files are in digital formats that can be disseminated with minimal expense and hardship, and Defendants have not shown this factor would result in any more hardship to Defendants in Florida than to Plaintiffs in New York. As such, Defendants have failed to show that "the balance of conveniences strongly favors transfer in order to overcome the presumption in favor of the plaintiff's choice of forum." *Nat'l Beverage Corp.,* No. 08-60792-CIV, 2008 WL 11333336, at *3 (citations omitted).

Finally, should the Court grant Plaintiffs' pending Motion for Leave to Amend [ECF No. 35], the causes of action in this case will be replaced with claims for legal malpractice and breach of fiduciary duty based on allegations of professional misconduct by Florida lawyers in their provision of legal services that were procured through a Framework Agreement that was executed in Florida. This is a controversy that clearly does not belong before a federal district court in the state of New York. *See Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996) ("The nature of Diaz's complaint is that Sheppard is guilty of malpractice, negligence and breach of contract under Florida law…. No substantial question of federal law must be answered to determine plaintiff's claims, and federal jurisdiction is lacking.") (citation omitted). As such, Defendants cannot credibly contend that a federal district court in New York possesses a greater interest in adjudicating the proposed causes of action in the First Amended Complaint than a Florida state trial court.

CASE NO: 1:22-cv-21204-SCOLA/GOODMAN

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion to Transfer Venue to the Southern District of New York [ECF No. 14].

CASE NO: 1:22-cv-21204-SCOLA/GOODMAN

| | |
|---|---|
| Dated: May 27, 2022. | Respectfully submitted,<br>**CAREY RODRIGUEZ MILIAN, LLP**<br>1395 Brickell Avenue, Suite 700<br>Miami, Florida 33131<br>Telephone: (305) 372-7474<br><br>*/s/ Juan J. Rodriguez*<br>Juan J. Rodriguez<br>Fla. Bar No. 613843<br>Email: jrodriguez@careyrodriguez.com<br>Luke T. Jacobs<br>Fla. Bar. No. 1024686<br>Email: ljacobs@careyrodriguez.com<br>Secondary: cperez@careyrodriguez.com<br>*Attorneys for Plaintiffs* |