UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO: 1:22-cv-21204-SCOLA/GOODMAN

TERRA TOWERS CORP. and TBS
MANAGEMENT, S.A.,

 Plaintiffs,

vs.

ADAM MICHAEL SCHACHTER,
GELBER SCHACHTER & GREENBERG,
P.A., CONTINENTAL TOWERS LATAM
HOLDINGS LIMITED, TELECOM
BUSINESS SOLUTION, LLC, LATAM
TOWERS, LLC, AMLQ HOLDINGS
(CAY) LTD., and DT HOLDINGS, INC,

 Defendants.
_____/

**PLAINTIFFS TERRA TOWERS CORP. AND TBS MANAGEMENT, S.A.'S RESPONSE IN OPPOSITION TO DEFENDANTS ADAM MICHAEL SCHACTER AND GELBER SCHACHTER & GREENBERG, P.A.'S MOTION TO DISMISS**

 Plaintiffs Terra Towers Corp. and TBS Management, S.A. (collectively, "Terra" or "Plaintiffs") file the instant Response in Opposition to Defendants Adam Michael Schachter ("Schachter") and Gelber Schachter & Greenberg, P.A.'s (collectively, "GSG") Motion to Dismiss Plaintiffs' state court Complaint [ECF No. 6] (the "Motion to Dismiss"). In support thereof, Plaintiffs state as follows:

**INTRODUCTION**

 This case concerns Schachter and his firm's unauthorized representation of defendant Continental Towers LATAM Holding Limited ("Continental Towers" or "the Company") in the Underlying Arbitration proceedings.

 Plaintiffs' Complaint [ECF. No. 31-4] seeks to adjudicate the rights between parties to a Florida-based contract, the "Framework Agreement" [ECF. No. 31-4, Exhibit A]. The Framework

Agreement is a contract between the shareholders[1] of the Company, DTH, Schachter, and his firm Gelber Schachter & Greenberg, P.A., which evidenced every parties' agreement to appoint Schachter as counsel for the Company in the Underlying Arbitration. The Framework Agreement was only necessary after Peppertree and AMLQ, the minority shareholders, attempted to shoehorn their first choice of counsel for the Company without unanimous consent, as required under the Shareholders Agreement. To be clear, Terra only entered into the Framework due to the mistaken representation that Jorge Gaitan ("Gaitan") was acting and legitimate Chief Executive Officer ("CEO") of the Company.

Mr. Gaitan, however, had been removed from his position as CEO and was never reappointed to that position by the Company's board. Tellingly, GSG's Motion to Dismiss—as well as Peppertree and AMLQ's respective motions to dismiss—is devoid of any statement which indicates their knowledge as to Gaitan's position within the Company when the Framework Agreement was executed. For the reasons set forth at length below, GSG's Motion to Dismiss [ECF No. 6] must be denied because the plain statements in the Complaint adequately set forth claims for rescission and injunctive relief.

## FACTUAL BACKGROUND

**The Parties Enter the Framework Agreement, thereby retaining Schachter and Gelber Schacter & Greenberg, P.A.**

Terra, Peppertree, and AMLQ are shareholders of the Company formed for the purpose of developing, owning, acquiring, and operating telecommunications towers in various locations across Central and South America. For the purpose of retaining independent counsel for the Company, on March 19, 2021, Schachter and GSG distributed the Framework Agreement to all parties to the Arbitration—that is, including all plaintiffs and defendants here—in which he described the "general framework under which [GSG] will serve as independent counsel for Continental Towers LATAM Holdings Limited" as a nominal party in the arbitration.

The Framework Agreement stated that Gaitan was the CEO of the Company and that he had retained Schachter and GSG in that capacity. It further stated that Schachter and GSG were

---

[1] The parties to the pending arbitration are as follows: the shareholders of the Company, which are defendants to this action, the Claimants are Telecom Business Solution, LLC, LATAM Towers, LLC (collectively "Peppertree"), and AMLQ Holdings (Cay) Ltd. ("AMLQ") (and together with Peppertree "Claimants") and the Respondents are Terra and DT Holdings, Inc. ("DTH").

"engaged to represent the company by Mr. Gaitán, personally," and that they would "be taking [] instructions from Mr. Gaitán only." Representatives of the Company could not even have access to invoices from GSG demonstrating the work ostensibly performed by Schachter and his firm on behalf of the Company; such information was reserved exclusively for Gaitan.

Gaitan's assertion that he was the CEO did not correspond with Terra's understanding at the time. Accordingly, Terra asked outside counsel from the law firm of Mayora y Mayora for a copy of any board resolution removing Gaitan as CEO. Terra was told that no such resolution could be located. Because there was no writing memorializing Gaitan's removal, Terra presumed that Gaitan remained the CEO of the Company, with authority to enter into the Framework Agreement. Terra then executed the Framework Agreement based on this understanding.

The Framework Agreement assured Terra and all Defendants that "if (and perhaps when) a situation arises that is not contemplated by this framework, [Terra and the defendants] all have [Schachter and GSG's] firm commitment to address any such issue in a manner that is in the [C]ompany's best interest." The Agreement reiterated that the parties were "expressly reserving everything and waiving nothing … with respect to the [C]ompany's future role and legal representation in the arbitration", including "if Jorge Gaitán is no longer CEO of the [C]ompany."

**The Parties' Shareholders Agreement and Appointment of an Executive Team**

To evidence the respective rights of the shareholders in the Company, as well as outline the corporate governance of the Company, Terra, Peppertree, and AMLQ, on October 22, 2015, entered into the Shareholders Agreement ("Shareholders Agreement" or "SHA"). (ECF No. 31-27). Under this agreement, the Company's actions are left almost exclusively left to the authority of the Board of Directors (the "Board"). *Id*. at 18 (§ 4.01). Under the terms of the SHA, the Board is comprised of four members, two appointed by Terra, and two appointed by Peppertree.[2] *Id*. at 19 (§ 4.02(a)). Section 4.04 of the SHA granted the Board broad array of rights to act on behalf of the Company, including the ability to enter into a contract to retain counsel. *Id*. at 21-24 (§ 4.04). The parties do not dispute that the Board possesses this power. In addition to the various powers conferred upon the Board by § 4.04, the Board was given authority to appoint members of an Executive Team. *Id*. at 24 (§ 4.06). The Executive Team is explicitly defined as the Chief Executive Officer and Chief Financial Officer of the Company. *Id*. at 7. The SHA also specifies

---

[2] AMLQ has no right to appoint a voting Board member per the terms of the SHA.

3

that "the Executive Team shall not have authority to take any action set forth in Section 4.04 without the approval of the Board." *Id*. Moreover, pursuant to the express terms of the SHA, the initial Chief Executive Officer of the Company was Gaitan. *Id*. at 24 (§ 4.06(a)).

**The Parties Learn that Gaitan was not the CEO of the Company When he Retained GSG.**

On or around October 19, 2021, in the process of reviewing the Company's corporate resolutions, Carlos Ortega of the Mayora y Mayora firm located a missing May 16, 2016, resolution that removed Mr.Gaitán as CEO of the Company and appointed Mr. Arzu in his place.[3] Ortega notified Terra of this fact the same day.

Subsequently, on November 22, 2021, Terra sent a letter to Schachter advising him, based on the mistake of fact that led to execution of the Framework Agreement, that the Framework Agreement was void and without effect or, alternatively, that Terra withdrew from the Framework Agreement. In its letter, Terra described the mistake the parties had made with respect to Gaitan's position with the Company and requested that GSG immediately withdraw as counsel for the Company in the Underlying Arbitration.

As of the date of the instant Response Memorandum, Schachter and GSG have adamantly refused to declare the Framework Agreement void, and instead have continued to perform under its terms. For example, Schachter refuses to take instruction from any Company representatives, including the CFO—a duly-appointed member of the Executive Team—and refuses to provide records of his billing arrangements and the work he has performed on behalf of the Company to anyone except Gaitan. Schachter's rationale for this position is that he is accountable only to Gaitan, a view that is based solely on the unenforceable Framework Agreement.

As set forth above, Gaitan had been properly removed as CEO of the Company by the May 16, 2016 Resolution. [ECF No. 31-4, <u>Exhibit B</u>].[4] No resolution has been passed re-appointing

---

[3] On May 16, 2016, all members of the Board passed a resolution removing Gaitan as CEO of the Company, appointing Alberto Arzu ("Arzu") as CEO of the Company, assigning Gaitan to Chief Operation Officer, and reaffirming Juan Francisco Quisquinay ("Quisquinay") as Chief Financial Officer of the Company. [ECF No. 31-4, Exhibit B]. As such, following this resolution, Gaitan was no longer a part of the Company's Executive Team.

[4] GSG's strained reasoning that Gaitan continues to act as CEO of the Company is simply an attempt to bring this action within the breadth of the SHA. However, Gaitan's proper position in the company is collateral to the Underlying Arbitration proceedings. *See Lis Upholstery*

Gaitan to the position of CEO, and without such a re-appointment, it is untenable to continue enforcing the terms of the Framework Agreement, which can only bind the Company if Gaitan is CEO. GSG's assertion that Plaintiffs were negligent in failing to uncover that Gaitan was not CEO ring hollow when they—along with both Peppertree and AMLQ—admit that they **still** believe that Gaitan is the properly appointed CEO of the Company.

## LEGAL STANDARD

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "the Court considers only the four corners of the complaint." *Benson v. QBE Ins. Corp.*, 61 F. Supp. 3d 1277, 1279 (S.D. Fla. 2014) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Edwards v. Prime Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). A court must "accept as true the facts as set forth in the complaint and draw all reasonable inferences in the plaintiff's favor." *West v. Warden, Comm'r, Ala. Doc*, 869 F.3d 1289, 1296 (11th Cir. 2017) (quoting *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010)) (internal quotation marks omitted).

In order to "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Tello v. Grosfillex, Inc.*, No. 09-60399-Civ., 2009 WL 10699892, at *1 (S.D. Fla. July 2, 2009) (Ungaro, J.) (citing *Twombly*, 550 U.S. at 570). A claim based on allegations of mistake or fraud must meet the heightened pleading standard of Fed.R.Civ.P. 9(b), which requires a party to plead with particularity the circumstances constituting the fraud or mistake. *See Amreican Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).

---

*Decorators, Inc. v. Amalgamated Indus. Union Loc*. 76B, No. 85 CIV 0062 (PKL), 1986 WL 621, at *4 (S.D.N.Y. Feb. 14, 1986) ("Notwithstanding an arbitration provision's broad language, it will not be construed to cover disputes collateral to the agreement.") (citation omitted); *Pratt v. Paragon Way, Inc*., No. 06-61735-CIV, 2007 WL 9700935, at *2 (S.D. Fla. Apr. 5, 2007) ("Notwithstanding the broad construction arbitration provisions are to be given, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so to submit.").

IV. ARGUMENT

Terra's Complaint meets the pleading standard required by Rule 9(b) and states each claim for relief against Defendants with the requisite particularity. For the reasons discussed below, each of Defendants' arguments fails and the Court should deny the Motion to Dismiss [ECF No. 6].

### A. **Plaintiffs' Claim for Rescission Meets the Rigorous Pleading Standard Set forth in Rule 9(b)**

The equitable remedy of rescission lies within the sound discretion of the trial court. *Pendleton v. Witcoski*, 836 So. 2d 1025 (Fla. Dist. Ct. App. 2002) (affirming rescission of contract on the ground of mutual mistake).

First, the Complaint pleads the necessary allegations to state a claim for Rescission under Florida law.[5] To state a claim for rescission in Florida, a party must allege six elements: "(1) the character or relationship of the parties, (2) the making of the contract, (3) the grounds for rescission, (4) that the party seeking rescission has done so and informed the other party to the contract, (5) if the rescinding party has received benefits from the contract, that the party has offered to restore the benefits if possible, and (6) that no adequate remedy is available at law." *Frayman v. Douglas Elliman Realty, LLC*, 515 F.Supp. 3d 1262, 1290 (S.D. Fla. 2021) (Altonaga, C.J.). In addition, "[t]o satisfy Rule 9(b), the complaint must set forth: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Eaton v. Onewest Bank, FSB*, 2013 WL 12156429 at *3 (M.D. Fla. Feb. 15, 2013). GSG's Motion to Dismiss should be denied because Plaintiffs plead their claims with the requisite specificity demanded by Rule 9(b).

The Complaint alleges "the who, what, when, where, and how of the mistake". *See Richmond Manor Apts., Inc. v. Certain Underwriters at Lloyd's London,* No. 09-60796, 2011 WL

---

[5] The Framework Agreement is a contract between shareholders of the Company and a Florida-based law firm, GSG. The Shareholders Agreement invoked by GSG is wholly inapplicable as only the terms of controversies arising under the Shareholders Agreement should be "governed and construed in accordance with the Laws of the State of New York…" [ECF No. 31-27, at 50 (§ 8.10)]. As set forth in Peppertree's Motion to Dismiss, the Framework Agreement is **not** an engagement letter on behalf of the Company, which was separately executed. [ECF No. 12, at p. 4 n.4]. GSG's argument is simply another thinly veiled attempt to bring this action within the breadth of the Shareholders Agreement, for the purpose of manufacturing federal subject matter jurisdiction.

13175618, at *2 (S.D. Fla. Feb. 28, 2011) (stating the pleading requirements under Rule 9(b) for mutual mistake); [ECF No. 31-4 ¶¶ 2-3, 17-36]. The who: "In connection with an arbitration proceeding in which Terra, Continental Towers, Peppertree, AMLQ, and DTH, are parties Plaintiffs and Defendants entered into a "Framework Agreement" regarding the conduct of Adam Schachter and his law firm, Gelber Schachter & Greenberg, who serve as counsel to Defendant Continental Towers." *Id*. at ¶ 2. As signatories to the Framework Agreement, the parties lie in contractual privity. *Bland v. Freightliner LLC*, 206 F.Supp.2d 1202, 1206-07. The what and when: "On March 19, 2021, Schachter and GSG distributed a letter agreement to all parties to the Arbitration—that is, all Plaintiffs and Defendants here—in which he described the 'general framework under which [GSG] will serve as independent counsel for Continental Towers LATAM Holdings Limited' as a nominal party in the arbitration." [ECF No. 31-4, at ¶ 27]. The where: the execution of the Framework Agreement took place in Miami-Dade County, Florida. *Id*. at ¶ 16. Regarding the how, Plaintiffs allege as follows: Gaitan stated on multiple occasions orally, and as represented in the Framework Agreement itself, that Gaitan was the CEO of the Company. *Id*. at ¶¶ 28-31. Moreover, as to the how, Plaintiffs allege as an alternative basis for their Rescission claim that, to the extent Defendants AMLQ and the Peppertree Entities were aware of this misrepresentation by Gaitan, they were direct participants in its commission as well [ECF No. 31-4 ¶45]. Finally, it is alleged that, upon uncovering a resolution which had removed Gaitan from his position as CEO at the Company, Terra immediately notified the other parties of their intent to void/rescind the Framework Agreement. *Id*. at ¶¶ 32-36.

Plaintiffs have received no benefit from the Framework Agreement, and Defendants have not mentioned any such benefit in their Motion. *Id*. at ¶ 45. Furthermore, no adequate remedy at law is available, and even if one were, it is not properly decided at the motion to dismiss stage. *Id*. ¶ 38. See *Wycap Marine Corp. v. Wycap Design, LLC*, No. 18-62226-Civ, 2018 WL 7287086, at *3 (S.D. Fla. Dec. 18, 2018) (holding that an allegation in the complaint that a contractual provision bore the wrong cell phone number was a sufficient pleading of material misrepresentation of fact to survive a motion to dismiss); *Rubesa v. Bull Run Jumpers, LLC*, 2010 WL 376320, at *3 (S.D. Fla. Jan. 26, 2010) ("[A] court is rarely able to determine the adequacy of a remedy at law at the pleading stage of a case before the facts are developed. Consequently, [a] ruling on the adequacy of the legal remedy is generally left until the end of a case, often after a

7

jury renders a verdict on the entitlement to it.") (alterations in original) (internal citation and quotations omitted)

### i. **Plaintiffs Properly Plead the Necessary Elements in support of a Mutual Mistake of Fact**

"The term mutual mistake of fact is one of law, and the equitable remedy of rescission is available only if the mistake is mutual and the fact is of the essence to the contract." *Dantzler, Inc. v. PNC Bank, Nat. Ass'n*, 946 F.Supp.2d 1344, 1369 (S.D. Fla. 2013) (quoting *Keystone Creations, Inc. v. City of Delray Beach*, 890 So.2d 1119, 1127 (Fla. Dist. Ct. App. 2004) (internal quotations omitted)); *see also ACA Galleries, Inc. v. Kinney,* 928 F. Supp. 2d 699, 701 (S.D.N.Y. 2013), aff'd, 552 F. App'x 24 (2d Cir. 2014).

The source of the mistaken fact is irrelevant to a claim for rescission based on mutual mistake, "[i]f both parties act on a set of facts, both believing them correct, when in fact those facts are incorrect, then both parties are mistaken." *Ferguson v. Cotler*, 382 So.2d 1315, 1316 (Fla. Dist. Ct. App. 1980). Because a failure to exercise due care when entering a contract cannot later be used as grounds for rescission of the subject contract, Defendants have failed to establish such wanton disregard by Plaintiffs.

The Court may rescind the contract based on mutual mistake that is material to the transaction. *Barber v. Barber*, 878 So. 2d 449, 451 (Fla. Dist. Ct. App. 2004) (reversing the trial court's decision refusing to rescind an agreement based on mutual mistake); *Braman Dodge, Inc. v. Smith*, 515 So. 2d 1053, 1054 (Fla. Dist. Ct. App. 1987) (affirming rescission based on mutual mistake). GSG's position, however, is clear; they believe that Gaitan was CEO of the Company at the time of the execution of the Framework Agreement and that he currently remains in that position. [ECF No. 6 pp. 2-3]. GSG's mistaken belief on its face creates a mistake of fact which warrants denial of their Motion to Dismiss.

GSG argues "[t]he 2016 Board Resolution on which Plaintiffs rely conclusively establishes there was no mistake of fact: when Plaintiff Terra entered into the Framework Agreement it knew Mr. Gaitán had been removed as CEO in 2016…" Most tellingly, GSG never speaks to their belief of Gaitan's position in the Company **when the Framework Agreement was executed**. In addition, GSG does not offer any explanation for how or when Gaitan was reappointed as CEO of the Company. The only argument GSG offers for their belief that Gaitan was CEO of the Company on March 19, 2021, was dicta in an arbitral order entered 8-months after the Framework Agreement

8

was executed. If, in the alternative, GSG was aware Gaitan was not CEO of the Company when the Framework Agreement was executed, then he did not have the authority to retain GSG as independent counsel (*see supra* at 3), and the mistake was material.

Regardless, the uniform position of GSG, Peppertree, and AMLQ is that Gaitan was and still is the CEO of the Company. *See* [ECF No. 6, at 3-4]; [ECF No. 12, at 6]; [ECF No. 13, at 9]. On its face, this position creates the appearance of a mutual mistake which warrants denial of the Motion to Dismiss. It must be determined whether Gaitan was the CEO of the Company when the Framework Agreement was executed. If this is answered in the negative, then all parties seemingly agree that there was a mutual mistake of fact as to Gaitan's status within the Company, and the Framework Agreement should be rescinded.

It is undisputed by the clear terms of the Shareholders Agreement; a person can only be appointed to the CEO position of the Company by Board resolution. (*see supra* at 3). No party has so much as hinted at the existence of such a resolution reappointing Gaitan. Still, defendants GSG, Peppertree, and AMLQ appear to act pursuant to the erroneous belief that Gaitan is the rightful CEO of the Company in an attempt to bring this dispute within the breadth of the SHA. He is not. Therefore, Plaintiffs' have properly pled as adequate basis for mutual mistake of fact to support their rescission claim.

      **ii.**     **If Defendants Admit they had Knowledge that Gaitan was not the CEO of the Company, then the Complaint Sufficiently Pleads a Cause of Action for Unilateral Mistake**

If Defendants were to change course in their defense of this action by admitting they knew Gaitan was not the CEO of the Company when the Framework Agreement was executed, then Plaintiffs' Complaint adequately alleges that they entered the Framework Agreement due to a unilateral mistake of fact that was induced by a fraudulent misrepresentation.

A claim for rescission can be based on unilateral mistake of material fact if "(1) the mistake was not the result of an inexcusable lack of due care; (2) denial of release from the contract would be inequitable; and (3) the other party to the contract has not so changed its position in reliance on the contract that rescission would be unconscionable." *DePrince v. Starboard Cruise Servs., Inc.*, 271 So.3d 11, 20 (Fla. Dist. Ct. App. 2018) (citing *Maryland Cas. Co. v. Krasnek*, 174, So.2d 541, 543 (Fla. 1965)). Under New York law, a plaintiff pursuing rescission on the basis of unilateral mistake must show that (1) "he entered into a contract based upon a mistake as to a material fact,"

(2) "the other contracting party either knew or should have known that such a mistake was being made," (3) he "exercised ordinary care," and (4) "enforcement would be unconscionable." *Summit Health, Inc. v. APS Healthcare Bethesda, Inc.*, 993 F. Supp. 2d 379, 404 (S.D.N.Y. 2014). Furthermore, under New York law, a unilateral mistake must be coupled with some fraud. *Travelers Indem. Co. of Ill. v. CDL Hotels USA, Inc.*, 322 F.Supp.2d 482, 498 (S.D.N.Y.2004) (quoting *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 45 (2d Cir.1991) (internal citations omitted)).

Unilateral mistake of fact is sufficiently pled in the Complaint as an alternative basis to support Plaintiffs' rescission claim. As established above, Gaitan had the exclusive authority to retain counsel for the Company only if he was the CEO. This misrepresentation by Gaitan in the Framework Agreement was material and fraudulent. Any party to the Framework Agreement with actual knowledge of Gaitan's actual role in the Company, the COO, when it was executed would be guilty of negligent misrepresentation.

### B. Defendants GSG Fail to offer their Knowledge or Belief concerning Mr. Gaitan's Role in the Company when the Framework Agreement was Executed.

GSG's argument in favor of dismissal is inherently contradictory. Either Plaintiffs should have known that Gaitan was the not the CEO of the Company when the Framework Agreement was executed or Gaitan was actually the CEO of the Company, thereby foreclosing any possibility Plaintiffs could have knowledge otherwise.[6]

Regardless, dismissal is unwarranted, as some negligence on the part of the mistaken party does not preclude rescission. *Fla. Ins. Guar. Ass'n, Inc. v. Love*, 732 So. 2d 456, 457 (Fla. Dist. Ct. App. 1999) ("While FIGA's error certainly involved some degree of negligence, the evidence was not sufficient to support a finding of an inexcusable lack of due care.").

The possibility that all parties to the Framework Agreement were unaware that Gaitan was not the current CEO, a **mutual mistake**, when it was executed, has yet to be refuted. Most tellingly, none of the Defendants' submissions to the Court have spoken to their belief concerning Gaitan's role at the time of the Framework Agreement's execution. The only argument proffered by

---

[6] Both AMLQ and Peppertree argue in their respective Motions to Dismiss that Gaitan was the CEO of the Company when the Framework Agreement was executed, which creates an issue that should not be resolved at the pleadings phase. *See* [ECF No. 12 p. 6]; [ECF No. 13 p. 9 ("all parties…knew and agreed that Mr. Gaitán was the CEO of the Company…")].

10

Defendants is that Plaintiffs' signature on the Framework Agreement is an inherent acquiescence to Gaitan's role in the Company. *See* [ECF No. 6 p.3]; [ECF No. 12 p. 6]; [ECF No. 13 p. 9]. If the act of entering into a contract were treated as a binding acceptance of every factual representation therein, the equitable doctrine of rescission would be non-existent. *See* Fl.Jur.2d Contracts § 53. Mistake, generally ("A mutual mistake affecting the basic assumption on which the contract was made…may be a ground for reformation or rescission of a contract."); *See* Restatement (Second) of Contracts, § 152(1) ("Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in § 154") If Gaitan was not CEO of the Company, he did not have the authority to retain counsel, and thus execution of the Framework Agreement was improper and improperly procured by misrepresentations.

As such, Defendants GSG's Motion to Dismiss should be denied because they fail to respond to the heart of Plaintiffs' claims. Namely, whether there was actually a mistake of fact as to Gaitan's role within the Company when the Framework Agreement was executed.

C. **Dismissal of the Action Based on Plaintiffs'** *Alleged* **Failure to Conduct Due Diligence is not Properly Decided at the Pleading Phase.**

A properly pled claim for rescission founded upon allegations of unilateral or mutual mistake should not be dismissed at the pleadings phase based on arguments that the Plaintiffs were negligent in not uncovering the underlying mistake of fact at an earlier juncture. *See De Soul v. Knoedler Gallery, LLC*, 137 F.Supp.3d 387, 397 (S.D.N.Y. 2015) (holding that dismissal of a recission cause of action for failure to exercise ordinary care is not properly determined at the pleadings stage). The authorities cited by GSG do not support dismissal at this early juncture of the proceedings. The cases cited either adjudicate the claims for mistake on a motion for summary judgment or warrant dismissal only when the plain terms of the complaint do not sufficiently plead that the contract at issue contained the mistaken fact itself. *Compare Summit Health, Inc. v. APS Healthcare Bethesda, Inc.*, 993 F. Supp. 2d 379, 404 (S.D.N.Y. 2014) (adjudicating claims for mistake on a motion for summary judgment); *with Berman v. Kafka*, 518 F. App'x 783 (11th Cir. 2013) (holding that an allegation that the mistaken fact which the party justifiably relied on was not part of the settlement agreement was not definite enough to prove reliance); *Colonial Funding*

*Network, Inc. for TVT Capital, LLC v. Epazz, Inc.*, 252 F. Supp. 3d 274 (S.D.N.Y 2017) (dismissing a claim for rescission where the contract signed expressly excluded reliance on past statements which the plaintiff attempted to anchor their rescission claim).

Accordingly, any purported negligence on Plaintiffs' part concerning the corporate position held by Gaitan is an issue that is inappropriate for consideration at this early juncture of the proceedings. *Pennsylvania Nat. Mut. Cas. Ins. Co. v. Anderson*, 445 So.2d 612, 613 (Fla. Dist. Ct. App. 1984) (holding that, although "almost amusingly inept," the alleged mistake of fact in support of plaintiff's rescission claim did not render it subject to dismissal).

### D. If the Repeated Belief by Defendants that Gaitan was the CEO of the Company is Ultimately Misleading, Plaintiffs Claim for Fraudulent Inducement is Properly Pled

Florida law requires four elements to plead a claim of fraudulent misrepresentation: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So.3d 102, 105 (Fla. 2010) (internal citations omitted). Plaintiffs have properly pled all four elements.

First, as discussed above, the determination of Gaitan's status as CEO of the Company when the Framework Agreement was executed is a material fact which must be determined during discovery. Whether GSG knew Gaitan was not CEO at the time the Framework Agreement was executed is not properly determined on a motion to dismiss. Second, it is alleged that when Plaintiffs notified GSG that Gaitan was not in fact the CEO of the Company and had no authority to retain them, they refused to withdraw from representation, which bolsters the allegations that they were aware of his actual corporate position when the Framework Agreement was executed. [ECF No. 31-4, at ¶¶ 35-37]. Third, the Complaint plainly alleges that the reason Gaitan was held out as CEO of the Company in the Framework Agreement is because it was the title necessary to retain GSG. *Id.* at ¶¶ 20-22, 26-30.

Terra is harmed by Schachter and GSG's continued compliance with the Framework Agreement. As the majority shareholder of the Company, with the right to appoint half of the Company's board, Terra is entitled to have the Company managed by individuals with authority to do so—including in the appointment of outside counsel—and to receive information about the activities and expenditures of the Company. Schachter and GSG, at the direction of Gaitan, have

used and continue to use the Framework Agreement to deny Terra these rights and to benefit themselves at the expense of Terra and the Company. Moreover, again in reliance on the Framework Agreement, Gaitan and GSG have denied and are continuing to deny even the Company's duly-appointed CFO access to information concerning GSG's engagement and the hundreds of thousands of dollars that the Company has expended in legal fees thus far.

These matters are especially critical now because the arbitration panel has issued a partial award ordering that the Company be sold. Terra has commenced proceedings to vacate that award, but, should it be confirmed, the Company's sale process should not be subject to interference from Schachter's unauthorized and deleterious representation of the Company at Gaitan's direction.

### E. The Complaint Properly Pleads a Claim for Injunctive Relief

The portion of GSG's Motion to Dismiss that addresses Plaintiffs' claim for injunctive relief is premised solely on the fact that Plaintiffs' rescission claim is bound to be dismissed. As set forth above, the Complaint properly pleads the elements of a rescission claim based on either mutual mistake, unilateral mistake, or fraudulent inducement. Therefore, GSG's Motion to Dismiss as it applies to Plaintiffs' claim for injunctive relief should be denied.

"To obtain a temporary injunction, the petitioner must satisfy a four-part test under Florida law: '(1) a substantial likelihood of success on the merits, (2) a lack of an adequate remedy at law, (3) the likelihood of irreparable harm absent the entry of an injunction, and (4) that injunctive relief will serve the public interest.'" *Quirch Foods LLC v. Broce*, 314 So. 3d 327, 337–38 (Fla. Dist. Ct. App. 2020) (quoting *Scott v. Trotti*, 283 So. 3d 340, 343 (Fla. Dist. Ct. App. 2018)). These factors must be supported by "competent, substantial evidence." *Quirch Foods*, 314 So. 3d at 338.

Terra readily meets each element. First, Terra will succeed on the merits of its claim for rescission of the Framework Agreement because there is no dispute that, at the time the parties entered into the agreement, they were materially mistaken. Gaitan was not the Company's CEO or an Executive Team member, and therefore could not retain counsel for the Company, enter into the Framework Agreement, or be granted sole responsibility for supervising counsel pursuant to that agreement. Second, Terra has no adequate remedy at law against GSG's *ultra vires* representation of the Company at Gaitan's direction. Third, Terra will suffer irreparable harm from GSG's actions in representing the Company. To be sure, the threat to the Company—in which Terra is a majority shareholder—is existential. The arbitration panel has already ordered the Company sold, and Terra is now forced to seek vacatur of the award. If the award is confirmed

and GSG continues to adhere to Gaitan's directives, Terra will essentially have no meaningful input in the Company's operations, despite being the majority shareholder in the Company.

Fourth, returning the parties to the pre-agreement status quo will serve the public interest by affirming the elementary principle of corporate governance that business entities can act only through their authorized representatives.

Terra will suffer irreparable harm without an injunction. Irreparable harm is an injury that "cannot be undone through monetary remedies." *Winmark Corp. v. Brenoby Sports, Inc.*, 32 F.Supp.3d 1206, 1223 (S.D. Fla. 2014). An injury is irreparable "where the damage is estimable only by conjecture, and not by any accurate standard." *JonJuan Salon, Inc. v. Acosta*, 922 So. 2d 1081, 1084 (Fla. Dist. Ct. App. 2006) (internal quotation marks omitted). Actions that affect business operations have been held to constitute irreparable harm. *See, e.g., Zuckerman v. Pro. Writers of Fla., Inc.*, 398 So. 2d 870, 872 (Fla. Dist. Ct. App. 1981) ("the removal of the files and records impeded the day-to-day operation of the business bringing about irreparable harm for which there is no adequate remedy at law").

GSG's continued *ultra vires* representation of the Company at the critical juncture when the Company may be forcefully sold, assuming the arbitral award is confirmed, jeopardizes Terra's interest in the Company. Further, Schachter and GSG's refusal to take any directions from anybody but Gaitan impermissibly interferes with Terra's rights of corporate control, thereby threatening an irreparable injury. Terra is entitled to have the Company managed by individuals with authority to do so—including in the appointment of outside counsel—and to receive information about the activities and expenditures of the Company. Despite this, Gaitan, Schachter, and GSG are denying even the duly-appointed CFO of the Company access to information about GSG's representation of the Company and the hundreds of thousands of dollars the Company has paid in legal fees.

The procedural posture of GSG's Motion to Dismiss, coupled with Plaintiffs' clear contentions that the material mistake of fact relied on were representations made within the Framework Agreement itself, require the denial of GSG's Motion to Dismiss.

### F. The Court Should First Rule on Plaintiffs' Pending Motion for Remand

It is well-established that, prior to any ruling on the merits, a Court must first dispose of any issues challenging its subject matter jurisdiction. *See Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 94 (1998); *NACSO Non-Profit Bus. League, Inc. v. Consumer Fin. Protection Bureua*, 2021 WL 862906 at *4 (S.D. Fla. Mar. 9, 2021) (refusing to decide motions to

dismiss based on failure to state a claim because the court could not exercise hypothetical jurisdiction without obtaining subject-matter jurisdiction). Plaintiffs filed their Motion for Leave to Amend the Complaint [ECF. No. 35] and then subsequently filed their Motion for Remand based on lack of subject matter jurisdiction [ECF No. 38]. The Court has not entered a ruling on either pending motion. Accordingly, the Court should first adjudicate Plaintiffs pending Motion to Remand [ECF No. 38] prior to reaching any other matter in this cause.

## **CONCLUSION**

For the reasons set forth above, the Court should enter an Order denying Defendants Adam Michael Schachter and Gelber Schachter & Greenberg, P.A.'s Motion to Dismiss Plaintiffs' state court Complaint [ECF No. 6].

| | |
|---|---|
| Dated: June 6, 2022 | Respectfully submitted, |

                                                  **CAREY RODRIGUEZ MILIAN, LLP**
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Telephone: (305) 372-7474

*/s/ Juan J. Rodriguez*
Juan J. Rodriguez
Fla. Bar No. 613843
Email: jrodriguez@careyrodriguez.com
Secondary: cperez@careyrodriguez.com
Luke T. Jacobs
Fla. Bar. No. 1024686
Email: ljacobs@careyrodriguez.com
*Attorneys for Plaintiffs*