**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO: 1:22-cv-21204-SCOLA/GOODMAN**

TERRA TOWERS CORP. and TBS
MANAGEMENT, S.A.,

    Plaintiffs,

vs.

ADAM MICHAEL SCHACHTER,
GELBER SCHACHTER & GREENBERG,
P.A., CONTINENTAL TOWERS LATAM
HOLDINGS LIMITED, TELECOM
BUSINESS SOLUTION, LLC, LATAM
TOWERS, LLC, AMLQ HOLDINGS
(CAY) LTD., and DT HOLDINGS, INC,

    Defendants.

_____/

**<u>PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS TELECOM BUSINESS
SOLUTION, LLC, AND LATAMTOWERS, LLC'S MOTION TO DISMISS</u>**

CASE NO: 1:22-cv-21204-SCOLA/GOODMAN

Plaintiffs Terra Towers Corp. and TBS Management, S.A, (collectively "Plaintiffs" or "Terra"), through undersigned counsel, file the instant Response in Opposition to Defendants Telecom Business Solution, LLC ("Peppertree Telecom") and LATAM Towers, LLC's ("Peppertree LATAM" together with Peppertree Telecom, the "Peppertree Entities") Motion to Dismiss (the "Motion), *see* [ECF No. 12].[1] In support thereof, Plaintiffs state as follows:

**I. RELEVANT FACTUAL & PROCEDURAL HISTORY**

On February 2, 2021, Defendants Telecom Business Solution, LLC, and Latam Towers, LLC (collectively "Peppertree"), filed a Demand for Arbitration and Statement of Claim with the American Arbitration Association, bearing case number 01-21-0000-4309 (the "Arbitration"). The Peppertree Defendants asserted claims in the Arbitration against Terra, DT Holdings, Inc. ("DTH"), various directors appointed by Terra to Continental Towers LATAM Holdings Limited ("Continental Towers" or the "Company"), and the Peppertree entities also named the Company and AMLQ Holdings (Cay) Ltd. ("AMLQ"), as "nominal" and "notice" parties. Peppertree based its claims upon allegations that Terra, DTH and various directors appointed by Terra purportedly committed various breaches of the subject Shareholders Agreement. More specifically, Peppertree sought damages due to Terra's purported improper refusal to sell the Company pursuant to the Shareholders agreement, or in the alternative, specific performance to compel Terra's sale of the Company. Plaintiffs also filed counterclaims in the Underlying Arbitration, asserting that Peppertree and AMLQ committed breaches of contract and breaches of fiduciary duty due to, among other things, their interference with a potential sale of the Company and their rejection of tower construction projects. Importantly, Plaintiffs did not pursue causes of action for rescission, injunctive relief, legal malpractice or breach of fiduciary duty in their counterclaims in the Underlying Arbitration.

Terra, Peppertree, and AMLQ are shareholders of the Company, which was formed for the purpose of developing, owning, acquiring, and operating telecommunications towers in various locations across Central and South America. To establish the respective rights of the shareholders in the Company, as well as outline the corporate governance of the Company, Terra, Peppertree,

---

[1] In the interest of efficiency and reducing burden upon the Court, Plaintiffs' Response in Opposition to Defendant AMLQ Holdings (Cay) Ltd.'s Motion to Dismiss [ECF No. 13], incorporates the arguments raised herein in full. *See* [ECF No. 49].

2

and AMLQ, entered into the Shareholders Agreement on October 22, 2015, ("Shareholders Agreement" or "SHA"). [ECF No. 31-27]. Under the Shareholders Agreement, the Company's actions are almost exclusively left to the authority of the Board of Directors (the "Board"). *Id*. at 18 (§ 4.01). Also, under the terms of the SHA, the Board is comprised of four members, two appointed by Terra, and two appointed by Peppertree. *Id*. at 19 (§ 4.02(a)). Section 4.04 of the SHA granted the Board authority to act on behalf of the Company in multiple respects, including the ability to enter into a contract to retain counsel. *Id*. at 21-24 (§ 4.04). In addition to the various powers conferred to the Board by § 4.04, the Board was given authority to appoint members of an Executive Team. *Id*. at 24 (§ 4.06). The Executive Team consists of the Chief Executive Officer and Chief Financial Officer of the Company. *Id*. at 7. As set forth in the SHA, the initial Chief Executive Officer of the Company was Mr. Gaitan. *Id*. at 24 (§ 4.06(a)). The SHA also provides that "[t]he Executive Team shall not have authority to take any action set forth in Section 4.04 without the approval of the Board." *Id*. In addition to the above, the Shareholders Agreement contains a dispute resolution section requiring its signatories, the shareholders, to submit certain disputes to arbitration. Specifically, the relevant arbitration provisions within the Shareholders Agreement provide, in relevant part, as follows: "any controversy, claim or dispute arising out of or relating to or in connection with [the Shareholders] Agreement…." "will be finally settled by binding arbitration." [ECF No. 14-1 p. 49 §§ 8.14, 8.15]. Importantly, the Shareholders Agreement specifies that, in the event of a legal controversy between the shareholders concerning their commercial relationship, any such dispute must be arbitrated in New York, New York and that any such proceedings will be governed by New York state substantive law. *See* [ECF No. 14-1 p. 49 §§ 8.10, 8.15].

On March 9, 2021, Mr. Jorge Gaitan, who purported to act as the Company's CEO, retained Defendants Mr. Schachter and GSG for the purpose of representing the Company as a neutral, nominal party in the Underlying Arbitration. GSG's representation of the Company was memorialized in an engagement letter that Mr. Gaitan and GSG executed in Miami, Florida. Thereafter, on March 19, 2021, Mr. Schachter and GSG distributed a letter agreement (the "Framework Agreement") to all parties to the Arbitration—that is, all Plaintiffs and Defendants here—in which he described the "general framework under which [GSG] will serve as independent counsel for Continental Towers LATAM Holdings Limited" as a nominal party in the arbitration. Importantly, this Framework Agreement was also negotiated and executed by all the shareholders,

including Defendants the Peppertree Entities, AMLQ and GSG in Miami, Florida. The Framework Agreement specified that Mr. Gaitan was the CEO of the Company and that Mr. Gaitan had retained GSG in that capacity.

It was subsequently discovered, however, that Mr. Gaitan was not the Company's CEO at the time of the Framework and Engagement Agreement's execution, and that he, therefore, lacked the requisite corporate authority to retain counsel on the Company's behalf. Moreover, on or about August 28, 2021, GSG disseminated privileged communications it received from the Company's Management and CFO to all the parties in the Underlying Arbitration, including counsel pursuing claims against the Company. Despite the privileged nature of these materials, Mr. Schachter and GSG refused to retract or destroy the privileged communications that they disseminated to all parties in the Arbitration.

Plaintiffs initiated this action in the Eleventh Judicial Circuit in and for Miami-Dade County on March 7, 2022. In brief, Plaintiffs two-count state court Complaint currently asserts a claim for rescission (Count I) and a claim for injunctive relief (Count II) against Defendant GSG, the Company, the Peppertree Entities, AMLQ, and DTH. *See* [ECF No. 31-4]. The claims for rescission and injunctive relief are based on allegations that Plaintiffs were induced to enter the Framework Agreement due to the material mistake of fact that Mr. Gaitan was the Company's CEO when he was really the Company's COO. *See* [ECF No. 31- 4].

On April 18, 2022, Defendants filed their notice of removal. *See* [ECF No. 31]. The Peppertree Defendants filed their Motion to Dismiss on April 25, 2022 [ECF No. 12]. Recently, on May 12, 2022, Plaintiffs submitted their Motion for Leave to file a First Amended Complaint. [ECF No. 35]. The proposed First Amended Complaint attached to the Motion for Leave alleges two new causes of action, Legal Malpractice and Breach of Fiduciary Duty, based on allegations that detail Mr. Schachter and GSG's professional misconduct during their ongoing representation of the Company. In addition, the proposed First Amended Complaint removes the current causes of action for rescission and injunctive relief. The proposed First Amended Complaint also removes four Defendants—Telecom Business Solution, LLC, LATAM Towers, LLC, AMLQ Holdings (CAY) Ltd., and DT Holdings, Inc.—and names the Company as a nominal defendant. Plaintiffs also moved to remand these proceedings to state court on May 18, 2022. [ECF No. 38]. The Motion to Remand has not yet been fully briefed, and the Court thus has not entered a ruling on it yet. Plaintiffs now file the instant Response in Opposition to Peppertree's Motion to Dismiss.

**II. ARGUMENT AND MEMORANDUM OF LAW**
   a. **The Court should enter a ruling on Plaintiffs' pending Motion to Remand prior to adjudicating the Peppertree Defendants' Motion to Dismiss for want of personal jurisdiction and for failure to state a claim.**

Because the Court is currently faced with a Motion to Remand that "involves no arduous inquiry," *see Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999), and that raises substantial questions concerning the Court's subject matter jurisdiction over the current and proposed iterations of the complaint, the Court should first adjudicate Plaintiffs' pending Motion to Remand prior to reaching the pending Motions to Dismiss for want of Personal Jurisdiction [ECF Nos. 12, 13]. It is well-settled that, although there are limited circumstances in which a district court may exercise its discretion to first enter a ruling on a pending motion to dismiss for want of personal jurisdiction before reaching any other matter, "[c]ustomarily, a federal court first resolves doubts about its jurisdiction over the subject matter." *Ruhrgas AG*, 526 U.S. at 578; *Marathon Oil Co. v. Ruhrgas*, 145 F.3d 211, 229 (5th Cir. 1998), rev'd sub nom. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999) (Higginbotham, J., dissenting) ("Questions of standing and subject matter jurisdiction are usually engaged at the outset of a case, and often that is the most efficient way of going."); *See Bank of N.Y. v. Bank of Am.*, 861 F.Supp. 225, 227 (S.D.N.Y.1994) ("Because the removal statute only allows removal of actions within the Court's original jurisdiction, and because fundamental principles of American jurisprudence forbid the Court from acting in the absence of subject matter jurisdiction, ... plaintiffs' [motion to remand] must be examined before any other matter.") (internal citations omitted) (alteration in original). Indeed, where, as in the instant case, "personal jurisdiction raises 'difficult questions of [state] law,' and subject-matter jurisdiction is resolved 'as eas[ily]' as personal jurisdiction, a district court will ordinarily conclude that 'federalism concerns tip the scales in favor of initially ruling on the motion to remand." *Ruhrgas AG*, 526 U.S. at 586 (quoting *Allen v. Ferguson*, 791 F.2d 611, 616 (7th Cir. 1986).

Applying the foregoing principles here, the Court should first enter a ruling on Plaintiffs' pending Motion to Remand because it is no more difficult for the Court to enter a ruling on Plaintiffs' Pending Motion to Remand than it is for the Court to adjudicate both pending Motions to Dismiss for want of Personal Jurisdiction [ECF Nos. 12, 13]. In brief, Plaintiffs' Motion to Remand contends that the Court lacks subject matter jurisdiction over both the current [ECF No. 31-4] and proposed complaints [ECF No. 35-1] because disputes concerning GSG's

improper retention and their subsequent professional misconduct in representing the Company during the underlying Arbitration are not controversies that arise under the Shareholders Agreement, which forecloses Defendants' argument that this Court has federal question jurisdiction pursuant to 9 U.S.C. § 205. In conducting this analysis, the Court will only need to juxtapose the arbitration provisions within the Shareholders Agreement with the claims for relief asserted in both the current and proposed iterations of the complaint to determine whether this is a controversy that arises under the Shareholders Agreement (which it is not). In contrast, and as set forth in further detail below, in adjudicating the pending motions to dismiss for want of personal jurisdiction, the Court will be forced to engage in a fact-intensive analysis concerning the existence of personal jurisdiction. This fact-intensive analysis will require, among other things, an inquiry into the Peppertree and AMLQ Defendants' contacts with this jurisdiction and the operational nexus between Peppertree and AMLQ with their respective parent corporations to properly assess their contacts with Florida. This inquiry will unavoidably raise difficult questions concerning Florida state jurisdictional law for this Court's evaluation. Moreover, to aid the Court in this fact-intensive inquiry, the parties will have to necessarily engage in a brief period of jurisdictional discovery and later furnish for the Court's assessment any jurisdictional evidence concerning these Defendants' contacts with Florida. Plaintiffs' pending Motion to Remand presents no such conundrums for the Court. Indeed, to resolve the pending Motion to Remand, the Court need only make a legal determination as to whether the current or proposed causes of action arise under the Shareholders Agreement, which are all currently before the Court [ECF Nos. 31-4; 31-27; 35-1]. Accordingly, the Court should exercise its discretion by following the ordinary sequence of determining subject matter jurisdiction prior to reaching any other matter in this controversy and deny Defendants Peppertree and AMLQ's pending Motions to Dismiss for want of Personal Jurisdiction and Failure to State a Claim for Relief [ECF Nos. 12, 13].

    **b. A Florida state court may exercise personal jurisdiction over the Peppertree and AMLQ Defendants.**

A court may exercise personal jurisdiction in Florida over a nonresident defendant if the nonresident defendant commits any of the specific acts enumerated under Florida's long-arm statute. *See Banco de los Trabajadores v. Cortez Moreno*, 237 So. 3d 1127, 1133 (Fla. Dist. Ct. App. 2018). Florida's long-arm statute provides, in relevant part, as follows:

    A person, whether or not a citizen or resident of this state, who personally or

through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:

1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

2. Committing a tortious act within this state….

§ 48.193(1)(a), Fla. Stat. When determining whether a nonresident defendant is subject to Florida's long-arm jurisdiction, courts apply a two-prong test. "First, it must be determined that the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of the statute; and if it does, the next inquiry is whether sufficient 'minimum contacts' are demonstrated to satisfy due process requirements." *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989) (quoting *Unger v. Publisher Entry Serv., Inc.*, 513 So. 2d 674, 675 (Fla. Dist. Ct. App. 1987)).

Once a Plaintiff pleads allegations that are sufficient to establish long-arm jurisdiction, the burden shifts to the defendant to contest jurisdiction. *Washington Cap. Corp. v. Milandco, Ltd., Inc.*, 695 So. 2d 838, 841 (Fla. Dist. Ct. App. 1997). "A defendant wishing to contest the allegations of the complaint concerning jurisdiction or to raise a contention of minimum contacts must file affidavits in support of his position." *Venetian Salami*, 554 So. 2d at 502. If the defendant successfully contests the jurisdictional allegations, "the burden is then placed upon the plaintiff to prove by affidavit the basis upon which jurisdiction may be obtained." *Id.*

"In cases involving specific personal jurisdiction, the Eleventh Circuit uses three criteria to determine whether the 'minimum contacts' test is satisfied: (1) the defendant's contacts must be related to the plaintiff's cause of action or have given rise to it; (2) the contacts must involve some purposeful availment of the privilege of conducting activities within the forum; and (3) the defendant's contacts within the forum must be such that it should reasonably anticipate being haled into court there." *See In re Tirex Int'l, Inc.*, 395 B.R. 182, 189 (Bankr. S.D. Fla. 2008) (citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 631 (11th Cir.1996)). With respect to general jurisdiction, plaintiffs must set forth "sufficient facts showing substantial and non-isolated activity within the State as established by section 48.193(2)." *JG Contracting Co., Inc. v. Tower Innovations Distribution, LLC*, 333 So. 3d 1139, 1142 (Fla. Dist. Ct. App. 2022). In other words, "[t]he court must find that the defendant's contacts with the forum represent continuous and

systematic general business contacts." *Id* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984) (citation and quotations omitted).

Applying the above principles to the instant case, the Peppertree and AMLQ Defendants are subject to personal jurisdiction in Florida state courts because they, through their parent corporations, operate, conduct, engage in or carry-on business in Florida. The Peppertree and AMLQ Defendants are subsidiary entities of larger parent corporations, and they do not themselves perform significant independent functions. In other words, these Defendants are essentially indistinguishable from their parent corporations. It is believed that these parent corporations maintain substantial business operations in Florida. For example, and as set forth at greater length below, AMLQ's parent corporation, Goldman Sachs, maintains a corporate office in Florida where it performs significant and continuous business operations. Moreover, upon information and belief, the parent corporations for the Peppertree entities have invested substantial funds towards the construction of telecommunication towers in Florida. As such, these facts are sufficient to establish the requisite nexus between Defendants and this forum to justify the exercise of personal jurisdiction over them in Florida courts. *See In re Lyondell Chem. Co*., 543 B.R. 127, 142 (Bankr. S.D.N.Y. 2016) ("While traditionally alter ego jurisdiction is used to obtain personal jurisdiction over a foreign parent that exercises control over affiliated entities within the forum, the reverse is also possible, and a parent's contacts with a forum can be imputed to a subsidiary to obtain personal jurisdiction over that subsidiary."); *In re Chocolate Confectionary Antitrust Litig*., 674 F. Supp. 2d 580, 598–99 (M.D. Pa. 2009) ("A plaintiff may rely upon an alter ego connection to acquire jurisdiction over either a foreign parent or a foreign subsidiary based upon their relationship with an in-forum entity.") (citation omitted); *Ranza v. Nike, Inc*., 793 F.3d 1059, 1073 (9th Cir. 2015) ("We hold the alter ego test may be used to extend personal jurisdiction to a foreign parent or subsidiary when, in actuality, the foreign entity is not really separate from its domestic affiliate.") (citation omitted). To the extent, however, that the Court concludes additional jurisdictional facts need to be developed, Plaintiffs argue below, as well as in their forthcoming Motion seeking Leave to obtain Jurisdictional Discovery, that the Court should allow Plaintiffs a brief period to conduct jurisdictional discovery prior to any potential adverse ruling on the pending Motions to Dismiss for lack of Personal Jurisdiction and Failure to State a Claim [ECF No. 12, 13].

In the alternative, the Peppertree and AMLQ Defendants are subject to personal jurisdiction in Florida state courts because Plaintiffs' rescission claim is based on an alternative set of

allegations, which claim that the Peppertree and AMLQ Defendants were aware of and participated in the material misrepresentation of fact concerning Mr. Gaitan's purported corporate status within the Company. [ECF No. 31-4 ¶¶ 45-48]. As such, to the extent the rescission claim is based on these alternative set of facts, these allegations describe the commission of a tortious act by the Peppertree and AMLQ Defendants in Florida because the Framework Agreement was executed in Florida and all representations pertinent to the Framework Agreement were made in this forum. See *ripKurrent LLC v. Richard Ballard IRA LLC*, 530 F. Supp. 3d 1281, 1296 (S.D. Fla. 2021) ("Here, the Court finds that Plaintiff has established a *prima facie* case of specific personal jurisdiction under section 48.193(1)(a)(2) because Plaintiff sufficiently alleges causes of action for negligent misrepresentation and fraud in the inducement arising out of statements made by [defendant] to [plaintiff] at a meeting in Florida—and through electronic communications into Florida."). Indeed, the Peppertree and AMLQ Defendants do not refute in any of their submissions to the Court the fact that they were present in Florida for discussions regarding the Framework Agreement and its execution as well. If these Defendants knowingly misrepresented the fact that Mr. Gaitan was not the Company's CEO at the time of the Framework Agreement's execution, then this constitutes the commission of a tort within Florida that renders them amenable to personal jurisdiction in this forum. Based on the foregoing, the Court should deny both Motions to Dismiss for want of Personal Jurisdiction and Failure to State a Claim [ECF Nos. 12, 13].

    **c. Should the Court determine that the Peppertree Defendants and AMLQ's motions to dismiss for lack of personal jurisdiction have any merit, the Court should first allow Plaintiffs a brief period to conduct limited jurisdictional discovery prior to issuing a ruling.[2]**

To the extent the Court is inclined to grant either Motion for want of Personal Jurisdiction, [ECF Nos. 12, 13], the Court should first allow Plaintiffs an opportunity to engage in limited

---

[2] Plaintiffs acknowledge that a request for jurisdictional discovery must be made through a proper motion with the Court, and not through an informal request embedded within a response memorandum. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1281-82 (11th Cir. 2009) (affirming district court's order granting motion to dismiss for lack of personal jurisdiction where, among other things, plaintiff embedded requests for jurisdictional discovery within response memorandum instead of formally moving for jurisdictional discovery or propounding discovery on the opposition related to the jurisdictional inquiry). As such, Plaintiffs represent to the Court that a motion seeking leave to conduct limited jurisdictional discovery is forthcoming this week prior to the conclusion of the briefing schedule on the motions to dismiss.

9

jurisdictional discovery prior to issuing any such adverse ruling. "[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978). "When a defendant raises a jurisdictional challenge in a motion to dismiss, a plaintiff should ordinarily be afforded an opportunity to conduct limited jurisdictional discovery before a court rules on the motion." *Beale v. Husqvarna AB*, No. 20-CV-80909, 2020 WL 6472615, at *1 (S.D. Fla. Aug. 3, 2020) (citation omitted) (Middlebrooks, J.); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) ("Resolution of a pretrial motion that turns on findings of fact—for example, a motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2)—may require some limited discovery before a meaningful ruling can be made."); *Am. C.L. Union of Fla., Inc. v. City of Sarasota*, 859 F.3d 1337, 1341 (11th Cir. 2017) ("[A] district court abuses its discretion if it completely denies a party jurisdictional discovery, unless that party unduly delayed in propounding discovery or seeking leave to initiate discovery.") (internal citation omitted) (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.7 (11th Cir. 1999)).

The Peppertree and AMLQ Defendants are subsidiary entities of larger parent corporations, and they do not themselves perform significant independent functions. In other words, these Defendants are essentially indistinguishable from their parent corporations, which maintain substantial business operations in Florida. For example, AMLQ, as a wholly-owned affiliate of Goldman Sachs, is subject to personal jurisdiction in Florida. Generally, a Court will not impute one corporation's contacts with a forum onto that of a parent or subsidiary corporation to establish personal jurisdiction. *See Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983). However, when there exists a sufficiently close nexus between the parent and its subsidiary, one corporation's contacts may be imputed onto the other to serve as the basis for personal jurisdiction. *Id*. Where there is sufficient evidence to show that one corporation is exercising sufficient control over other, the court should impute the contacts of one corporation to another for personal jurisdiction purposes. *Id*.

To impute those contacts of one corporation to that of another, courts should look at the following factors: "the amount of stock owned by the parent of the subsidiary; whether the two corporations have separate headquarters; whether the two corporations share common officers and directors; whether the corporate formalities are observed; whether separate accounting systems are maintained; whether one exercises complete authority over the other's general policy; and whether

10

one exercises complete authority over the other's daily operations." *Carson v. Maersk, Ltd.*, 61 F.Supp.2d 607, 610 (S.D. Tex. 1999) (citing *Hargrave*, 710 F.2d at 1160).

Most tellingly, Carey Ziegler, the individual who signed the Declaration (the "Ziegler Declaration") [ECF No. 13-1] in support of AMLQ's argument that this Court lacks personal jurisdiction, is an employee of Goldman Sachs & Co. LLC. This is the entity that maintains the business records on behalf of AMLQ. *Id*. The Ziegler Declaration concedes that AMLQ is a wholly-owned subsidiary of Goldman. In addition, in the recitals of the Shareholder's Agreement, AMLQ is defined as "Goldman." [ECF No. 31-27 at p. 3]. The SHA also provides that AMLQ is to receive notice of any dispute arising therefrom through Goldman, Sachs & Co., at its headquarters located at 200 West Street, New York, NY 10282. In addition, as far as Plaintiffs are aware, AMLQ does not possess its own separate headquarters.

Moreover, and upon information and belief, AMLQ has no unique employees, but it is managed wholly by employees of Goldman, Goldman Sachs & Co. LLC, and other Goldman-controlled entities. The SHA was signed by Milton Millman as President of AMLQ. Upon information and belief, Milton Millman is also the President/COO of Goldman Sachs Specialty Holdings, Inc. In essence, Plaintiffs assert that AMLQ has no unique offices, employees, or functions. Instead, it is nothing more than the alter-ego of a mix of Goldman-owned entities incorporated for the specific purpose of holding shares in the Company. And these Goldman-owned entities, upon information and belief, maintain substantial operations in Florida. The Peppertree Entities also, upon information and belief, are one in the same with parent corporations that maintain significant operations in Florida, such as, for example, investing substantial funds towards the construction of telecommunication towers in Florida. For the foregoing reasons and those that will be set forth in greater detail in Plaintiffs' forthcoming motion Seeking Leave to Obtain Jurisdictional Discovery, to the extent the pending motions to dismiss for lack of personal jurisdiction have any merit, the Court should grant Plaintiffs a brief period to conduct limited jurisdictional discovery before entering a ruling on the pending Motions [ECF Nos. 12, 13].

    **d. The Peppertree and AMLQ Defendants' Motion to Dismiss for Failure to State a Claim.**

For the reasons set forth in Plaintiffs' Response in Opposition to Defendants Adam Michael Schachter and Gelber Schachter & Greenberg, P.A.'s Motion to Dismiss, see [ECF No. 47], which are fully incorporated herein, the Court should also reject the Peppertree and AMLQ Defendant's

arguments under Federal Rule of Civil Procedure 12(b)(6) in support of dismissal [ECF Nos. 12, 13]. To summarize, Plaintiffs' claims for rescission and injunctive relief survive dismissal for at least the following reasons: (1) the allegations set forth in support of the claim for rescission meet the requisite heighted pleading standard under Federal Rule of Civil Procedure 9(b); (2) dismissal based on Plaintiffs' purported failure to conduct due diligence is improper at the pleadings phase because this is an issue of fact; (3) Plaintiffs properly pled the requisite allegations in support of fraudulent misrepresentation as an alternative basis to support a claim for rescission; and (4) Plaintiffs have asserted the requisite allegations to sustain their claim for injunctive relief.  *See* [ECF No. 47].

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Peppertree and AMLQ's Motions to Dismiss [ECF Nos. 12, 13].

CASE NO: 1:22-cv-21204-SCOLA/GOODMAN

| | |
|---|---|
| Dated: June 6, 2022. | Respectfully submitted,<br>**CAREY RODRIGUEZ MILIAN, LLP**<br>1395 Brickell Avenue, Suite 700<br>Miami, Florida 33131<br>Telephone: (305) 372-7474<br><br>*/s/ Juan J. Rodriguez*<br>Juan J. Rodriguez<br>Fla. Bar No. 613843<br>Email: jrodriguez@careyrodriguez.com<br>Luke T. Jacobs<br>Fla. Bar. No. 1024686<br>Email: ljacobs@careyrodriguez.com<br>Secondary: cperez@careyrodriguez.com<br>*Attorneys for Plaintiffs* |