UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO: 1:22-cv-21204-SCOLA/GOODMAN

TERRA TOWERS CORP. and TBS
MANAGEMENT, S.A.,

    Plaintiffs,

vs.

ADAM MICHAEL SCHACHTER,
GELBER SCHACHTER & GREENBERG,
P.A., CONTINENTAL TOWERS LATAM
HOLDINGS LIMITED, TELECOM
BUSINESS SOLUTION, LLC, LATAM
TOWERS, LLC, AMLQ HOLDINGS
(CAY) LTD., and DT HOLDINGS, INC,

    Defendants.
_____/

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION TO REMAND**

CASE NO: 1:22-cv-21204-SCOLA/GOODMAN

Plaintiffs Terra Towers Corp. and TBS Management, S.A, (collectively "Plaintiffs"), by and through undersigned counsel, file the instant Reply in further support of their Motion to Remand (the "Motion), *see* [ECF No. 38]. In support thereof, Plaintiffs state as follows:

**I. The current causes of action are not subject to removal under the New York Convention's Broad Removal Provisions.**

In their Response in Opposition to Remand, Defendants first contend that removal of the operative complaint [ECF No. 31-4] is proper under 9 U.S.C. § 205 because the arbitration agreement within the Shareholders Agreement falls under the New York Convention and because the operative complaint "relates to'" the Arbitration Agreement within the Shareholders Agreement [ECF No. 44 pp. 4-10]. Plaintiffs do not dispute that the arbitration agreement within the Shareholders Agreement falls under the New York Convention. Indeed, Plaintiffs are presently litigating a dispute arising from the shareholders' commercial relationship in the Underlying Arbitration, as required pursuant to the Arbitration provisions within the Shareholders Agreement. However, and as elucidated in prior submissions to the Court, Plaintiffs contend that the allegations and claims for relief within the operative and proposed complaints simply have no nexus with the arbitration provisions in the Shareholders Agreement.

District courts engage in a two-step inquiry to determine federal subject matter jurisdiction pursuant to the New York Convention. *See* 9 US.C. § 205. This two-step inquiry consists of "[f]irst…. determin[ing] whether the notice of removal describes an arbitration agreement that may 'fall[ ] under the Convention'…." and "[s]econd, the district court must determine whether there is a non-frivolous basis to conclude that agreement sufficiently 'relates to' the case before the court such that the agreement to arbitrate could conceivably affect the outcome of the case." *Outokumpu Stainless USA, LLC v. Converteam SAS*, 902 F.3d 1316, 1324 (11th Cir. 2018), rev'd and remanded sub nom. *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637 (2020) (quoting 9 US.C. § 205). An arbitration agreement falling under the New York Convention relates to the subject matter of a case where it could conceivably impact the outcome of a plaintiff's case. *See Outokumpu Stainless USA*, 902 F.3d at 1324; *Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002); *Reid v. Doe Run Res. Corp*., 701 F.3d 840, 844 (8th Cir. 2012); *Infuturia Glob. Ltd. v. Sequus Pharm., Inc*., 631 F.3d 1133, 1137–38 (9th Cir. 2011). It is well-

settled, however, that, despite the broad reach of the "relates to" language in 9 US.C. § 205, the link between an arbitration agreement and the dispute is not "boundless," and there must be an actual nexus between the two to confer federal subject matter jurisdiction upon a district court. *See Outokumpu Stainless USA*, 902 F.3d at 1324; *Matabang v. Carnival Corp.*, 630 F. Supp. 2d 1361, 1367 (S.D. Fla. 2009); *Matter of Arb. Between R3 Aerospace, Inc. & Marshall of Cambridge Aerospace Ltd.*, 927 F. Supp. 121, 125 (S.D.N.Y. 1996).

Applying the foregoing principles here, the Court does not possess subject matter jurisdiction over this controversy because the claims for relief within the operative complaint are completely untethered from the subject arbitration provisions within the Shareholders Agreement. In other words, there is no conceivable scenario where the arbitration provisions in the Shareholders Agreement could impact this unrelated proceeding. To illustrate, the Underlying Arbitration arises out of Peppertree's Request for Arbitration, wherein it asserts various claims, both in its individual capacity and derivatively, for monetary and equitable relief against Plaintiffs and the Company's directors. More specifically, Peppertree seeks pecuniary damages due to Terra's purported improper refusal to sell the Company pursuant to the Shareholders agreement, or in the alternative, specific performance to compel Terra's sale of the Company. Plaintiffs also filed counterclaims in the Underlying Arbitration, asserting that Peppertree and AMLQ committed breaches of contract and breaches of fiduciary duty due to, among other things, their interference with a potential sale of the Company and their rejection of tower construction projects.

In contrast, the current state court complaint seeks rescission of the Framework Agreement, which only specifies the terms under which Mr. Schachter and GSG will represent the Company in the Underlying Arbitration. These claims are based on, among other things, allegations that Mr. Gaitan lacked the requisite corporate authority to engage counsel for the Company in the Underlying Arbitration proceedings. Moreover, the proposed First Amended Complaint asserts claims for legal malpractice and breach of fiduciary duty against GSG based on allegations that they engaged in professional misconduct when they disseminated privileged communications that were sent to them by a Company official during the pendency of the Underlying Arbitration proceedings.

Placing these unrelated facts in juxtaposition, it is clear that no nexus exists between the improper procurement of the Framework Agreement, GSG's misconduct in its representation of

the Company and the arbitration provisions within the Shareholders Agreement, which specify that the parties must arbitrate legal controversies arising from their commercial relationship under the Shareholders Agreement. The arbitration provisions within the Shareholders Agreement broadly provide that "any controversy, claim or dispute arising out of or relating to or in connection with [the Shareholders] Agreement…." "will be finally settled by binding arbitration." [ECF No. 14-1 p. 49 §§ 8.14, 8.15]. Simply put, disputes concerning GSG's improper retention and their subsequent professional misconduct in representing the Company during the Underlying Arbitration are not controversies that arise under this text. This is so because the arbitration provisions within the Shareholders Agreement, notwithstanding their broad reach, do not encompass the Framework Agreement, which sets forth the terms of the Company's legal representation, and because claims involving professional misconduct by an attorney representing one of the Parties to the Shareholders Agreement simply does not fall within the universe of subject matter covered by the arbitration provisions. Indeed, the issue of potentially disqualifying legal counsel is not arbitrable as a matter of policy. *See Munich Reinsurance Am., Inc. v. ACE Prop. & Cas. Ins. Co.*, 500 F. Supp. 2d 272, 275 (S.D.N.Y. 2007).

The court's holding in *Matter of Arb. Between R3 Aerospace, Inc. & Marshall of Cambridge Aerospace Ltd.*, wherein it granted a petitioner's motion to remand on similar facts to the instant controversy, is instructive here. 927 F. Supp. at 125. In this case, the petitioner initiated special proceedings in a New York state trial court to disqualify a law firm from continuing to represent the respondent in an underlying arbitration proceeding based on allegations that the law firm had violated New York's Code of Professional Responsibility and Disciplinary Rules. *Id* at 122. The Respondent, the company represented by the law firm that petitioner sought to disqualify based on a conflict of interest, removed the action to the Southern District of New York, asserting that the district court had federal subject matter jurisdiction over the controversy pursuant to 9 U.S.C. § 205 because the state court proceeding was purportedly related to an arbitration agreement falling under the New York Convention. *Id*. According to the respondent in this case, removal was proper under the New York Convention because the arbitration clause in the parties' agreement "specifically addresses the right of each party to be represented by counsel in any arbitration proceeding arising out of the Agreement." *Id* at 124. The court rejected the respondent's argument, finding that "the [New York] Convention does not apply to non-arbitrable disputes,

4

such as a state court proceeding to disqualify counsel from an arbitration proceeding…." *Id* ("The 'subject matter' of the state court proceeding in this case concerns the enforcement of the Code of Professional Responsibility and application of the Disciplinary Rules and the alleged grounds for disqualification of HGPH as counsel for [Respondent]. That 'subject matter' is not 'related' to an arbitration agreement 'falling under the Convention,' except in the most tenuous sense."). Notably, numerous courts, including the Southern District of Florida, have agreed with the court's reasoning in *Matter of Arb. Between R3 Aerospace, Inc. & Marshall of Cambridge Aerospace Ltd*. *See Morgan Stanley DW, Inc. v. Kelley & Warren, P.A*., No. 02-80225-CIV, 2002 WL 34382748, at *2 (S.D. Fla. May 10, 2002); *Nw. Nat. Ins. Co. v. Insco, Ltd*., No. 11 CIV. 1124 SAS, 2011 WL 4552997, at *4 (S.D.N.Y. Oct. 3, 2011); *Simply Fit of N. Am., Inc. v. Poyner*, 579 F. Supp. 2d 371, 384 (E.D.N.Y. 2008); *Dean Witter Reynolds, Inc. v. Clements, O'Neill, Pierce & Nickens, L.L.P*., No. CIV.A. H-99-1882, 2000 WL 36098499, at *5 (S.D. Tex. Sept. 8, 2000).

The rationale in *Matter of Arb. Between R3 Aerospace, Inc. & Marshall of Cambridge Aerospace Ltd*, forecloses Defendants' arguments in opposition to remand because the causes of action in both the current and proposed claims for relief in this cause concern the improper retention of GSG to represent the Company and GSG's subsequent professional misconduct in its representation of the Company during the Underlying Arbitration, respectively. The arbitration provisions within the Shareholders Agreement simply make no mention of any controversies concerning the removal or disqualification of counsel for the Company. Moreover, the subject arbitration provisions within the Shareholders Agreement do not even implicitly encompass such a dispute because the issues of attorney discharge and discipline are completely unrelated to the universe of disputes that are contemplated by those provisions, and, in any event, such a controversy is properly adjudicated by a state trial court, not an arbitration panel. *Munich Reinsurance Am., Inc.*, 500 F. Supp. 2d at 275 ("The issue before the Pennsylvania court, disqualification of an attorney for an alleged conflict of interest, is a substantive matter for the courts and not arbitrators."); *Croushore v. Buchanan Ingersoll P.C*., 32 Pa. D. & C.4th 142, 151 (Com. Pl. 1996) ("[B]y agreeing to submit a dispute to arbitration, a party has not given up its right to seek judicial review of its claims that a former attorney or former law firm is breaching fiduciary duties owed to the party, as a former client.").

With respect to Defendants' contention that Plaintiffs submitted their current and proposed causes of action for adjudication before the panel in the Underlying Arbitration, this claim is factually baseless. *See* [ECF No. 44 p. 9 ("Plaintiffs fail to even mention the Tribunal's adverse rulings on the identical claims they raised in the Arbitration….")]. Plaintiffs have not submitted the instant controversy concerning the improper procurement of the Framework Agreement to the arbitration panel in the Underlying Arbitration. Plaintiffs' counter-pleading in the Underlying Arbitration sets forth various causes of action against Peppertree and AMLQ based on allegations that they committed breaches of contract and breaches of fiduciary duty due to, among other things, their interference with a potential sale of the Company and their improper rejection of tower construction projects. These claims for relief do not seek an order disqualifying GSG from continuing to represent the Company or an order rescinding the Framework Agreement. Moreover, Plaintiffs have never filed a motion seeking any such relief from the arbitration panel. Plaintiffs, therefore, could not have obtained a judgment on the causes of action set forth in the current and proposed iterations of the complaint because they were not submitted in any manner before the panel in the Underlying Arbitration. *See J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 656 F. Supp. 830, 834 (N.D. Ill. 1987) ("None of the pleadings before the arbitrators raise RICO claims and Redstart does not now seek to compel arbitration of that claim under § 4 of the Arbitration Act. Regardless of the arbitrability of RICO claims generally, JDM's RICO claim cannot be arbitrated unless one of the parties submits it for arbitration.").

Contrary to Defendants' distorted framing of the Underlying Arbitration, Defendants Peppertree and AMLQ filed an Emergency Motion for Interim Relief with the Tribunal, wherein they sought, among other things, an interim order directing Plaintiffs to reinstate Mr. Gaitan to his former position with the Company. As directed by the Tribunal, Plaintiffs submitted written oppositions to this motion seeking emergency interim relief, and subsequently moved for reconsideration when the Tribunal entered an adverse ruling against Plaintiffs. Plaintiffs did not, as erroneously suggested by Defendants, "submit[]" any claims or motions seeking rescission of the Framework Agreement or to disqualify GSG from representing the Company. Consistent with a Tribunal order, Plaintiffs submitted their written opposition to the motion for emergency interim relief. In other words, Plaintiffs were compelled to address these issues in the Underlying Arbitration because, even if the Tribunal had not directed Plaintiffs to respond, Plaintiffs naturally

6

wanted to avoid conceding the arguments raised in the emergency motion for interim relief by failing to issue a response. Plaintiffs subsequently moved for reconsideration of the Tribunal's order granting emergency interim relief because, among other things, the Tribunal did not possess the requisite jurisdiction to order the retention or protection of Company employees. In addition to seeking a vacatur of the Tribunal's order granting emergency interim relief without the need for judicial intervention, Plaintiffs' motion for reconsideration in the Underlying Arbitration also served the dual purpose of developing a written record of the Tribunal's rationale in the event of a subsequent challenge to its orders in federal district court. As such, Defendants have, at best, failed to accurately describe Plaintiffs' written opposition to the motion for emergency interim relief when they framed it as "submitting" issues to the Tribunal. At worst, Defendants have disingenuously attempted to distort what transpired during the Underlying Arbitration proceedings.

### II. The Court may evaluate post-removal events in determining whether to grant remand and the Proposed First Amended Complaint does not confer subject matter jurisdiction upon the Court.

Defendants next argue that remand is improper because Plaintiffs' proposed First Amended Complaint, *see* [ECF No. 35-1], is irrelevant in the Court's evaluation of the Motion to Remand. [ECF No. 44 pp. 11-14]. Moreover, according to Defendants, remand is improper because the proposed First Amended Complaint nonetheless confers subject matter jurisdiction upon the Court on the basis of diversity jurisdiction. [ECF No. 44 pp. 11-14]. Both contentions are misplaced. As an initial matter, Plaintiffs have consistently maintained that remand is appropriate under either iteration of the complaint, *see* [ECF No. 38 pp. 7-9]. However, even if Plaintiffs had relied solely on their proposed First Amended Complaint, this would not preclude Plaintiffs from obtaining an order remanding these proceedings to state court. This is so because it is well-settled that a court may consider certain post-removal events when determining whether it will retain jurisdiction over a case involving only state law causes of action. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988); *Rivera v. Rodomar, Inc.*, No. 18-22450-CIV, 2019 WL 2125017, at *3 (S.D. Fla. Jan. 23, 2019); *Lake Cnty. v. NRG/Recovery Grp., Inc.*, 144 F. Supp. 2d 1316, 1319–20 (M.D. Fla. 2001) ("In sum, the Court concludes that a determination at this juncture of whether to remand purely state law claims, after removal jurisdiction has already been determined to be appropriate,

is not at odds with *Poore* and is a determination specifically authorized by *Carnegie–Mellon*. Accordingly, the Court rejects NRG's argument that the Court cannot visit the issue of its own subject matter jurisdiction by reference to the Amended Complaint."). As such, contrary to Defendants' contention that the Court is limited to the operative complaint at the time of removal when determining whether remand is appropriate, governing Supreme Court authority expressly allows the Court to rely on post-removal events to assess whether it should retain jurisdiction over certain controversies involving only state law claims, such as the instant dispute between the Parties.

Next, Defendants assert that, even if the Court could rely on the proposed amended pleading in determining the propriety of removal, the Court still has original jurisdiction over this matter on the basis of diversity jurisdiction. [ECF No. 44 pp. 12-14]. By clear implication, Defendants concede that, in the event Plaintiffs are granted leave to file the proposed First Amended Complaint, complete diversity is destroyed in this action by the presence of Defendants Mr. Schachter and GSG because they are citizens of this forum. Defendants nonetheless contend, in a footnote rather than the body of their response memorandum, that Plaintiffs have waived their ability to assert the resident defendant rule in opposition to diversity jurisdiction by not having expressly raised this contention in their Motion to Remand. [ECF No. 44 p. 13 n.4]. In support of this contention, Defendants rely on *Cap. Rest. Grp., LLC v. Burger King Corp.*, where this Court held that a plaintiff waived any right to initiate its case in state court or to assert the forum defendant rule in opposition to removal because it had executed an agreement that contained a valid forum section clause specifying federal court as the parties' forum of choice in the event of a legal controversy. No. 19-22131-CIV, 2019 WL 5102162, at *3 (S.D. Fla. Oct. 11, 2019) (Scola, J.) (citing *Sauls v. Sneed*, 413 F. Supp. 3d 1132, 1137 (N.D. Ala. 2019) ("Ms. Sauls has waived the defect because she did not identify the forum defendant defect in her motion to remand, ***and*** she did not file her motion to remand within 30 days of removal.") (emphasis supplied))). As set forth below, Defendants rely on authority that is factually inapposite to the instant dispute, and their contentions concerning subject matter jurisdiction on the basis of diversity are unavailing.

It is well-settled that, if a plaintiff initiates a cause of action in state court against a defendant that is a resident of that state court's forum, the defendant is foreclosed from removing the case to federal district court, even where the case could have initially been brought in federal

court on the basis of diversity jurisdiction. *See Bentley v. Miami Air Int'l, Inc.*, 377 F. Supp. 3d 1337, 1345 (S.D. Fla. 2019) (quoting 28 U.S.C. section 1441(b)(2)); *Tillman v. R.J. Reynolds Tobacco*, 253 F.3d 1302, 1305 (11th Cir. 2001). Accordingly, because Mr. Schachter and GSG are domiciled in Miami, Florida, any attempt to remove these proceedings based on diversity jurisdiction is improper if the Court grants Plaintiffs leave to file their First Amended Complaint. *See Bentley*, 377 F. Supp. 3d at 1341.

In addition, Plaintiffs have not waived their right to assert the forum resident rule in opposition to removal should the Court grant them leave to file their First Amended Complaint. Although Plaintiffs did not expressly raise the forum defendant rule in their Motion to Remand, this defect in the removal procedure has not been waived because there have been numerous references in multiple submissions to the Court that provided Defendants with sufficient notice of the potential applicability of the forum defendant rule. *See St. Joe Co. v. Transocean Offshore Deepwater Drilling Inc.*, 774 F. Supp. 2d 596, 613 (D. Del. 2011) (holding that plaintiff did not waive the forum defendant argument despite not expressly raising the argument in the motion to remand). To illustrate, this procedural removal defect has not been waived for at least the following reasons: (1) Plaintiffs did not expressly waive or express any intention to waive this defect in the event that leave to amend was granted; (2) Plaintiffs filed their Motion to Remand within the applicable statutory deadline; (3) Plaintiffs have consistently maintained that they are seeking remand under either iteration of the complaint; (4) Plaintiffs cited 28 U.S.C. § 1441 generally in their Motion to Remand, arguing that removal was improper under it; (5) the notice of removal [ECF No. 31] seeks removal on the basis of federal question jurisdiction, not diversity; and (6) Plaintiffs have consistently maintained that a controversy concerning the removal or disqualification of a Florida lawyer (GSG and Mr. Schachter) is a matter that belongs in state court, not federal district court, *see* [ECF No. 38 ("It therefore makes little sense for this Court to retain jurisdiction over a case that is in its nascent stage and that involves only state law claims best left to resolution by a state court.") (citing *Kinsey v. King*, 257 F. App'x 136, 139 (11th Cir. 2007) ("Any state-law claims, including legal malpractice, arise out of Gould's representation of the Kinseys in negotiating a settlement agreement and his refusal to continue that representation after the Kinseys rejected that agreement. The district court lacks federal question jurisdiction over any such claims.")). These references provided Defendants with ample notice that the forum defendant

issue would be relevant in the event that leave to amend was granted. In addition, Defendants have not cited a single authority concluding that a plaintiff waived its entitlement to raise the forum defendant rule under factually analogous circumstances. Accordingly, Plaintiffs have not waived the forum defendant argument in opposition to removal.

### III. Conclusion.

For the foregoing reasons and those set forth in Plaintiffs' Motion to Remand [ECF No. 38], this Court should remand these proceedings back to the Eleventh Judicial Circuit in and for Miami-Dade County.

Dated: June 13, 2022.

Respectfully submitted,
**CAREY RODRIGUEZ MILIAN, LLP**
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Telephone: (305) 372-7474

*/s/ Juan J. Rodriguez*
Juan J. Rodriguez
Fla. Bar No. 613843
Email: jrodriguez@careyrodriguez.com
Luke T. Jacobs
Fla. Bar. No. 1024686
Email: ljacobs@careyrodriguez.com
Secondary: cperez@careyrodriguez.com
*Attorneys for Plaintiffs*