UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:22-cv-21204-SCOLA/DAMIAN

TERRA TOWERS CORP. and TBS
MANAGEMENT, S.A.,

        Plaintiffs,

v.

ADAM MICHAEL SCHACHTER,
GELBER SCHACHTER & GREENBERG,
P.A., CONTINENTAL TOWERS LATAM
HOLDINGS LIMITED, TELECOM
BUSINESS SOLUTION, LLC, LATAM
TOWERS, LLC, AMLQ HOLDINGS (CAY)
LTD., and DT HOLDINGS, INC.,

        Defendants.
_____/

**DEFENDANTS ADAM MICHAEL SCHACHTER AND
GELBER SCHACHTER & GREENBERG, P.A.'S
<u>REPLY IN SUPPORT OF MOTION TO DISMISS</u>**

Plaintiffs'[1] Opposition to Defendant GSG's[2] Motion to Dismiss (ECF No. 47) confirms two points: <u>first</u>, the 2016 Board Resolution attached to the Complaint is fatal to the claims asserted; and <u>second</u>, the subject matter of this lawsuit belongs in arbitration. Plaintiffs' Complaint should be dismissed with prejudice.

---

[1] Plaintiffs Terra Towers Corp. ("Terra Towers") and TBS Management, S.A. ("Terra TBS") are collectively referred to as "Terra" or Plaintiffs.

[2] Defendants Adam Michael Schachter and Gelber Schachter & Greenberg, P.A. are collectively referred to as "GSG." "Defendants" refers collectively to GSG and Specially Appearing Defendants Telecom Business Solution, LLC and LATAM Towers, LLC (collectively, "Peppertree"), and AMLQ Holdings (Cay) Ltd. ("AMLQ").

**INTRODUCTION**

Accepting the Complaint allegations as true, Plaintiffs offer no cogent or meaningful argument to overcome what the 2016 Board Resolution plainly establishes: Plaintiffs knew at the time they executed the Framework Agreement that Mr. Gaitán had been removed as CEO in May 2016. Plaintiffs do not dispute that the resolution was executed by their own directors (it was). Indeed, in their Opposition, Plaintiffs concede that "Gaitan's assertion that he was the CEO did not correspond with Terra's understanding at the time." (Opp. at 3.) That should be the end of the Court's inquiry.

Much of Plaintiffs' Opposition consists of speculation about what Defendants may have known about Mr. Gaitán's status as CEO. Those arguments, besides being improper because they depart from the four corners of the Complaint, are irrelevant. Without a mistake of fact on the part of the Plaintiffs, all of the alternative theories of rescission and injunctive relief (unilateral mistake, mutual mistake, or fraud) fail regardless of what Defendants knew or didn't know.

Moreover, the Plaintiffs' Opposition makes clear that this lawsuit directly relates to the ongoing New York-based arbitration and will require resolution of corporate authority issues that arise under the Shareholders Agreement and which have already been (and are still being) litigated in the pending arbitration. In short, this attempt to re-litigate these issues does not belong in this Court.

**ARGUMENT**

**I. The Complaint fails to state any grounds for rescission.**

As set forth in the Motion, to state a claim for rescission, Plaintiffs must state with particularity facts to show the existence of some cognizable ground for rescission, here, mutual mistake, unilateral mistake, or fraud. *See Barber v. Am.'s Wholesale Lender*, 542 F. App'x 832,

836 (11th Cir. 2013). Plaintiffs spend multiple pages arguing that they allege sufficient facts to establish other elements of the claims. (*See* Opp. 6-8, 13-14.) Plaintiffs, however, must allege facts to satisfy <u>all</u> of the elements of the claims they assert, not a majority of them. *See Sunny Corral Mgmt., LLC v. Value Dining Inc.*, No. 08-60072, 2008 WL 5191466, at *3 (S.D. Fla. Dec. 10, 2008) (dismissal granted where "Plaintiff [] failed to plead all of the elements of cause of action for rescission"). Here, Plaintiffs' Complaint fails on the most critical element of the claim—to show that there is any cognizable ground for rescission.

### A. Plaintiffs fail to allege a mistake of fact because they knew as of May 2016 that Mr. Gaitán was removed as CEO.

To prove Mr. Gaitán was removed as CEO, Plaintiffs attached to the Complaint a May 16, 2016 resolution of the Company's[3] Board of Directors (the "2016 Board Resolution"), signed by the Plaintiffs' appointees to the Company's board (including one individual who is also a director of Plaintiff itself), appointing Mr. Gaitán as COO of the Company and appointing Mr. Arzu as CEO. The 2016 Board Resolution conclusively establishes there was no mistake of fact on Plaintiffs' part because when they entered into the Framework Agreement they knew Mr. Gaitán had been removed as CEO in 2016.

Plaintiffs provide no meaningful response on this threshold issue. Plaintiffs do not dispute the authenticity of the 2016 Board Resolution (nor could they, as they submitted it as part of their pleading to prove Mr. Gaitán was not the CEO), nor do they dispute that the resolution was executed by their own directors (it was). Indeed, Plaintiffs concede that "Gaitan's assertion that he was the CEO did not correspond with Terra's understanding at the time." (Opp. at 3.) Plaintiffs' knowledge, established through the 2016 Board Resolution, contradicts Plaintiffs' conclusory

---

[3] The "Company" refers to Continental Towers LATAM Holdings Limited, of which Terra, Peppertree, and AMLQ are shareholders.

allegations that there was a "mistake," and is fatal to Plaintiffs' Complaint. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) ("when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern").

Yet, Plaintiffs complain that Defendants can't have it both ways—they can't maintain that Mr. Gaitán was the CEO when the Framework Agreement was executed, while arguing in their motions to dismiss that Plaintiffs knew that Mr. Gaitán was <u>not</u> the CEO. As Defendants have explained time and again in this litigation, the Arbitral Tribunal already made a finding of fact that the Framework Agreement accurately reflected Mr. Gaitán's status as CEO of the Company. (*See* ECF No. 17-1, at 568.)[4] On a motion to dismiss, however, Defendants are bound by the allegations in the Complaint. In the Complaint, Plaintiffs allege Mr. Gaitán was not the CEO at the time of the execution of the Framework Agreement because he was removed as CEO on May 16, 2016, a fact Plaintiffs knew. The Complaint must therefore be dismissed on that ground.

Plaintiffs make a related effort to pivot the Court's attention to whether the Defendants believed that Mr. Gaitán was the CEO at the time of the execution of the Framework Agreement. (*See* Opp. 8-11.) For example, Plaintiffs posit that their claim for rescission would survive "[i]f Defendants were to change course in their defense of this action by admitting they knew Gaitan was not the CEO of the Company when the Framework Agreement was executed." (Opp. at 9.) Plaintiffs put the cart before the horse. The sufficiency of a Complaint does not turn on whether it would survive if the Defendant were to admit facts not adequately pled in the Complaint to begin with. (*See infra* Section I.C.) And, more fundamentally, a claim for rescission (based on unilateral mistake, mutual mistake, or fraud), starts with the existence of a mistake of fact <u>on the Plaintiffs'</u>

---

[4]  If the Court were to accept the Tribunal's finding, then the Complaint must be dismissed because there is no mistake of fact: the Framework Agreement accurately reflected Mr. Gaitán's status as CEO.

part. The Complaint, however, establishes that the Plaintiffs knew, as of May 2016, that Mr. Gaitán was removed as CEO.

Because Plaintiffs fail to establish a mistake of fact, none of the alternative theories for rescission or injunctive relief asserted in the Complaint (unilateral mistake, mutual mistake, or fraud) can survive. And because the defect is incurable (the exhibit attached to the Complaint conclusively establishes Plaintiffs' knowledge), dismissal should be with prejudice. The Court need look no further.

However, for the sake of completeness, GSG notes that the Complaint also fails to plead other elements of the alternative theories, which are discussed briefly below.

**B. Plaintiffs' claim for rescission based on unilateral mistake also fails because Plaintiffs fail to show they exercised due care.**

Plaintiffs contend, in passing and without any further discussion, that Defendants "have failed to establish [] wanton disregard by Plaintiffs." (Opp. at 8.) This passing reference to an argument—even if it were sufficient for the Court's consideration[5]—is unavailing.

The Plaintiffs have the burden to allege with particularity facts to plausibly establish they were operating under a mistake of fact and the mistake was not a result of their own negligence or lack of due care. *See Berman v. Kafka*, 518 F. App'x 783, 786 (11th Cir. 2013) (affirming judgment and finding plaintiff failed to meet the requirements of unilateral mistake where "due diligence would have allowed for discovery" of the factual issue in question); *DePrince v. Starboard Cruise Servs., Inc.*, 271 So. 3d 11, 20 (Fla. 3d DCA 2018) (first element of unilateral mistake requires

---

[5] It is not. *See Varner v. Domestic Corp.*, 16-22482-CIV, 2017 WL 3730618, at *8 (S.D. Fla. Feb. 7, 2017) (Scola, J.) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.").

showing that "the mistake was not the result of an inexcusable lack of due care"); *Summit Health, Inc. v. APS Healthcare Bethesda, Inc.*, 993 F. Supp. 2d 379, 404 (S.D.N.Y. 2014), *aff'd sub nom. APEX Employee Wellness Servs., Inc. v. APS Healthcare Bethesda, Inc.*, 725 F. App'x 4 (2d Cir. 2018) ("Rescission will be denied if the mistake arises out of negligence and the means of knowledge were easily accessible.").

The Complaint contains only a conclusory allegation, devoid of facts, that the Plaintiffs' purported mistake "did not result from negligence or want of due care on the part of Plaintiffs." (Compl. ¶ 46.)[6] On the other hand, the 2016 Board Resolution establishes that Plaintiffs knew Mr. Gaitán was removed as CEO in 2016, before they executed the Framework Agreement. The 2016 Board Resolution, trumps the conclusory allegations in the Complaint. *See Griffin Indus., Inc.*, 496 F.3d at 1206.

Plaintiffs have not alleged facts to show they exercised due care; pointing the finger at Defendants for failing, at the pleadings stage, to disprove an allegation Plaintiffs have not properly alleged turns the Rule 12(b)(6) analysis on its head. *See Liquid Legacy Bottlers & Distributors, Ltd. v. Barkley*, No. 6:20-CV-1175, 2021 WL 2905486, at *2 (M.D. Fla. June 30, 2021) ("It is Plaintiffs' burden to address the elements of the causes of action and the specific, well-pled facts

---

[6] In their "Factual Background" section, Plaintiffs state that they asked an outside law firm for a copy of any board resolution removing Gaitán as CEO, could not find it, and therefore "presumed that Gaitan remained the CEO of the Company, with authority to enter into the Framework Agreement." (Opp. at 3.) Absent from this explanation is the date on which the law firm was supposedly asked to search for the resolutions. On page 4 of the Opposition, Plaintiffs state that a review of corporate resolutions only took place on October 19, 2021 (months after the Framework Agreement was executed), at which time the May 16, 2016 resolution were produced. Those facts would support Plaintiffs' lack of diligence. But, in any event, none of these allegations appear in the Complaint, and a plaintiff cannot amend its complaint in opposition to a motion to dismiss. *See Estate of Osorio v. Miami-Dade Cnty.*, No. 16-20200, 2017 WL 3721505, at *2 (S.D. Fla. Feb. 10, 2017) (Scola, J.), *aff'd,* 717 F. App'x 957 (11th Cir. 2018) (plaintiff "cannot amend its complaint through opposition briefing").

in the operative complaint that satisfy each of those elements.").

### C. Plaintiffs' claim for rescission based on mutual mistake also fails for lack of mutuality.

The claim for rescission based on mutual mistake fails for the additional reason that Plaintiffs fail to sufficiently allege mutuality. To obtain rescission based on mutual mistake of fact, the mistake must be shared by both sides of the agreement. *See Auto-Owners Ins. Co. v. Lexington Ins. Co.*, 10-81031-CIV, 2011 WL 13268494, at *4 (S.D. Fla. Feb. 2, 2011); *ACA Galleries, Inc. v. Kinney*, 928 F. Supp. 2d 699, 701-02 (S.D.N.Y. 2013), *aff'd*, 552 F. App'x 24 (2d Cir. 2014). To satisfy Rule 9(b)'s heightened pleading standard, the plaintiff must, at a minimum, state facts "as to how or why" the other parties to the agreement were similarly mistaken. *See Francois v. Hatami,* No. 21-22528, 2021 WL 4502336, at *7 (S.D. Fla. Oct. 1, 2021) (Scola, J.) (dismissing rescission claim for failure to allege mutual mistake of fact). The Complaint, however, contains only conclusory allegations as to the Defendants' knowledge. (*See* Compl. ¶¶ 31, 40, 41.)

Plaintiffs do not dispute that their Complaint allegations are deficient, but cite to portions of the Defendants' respective motions to dismiss where Defendants note that all parties signed the Framework Agreement and the Arbitral Tribunal "accepted that as of March 19, 2021, the CEO of the Company was Jorge Gaitán" and his status was accurately reflected in the Framework Agreement (*see* ECF No. 6, at 3; ECF No. 12, at 6; ECF No. 13, at 9), arguing that those statements create a so-called "appearance of a mutual mistake," which Plaintiffs contend "warrants denial of the Motion to Dismiss." (Opp. at 9.)

Rule 9(b) requires more than the "appearance of a mutual mistake," created outside the four corners of the Complaint—the heightened pleading standard requires Plaintiffs to allege facts in the Complaint "as to how or why" the Defendants were mistaken. *See Francois*, 2021 WL 4502336, at *7; *Assicurazioni Generali S.P.A. v. Facey Commodity Co., Inc.*, 10-20736-CIV, 2011

WL 13115560, at *4 (S.D. Fla. Mar. 28, 2011) ("Plaintiffs cannot supplement their Complaint through attachments to their opposition to the motions to dismiss."). In any case, nothing about Defendants' statements create an "appearance of a mutual mistake." They do not deal with Defendants' state of mind at the time they entered into the Framework Agreement.

Plaintiffs' claim for rescission based on mutual mistake thus fails for the additional reason that Plaintiffs do not sufficiently allege mutuality.

**D. Plaintiffs fail to allege with particularity other necessary elements of unilateral mistake or fraudulent inducement.**

Plaintiffs provide no response to the multiple pleading deficiencies in Plaintiffs' unilateral mistake or fraudulent inducement theories. (*See* ECF No. 6, at 13-16.) With respect to their claims based on unilateral mistake, in addition to the other elements already addressed above, Plaintiffs fail to allege with particularity facts to show that enforcement of the contract would be inequitable or unconscionable or that they suffered any detrimental reliance. (*See* ECF No. 6, 12-13.) Plaintiffs provide no response. With respect to the claims based on fraud in the inducement, aside from Plaintiffs being unable to establish justifiable reliance on a purported false statement regarding Mr. Gaitán's status as CEO given the 2016 Board Resolution, Plaintiffs also fail to allege with Rule 9(b) particularity that Defendants knew that Mr. Gaitán was not the CEO at the time the Framework Agreement was signed (*see supra* at Section I.C), that Defendants intended to induce Plaintiffs to act in reliance on such a purported false statement, or that Plaintiffs suffered an injury. Although Plaintiffs state that they "readily meet each element," a review of the Complaint allegations makes clear that fraudulent inducement is alleged solely through bare conclusory allegations. (*See* Compl. ¶¶ 47-50.)

**II.    Dismissal of Plaintiffs' claim for injunctive relief is appropriate.**

The basis of Plaintiffs' claim for injunctive relief is that "the Framework Agreement is

unenforceable based on mutual mistake or, in the alternative, unilateral mistake or fraud in the inducement." (*Id*. ¶¶ 52-53.) Because none of these theories are adequately pled, Count II should be dismissed with prejudice. Plaintiffs' Opposition adds nothing to avoid dismissal.

### III. This dispute belongs in arbitration.

Plaintiffs' Opposition makes clear that this dispute will require the resolution of corporate authority issues arising under the Shareholders Agreement, which contains an agreement to arbitrate. According to the Plaintiffs, to resolve the present dispute "[i]t must be determined whether Gaitan was the CEO of the Company when the Framework Agreement was executed." (Opp. at 9.) That central question will be answered by the Shareholders Agreement: according to Plaintiffs, "[i]t is undisputed by the clear terms of the Shareholders Agreement; a person can only be appointed to the CEO position of the Company by Board resolution."[7] (*Id*.) Plaintiffs further explain that under the Shareholders Agreement: "the Company's actions are left almost exclusively left [sic] to the authority of the Board of Directors"; the Board is authorized "to enter into a contract to retain counsel" and "to appoint members of an Executive Team"; the Executive Team cannot take actions without the approval of the Board; and "the initial Chief Executive Officer of the Company was Gaitan." (Opp. at 3-4.) Importantly, the "irreparable injury" articulated by Plaintiffs is that GSG's refusal to take direction from anyone but Mr. Gaitán "impermissibly interferes with Terra's <u>rights of corporate control</u>" (which would arise under the Shareholders Agreement), because "Terra is entitled to have the Company managed by individuals <u>with authority to do so</u>." (Opp. at 14 (emphases added).) It is clear from the Plaintiffs' Opposition

---

[7] Of course, the Arbitral Tribunal has already determined that the execution of the Framework Agreement by all of the shareholders (including Plaintiffs) constituted an action by unanimous written consent of the Board of Directors of the Company through which the Board confirmed Mr. Gaitán's status as CEO and unanimously ratified and acquiesced to GSG's representation of the Company. (ECF No. 17-1, at 568-69).

that this case concerns corporate control issues under the Shareholders Agreement, precisely the type of issue that is subject to arbitration. (*See* ECF No. 17.)

The Opposition also makes clear that the arbitration is the focus of the case. Plaintiffs explain that this lawsuit concerns GSG's purported "unauthorized representation" of the Company "in the Underlying Arbitration proceedings." (Opp. at 1 (emphasis added).) The Framework Agreement was distributed "to all parties to the Arbitration—that is, including all plaintiffs and defendants here." (*Id*. at 2 (emphasis added).) The Framework Agreement evidenced "every parties' agreement to appoint Schachter as counsel for the Company in the Underlying Arbitration." (*Id*. at 2 (emphasis added).)

The Arbitral Tribunal has already determined that the claims concerning the Company's representation belong in arbitration. (*See* ECF No. 17-1, at 568-69.) And, as noted in Defendants' Motion to Compel Arbitration, the Arbitral Tribunal has already rejected Plaintiffs' arguments that Mr. Gaitán is not the CEO of the Company. (*See* ECF No. 17, at 19-20) (internal citations omitted). Rather than remand the action, as Plaintiffs urge, this case should be sent to arbitration or transferred to the Southern District of New York.[8]

## CONCLUSION

For the foregoing reasons, Defendants Adam Michael Schachter and Gelber Schachter & Greenberg, P.A. respectfully request that the Court grant their Motion to Dismiss (ECF No. 6) and enter an order dismissing the Plaintiffs' Complaint (ECF No. 1-4) with prejudice.

---

[8] GSG refers to the arguments made in the briefing on Defendants' motion to transfer (ECF No. 14), Defendants' motion to compel arbitration (ECF No. 17), and in opposition to Plaintiffs' motion for remand (ECF No. 44).

Dated:  June 22, 2022                                  Respectfully submitted,

                                                                                            By:  *Roberto Martínez*
                                                                                            Roberto Martínez
                                                                                            Florida Bar No. 305596
                                                                                            Stephanie A. Casey
                                                                                            Florida Bar No. 97483
                                                                                            **COLSON HICKS EIDSON, P.A.**
                                                                                            255 Alhambra Circle, Penthouse
                                                                                            Coral Gables, Florida 33134
                                                                                            Phone: (305) 476-7400
                                                                                            bob@colson.com
                                                                                            scasey@colson.com

                                                                                            *Counsel for Adam Michael Schachter and*
                                                                                            *Gelber Schachter & Greenberg, P.A.*