**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **TERRA TOWERS CORP.,** *et al.,* | ) CASE NO. 22-21204-CIV-SCOLA/DAMIAN |
| | ) |
| *Plaintiffs*, | ) **JUDGE ROBERT N. SCOLA, JR.** |
| | ) |
| v. | ) **MAGISTRATE JUDGE MELISSA** |
| | ) **DAMIAN** |
| **ADAM MICHAEL SCHACHTER,** *et al.,* | ) |
| | ) |
| *Defendants*. | ) |
| | ) |

**SPECIALLY APPEARING DEFENDANTS TELECOM
BUSINESS SOLUTION, LLC'S, LATAM TOWERS, LLC'S, AND
AMLQ HOLDINGS (CAY), LTD.'S, AND DEFENDANTS ADAM M.
SCHACHTER'S AND GELBER SCHACHTER & GREENBERG, P.A.'S
REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION OR, IN
THE ALTERNATIVE, STAY THE PROCEEDINGS PENDING ARBITRATION**

Specially Appearing Defendants Telecom Business Solution, LLC, LATAM Towers, LLC, and AMLQ Holdings (Cay) Ltd. (collectively, "Peppertree/AMLQ"), and Defendants Adam M. Schachter ("Mr. Schachter"), and Gelber Schachter & Greenberg, P.A. ("GSG," and together with Mr. Schachter and Peppertree/AMLQ, the "Moving Parties") hereby submit this reply in support of their motion to dismiss the Complaint and compel Plaintiffs Terra Towers Corp. and TBS Management, S.A. (collectively, "Plaintiffs") to arbitrate their claims in the ongoing arbitration among the parties addressing the same issues that is currently taking place in New York, New York (the "Arbitration") or, alternatively, stay this lawsuit pending resolution of the ongoing Arbitration [ECF No. 17] (the "Motion to Compel").

## PRELIMINARY STATEMENT

Plaintiffs' opposition to the Motion to Compel [ECF No. 50] only confirms that there is no daylight between the claims before this Court and those raised in the Arbitration, over which the Tribunal has already ruled it has jurisdiction. As a result, Plaintiffs cannot circumvent the Federal Arbitration Act ("FAA") and its strong public policy in favor of arbitration just to try their luck in a different forum. As the Moving Parties have established, Plaintiffs brought this lawsuit only after they *lost* their challenge to the Framework Agreement authorizing the retention of GSG and Mr. Schachter as Company[1] counsel in the Arbitration. *See generally* [ECF No. 17]. Plaintiffs' claims, as set forth in the state court complaint (the "Operative Complaint"), are governed by a valid and binding arbitration provision contained in the Shareholders Agreement among the parties (the "Arbitration Agreement") and are therefore subject to arbitration. [ECF No. 31-27] §§ 8.14, 8.15.

Unable to refute these points, Plaintiffs misconstrue the clear language of the relevant agreements, ignore the Tribunal's prior rulings on their claims, sidestep the Moving Parties' arbitrability arguments, and cherry-pick from case and statutory law, all in an ill-fated attempt to avoid arbitration.

## ARGUMENT

**I. The Arbitrability of Plaintiffs' Claims Is a Matter for the Tribunal, But in Any Event, Plaintiffs' Claims Are Arbitrable**

Because Plaintiffs do not dispute that the Arbitration Agreement is "binding, enforceable, and fall[s] within the scope of the New York [C]onvention," [ECF No. 50] at 7 n.1, the key

---

[1] The "Company" refers to Continental Towers LATAM Holdings Limited.

question is whether their claims are arbitrable. The Tribunal's rulings (which Plaintiffs' Opposition ignores) conclusively show that the issues in the Operative Complaint are arbitrable. Indeed, as noted in the Motion to Compel, in its December 23, 2021 Order, the Tribunal considered—and unequivocally rejected—the same theory upon which the Complaint is premised. *See generally* [ECF No. 14-3]. This alone enables the Court to compel arbitration.

      A.      <u>Jurisdiction to Determine Arbitrability Is Vested in the Arbitrator</u>

Even if the Tribunal's prior arbitrability ruling is not dispositive (it should be), this Court should delegate the arbitrability question to the arbitrators pursuant to the parties' delegation agreement. Plaintiffs do not dispute that, by incorporating the AAA Commercial Rules into the Shareholders Agreement, the parties demonstrated their "clear and unmistakable" intent to delegate all arbitrability issues to the Tribunal. *See* [ECF No. 50] at 9 (citing *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1284 (11th Cir. 2022)); *see also Lichtman v. Bar Educ., Inc.*, No. 8:21-cv-1370, 2021 WL 4478249, at *6 (M.D. Fla. Sept. 30, 2021) ("The arbitration clause at issue here references and incorporates the AAA Commercial Arbitration Rules, and the Eleventh Circuit has held that incorporation of these Rules provides the requisite clear and unmistakable evidence that parties agreed to arbitrate ***all*** gateway issues of arbitrability.") (emphasis added). Such arbitrability issues include "any objections with respect to the existence, ***scope***, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA Commercial Rule R-7(a) (emphasis added).

Plaintiffs nevertheless argue that ***the Court*** must first determine whether the Arbitration Agreement "reach[es] far enough to encompass [this dispute]" *before* delegating arbitrability questions to the arbitrator. [ECF No. 50] at 9. This is not (and cannot be) the law. Requiring the Court to determine the scope of the Arbitration Agreement in the first instance would "short-circuit the process to which the parties have agreed" under the AAA Commercial Rules. *Attix*, 35 F.4th at 1284 (citing *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527-28 (2019)). The Supreme Court has made clear that the FAA leaves no room for such judicial maneuvers:

> We must interpret the [Federal Arbitration] Act as written, and the Act in turn requires that we interpret the contract as written. When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue.

*Henry Schein*, 139 S. Ct. at 529.

Plaintiffs' reliance on *Attix* here is misplaced. In *Attix*, the Eleventh Circuit considered whether the parties agreed to delegate questions related to the *enforceability* of the arbitration agreement, in addition to the agreement's scope, and held that under the AAA's delegation provision, this question was for the arbitrator to decide. Here, the reach of the parties' delegation agreement is not at issue: they clearly and unmistakably agreed to delegate questions regarding the scope of the Arbitration Agreement to the arbitrators, *see* AAA Commercial Rule R-7(a), and no other arbitrability issues, such as the existence or validity of the Arbitration Agreement, are in dispute.[2]

### B. Plaintiffs' Claims are Arbitrable No Matter Who Determines Arbitrability

Regardless of whether the Tribunal or this Court determines the threshold question of arbitrability, the claims in Plaintiffs' Operative Complaint (the only complaint that matters for purposes of the instant motion) belong in arbitration. Any uncertainty as to whether the Arbitration Agreement covers the claims in the Operative Complaint must be resolved in favor of arbitration. *See, e.g.*, *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. In other words, arbitration must not be denied unless a court is positive that the clause it is examining does not cover the asserted dispute."). This pro-arbitration public policy is especially forceful where, as here, the dispute involves *international* parties. *See* [ECF No. 17] at 20 (citing *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614, 631 (1985)).

Plaintiffs concede that the Shareholders Agreement is broad and comprehensive, governing "***any*** controversy, claim or dispute ***arising out of or relating to or in connection with*** this [Shareholders] Agreement including, without limitation, any dispute regarding its breach, termination, enforceability or validity hereof." [ECF No. 31-27] § 8.14 (emphasis added); *see also* [ECF No. 50] at 7-9 (thrice referring to the Arbitration Agreement as "broad"). They argue, however, that the claims in the Operative Complaint fall outside this broad provision because they are "completely untethered from the claims at issue in the Underlying Arbitration Proceedings." [ECF No. 50] at 6-7.

---

[2]   By the same token, Plaintiffs' cases addressing the scope of various arbitration agreements, [ECF No. 50] at 10, are relevant to the arbitrators', not the Court's, threshold determination of whether this dispute falls under the Arbitration Agreement.

This argument fails on multiple fronts. To start, the arbitrability question is not, as Plaintiffs suggest, whether the claims in the Operative Complaint relate to the parties' claims in the Arbitration, but, rather, whether they "aris[e] out of or relat[e] to or [are] in connection with" the Shareholders Agreement. [ECF No. 31-27] § 8.14. The Tribunal has already ruled that "a dispute between the shareholders over who should represent the Company as arbitration counsel in this arbitration"—the central dispute raised by the Operative Complaint—"arise[s] out of the Shareholders Agreement" and thus falls "squarely within [the Tribunal's] jurisdiction." [ECF No. 14-3] ¶ 7. Specifically, the Shareholders Agreement requires Board approval before the Company may enter into any agreement, including an agreement to engage counsel for the Company. Section 4.04(a) explicitly authorizes the Board "to make any and all contracts and decisions, enter into transactions and make and obtain any commitments on behalf of the Company to conduct or further its business." [ECF No. 31-27] § 4.04(a). Because engaging counsel on behalf of the Company is simply one type of contract the Company can make, engagement of Company counsel is an activity that is reserved for the Board. Additionally, pursuant to Section 4.04(a)(xviii), the Board must approve "entry by the Company . . . into any agreement . . . not included in the Annual Budget," which would include any agreement to engage counsel for the Company. *Id.* § 4.04(a)(xviii). As a result, the engagement of Company counsel falls squarely under the Arbitration Agreement.

Additionally, Plaintiffs' rescission claim is based on a purported mutual mistake regarding who occupied the role of CEO of the Company. [ECF No. 31-4] ¶¶ 30-34. This question, too, falls squarely within the Arbitration Agreement and, thus, the Tribunal's jurisdiction, because pursuant to the Shareholders Agreement, only the Board has the authority both to hire and fire and to appoint and oversee the Executive Team of the Company, including the CEO. [ECF No. 31-27] §§ 4.04(a)(vi), 4.06(a).

Plaintiffs nevertheless make the conclusory claim, without even addressing any of the above provisions, that "disputes concerning GSG's improper retention . . . are not controversies that arise under the Shareholders Agreement." [ECF No. 50] at 7. In so asserting, Plaintiffs fail to mention the Tribunal's adverse rulings on the very same claims of "mistake," the viability of the Framework Agreement, and the propriety of Mr. Schachter's and GSG's ongoing representation of the Company before this Court; the Tribunal's ruling that these exact claims fall under the Shareholders Agreement and therefore within the Tribunal's jurisdiction; and the

Tribunal's subsequent rulings based on Plaintiffs' ongoing non-compliance. *See* [ECF No. 17] at 19-20.[3] Plaintiffs' complete failure to address these points is telling.

Moreover, apparently recognizing that the Operative Complaint is arbitrable, Plaintiffs repeatedly turn to the ***Proposed*** First Amended Complaint (the "Proposed FAC"), contending that "claims involving professional misconduct by an attorney representing one of the Parties to the Shareholders Agreement simply does not fall within the universe of subject matter covered by the arbitration provisions." [ECF No. 50] at 7. As with their Motion to Remand, however, this ploy will not work. Courts look to the operative complaint, not a possible, future proposed amended complaint, in ruling on a motion to compel arbitration. *See, e.g.*, *Powell v. AT&T Mobility, LLC*, 742 F. Supp. 2d 1285, 1292 n.6 (N.D. Ala. 2010) ("The proposed amendments are not relevant to the determination of whether the arbitration agreement in this case is binding and enforceable."); *Rivera v. AT & T Corp.*, 420 F. Supp. 2d 1312, 1323 (S.D. Fla. 2006) (granting motion to compel arbitration based on operative complaint and denying motion for leave to amend complaint). The Proposed FAC is thus irrelevant for purposes of the instant motion.

## II. Plaintiffs Waived Their Objection to the Tribunal's Authority

By failing to properly challenge the Tribunal's authority over the claims in the Operative Complaint, Plaintiffs waived any purported right they may have had to have a court decide them. As noted above, in its December 23, 2021 order, the Tribunal considered and rejected the same theory upon which the Complaint is premised and ruled that the instant dispute over the engagement of Company counsel "arise[s] out of the Shareholders Agreement" and falls "squarely within [the Tribunal's] jurisdiction." [ECF No. 14-3] ¶ 7. The only proper way to challenge the Tribunal's decision would be to file a timely motion to vacate. *See* 9 U.S.C. § 10. Plaintiffs, of course, know this as they have filed a motion to vacate other orders in the Southern District of New York. *See generally Telecom Business Solution, LLC, et. al. v. Terra Towers Corp., et al.*, No. 1:22-cv-1761 (S.D.N.Y.) at ECF No. 28. But because Plaintiffs never sought vacatur of the December 23 order, they waived any right to claim that the Tribunal lacks jurisdiction over this

---

[3] Plaintiffs fail to acknowledge, for example, that, as recently as May 9, 2022, the Tribunal issued another order contemplating sanctions against Plaintiffs for asserting similar issues before the Tribunal. *See* [ECF No. 37-1]. The Tribunal noted that all of the shareholders (including Terra) agreed to GSG's representation of the Company until Terra "became dissatisfied" with that representation, and that legal representation of the Company is a "procedural issue" that was addressed by the Tribunal to "enable the arbitration to proceed in an effective fashion." *Id.* ¶ 6 n.1.

dispute.  *Cf. City of Miami v. Fraternal Ord. of Police Lodge #20*, 248 So. 3d 273, 279 (Fla. Dist. Ct. App. 2018) (finding that plaintiff did *not* waive its right to litigate the issue of the arbitrator's authority where plaintiff filed a motion to vacate specifically claiming that the arbitrator exceeded his authority).

### III. Plaintiffs Are Estopped from Avoiding Arbitration Against Mr. Schachter and GSG

Plaintiffs acknowledge that, under certain circumstances, "a nonsignatory to an arbitration clause may . . . compel a signatory to the clause to arbitrate the signatory's claims against the nonsignatory despite the fact that the signatory and nonsignatory lack an agreement to arbitrate." [ECF No. 50] at 13 (citing cases).  As set forth in the Motion to Compel, a party may be estopped from avoiding arbitration against a non-signatory when two factors are present: "(1) the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed, and (2) the relationship among the parties justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with" the non-signatory. *Medidata Sols., Inc. v. Veeva Sys. Inc.*, 748 F. App'x 363, 366 (2d Cir. 2018) (internal quotation omitted).  Both factors are easily satisfied here, notwithstanding Plaintiffs' flimsy claims to the contrary.

Plaintiffs argue that the first factor is not met because there is only a "tangential nexus" between "the improper procurement of the Framework Agreement" and the Arbitration Agreement and "the factual allegations supporting the [Operative Complaint] are not founded upon or intimately connected with the [Arbitration Agreement]."  [ECF No. 50] at 13.  This argument misses the mark: the Shareholders Agreement governs not only the engagement of Company counsel and Board authority required to enter into the Framework Agreement in the first place, but also the hiring and oversight of the Company's CEO, which is likewise a matter that is reserved for the Company's Board.  *See* [ECF No. 17] at 18.  Plaintiffs cannot challenge the validity of the Framework Agreement, or the engagement of Company counsel, without reference to the Shareholders Agreement.  *Id.*  Far from tangential, the Framework Agreement and role of Company executives are intimately intertwined with the Shareholders Agreement.

Plaintiffs next argue that the second factor is lacking because Mr. Schachter/GSG and Plaintiffs do not share any of the four ***non-exhaustive*** types of signatory/non-signatory relationships that courts have deemed sufficient to compel arbitration.  *See* [ECF No. 50] at 13-14 (citing *Medidata Sols., Inc. v. Veeva Sys. Inc.*, No. 17 CIV. 589 (LGS), 2017 WL 3503375, at *2

-6-

(S.D.N.Y. Aug. 16, 2017)).  Courts, including those in the cases cited by Plaintiffs, do not apply such a bright-line rule, however, in assessing this factor.  *See, e.g.*, *Medidata Sols., Inc.*, 2017 WL 3503375, at *3 (considering whether "it would be unfair for [p]laintiffs to avoid arbitration" given the parties' relationship, without specifically considering whether any of the four enumerated relationships were present).  Plaintiffs also assert, without any basis, that it would ***not*** be "grossly unfair" for them to refuse to arbitrate with Mr. Schachter and GSG, ignoring the fact that their Operative Complaint does not distinguish between defendants in any significant way.  *See* [ECF No. 17] at 18-19.  Still further, Plaintiffs make the disingenuous claim that they have "not attempted to circumvent their arbitration obligations," [ECF No. 50] at 14, once again sidestepping the fact that they have already raised, and the Tribunal has already considered and rejected, the same baseless claims they bring here.  Plaintiffs' lone non-binding authority only confirms that Plaintiffs are unfairly attempting to evade arbitration under these circumstances.  *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1134 (9th Cir. 2013) (noting that it is unfair for a party to avoid arbitration while also seeking to "invoke the duties and obligations" of the underlying agreement).

**IV.   This Court Has Subject Matter Jurisdiction Over This Case Pursuant to the New York Convention and via Diversity Jurisdiction**

Plaintiffs' Opposition incorrectly asserts, without support, that this Court does not have the requisite subject matter jurisdiction to enter an order to compel arbitration.  As laid out in the Opposition to Remand [ECF No. 44], this Court has subject matter jurisdiction over the instant action under either the Operative Complaint or the Proposed FAC.  In any event, presently, the Proposed FAC is not at issue and is merely an exhibit to Plaintiffs' Motion to Amend.  *See* [ECF No. 35-1].

This Court has subject matter jurisdiction over the Operative Complaint, pursuant to 9 U.S.C. § 205, the statute providing for removal of cases that fall under the New York Convention. The subject matter of this case falls squarely within the scope of the statute because it "relates to an arbitration agreement . . . falling under the Convention."  *Key Motors Ltd. v. Hyundai Motor Co.*, No. 16-23657, 2016 WL 7364756, at *2 (S.D. Fla. Oct. 31, 2016) (Scola, J.) (quoting 9 U.S.C. § 205); *see also Pysarenko v. Carnival Corp.*, No. 14-20010-CIV, 2014 WL 1745048, at *7 (S.D. Fla. Apr. 30, 2014), *aff'd*, 581 F. App'x 844 (11th Cir. 2014), *cert. denied*, 575 U.S. 1037 (2015) ("[T]he district court will have jurisdiction under § 205 over just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense.")

(internal citation omitted). Plaintiffs themselves concede that "the [Operative] Complaint . . . is related to a matter which arises under the Federal Arbitration Act." Notice of Filing Arising from International Commercial Arbitration [ECF No. 31-5] ¶ 1. The Arbitration Agreement governs Plaintiffs' claims in their Operative Complaint because, as previously found by the Tribunal in the arbitration in its December 23, 2021 Order and noted above, the Framework Agreement is nothing more than a Board action approving the retention of Mr. Schachter and GSG as independent counsel for the Company in the underlying Arbitration. *See* [ECF No. 14-3] ¶¶ 4, 6. This Court unequivocally possesses subject matter jurisdiction over the Operative Complaint pursuant to 9 U.S.C. § 205.

Even if the utterly frivolous Proposed FAC were currently in play for purposes of establishing subject matter jurisdiction in this matter (which it is not[4]), this Court would retain subject matter jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332. "Original jurisdiction exists . . . where [i] the action is between citizens of different states and [ii] the amount in controversy exceeds $75,000." *Blasini v. W. World Ins. Co.*, No. 21-23261, 2021 WL 5832772, at *2 (S.D. Fla. Dec. 9, 2021) (Scola, J.) (citing 28 U.S.C. § 1332). As set forth more fully in the Opposition to Remand, the Proposed FAC alleges both complete diversity of citizenship and an amount in controversy in excess of $75,000. The Proposed FAC alleges that Plaintiffs Terra Towers and Terra TBS are citizens of the BVI and Panama, respectively. *See* [ECF No. 35-1] ¶¶ 2-3. It further alleges that Mr. Schachter and GSG, the only defendants in the Proposed FAC, are citizens of Florida. *See id*. ¶¶ 4-5. Complete diversity therefore exists because none of the plaintiffs in the Proposed FAC share citizenship with any of the defendants.[5] Additionally, Plaintiffs concede in the Proposed FAC that the amount in controversy exceeds

---

[4] As set forth in the Opposition to Remand, because the FAC is not the operative complaint in this matter, it is irrelevant for purposes of the Moving Parties' present motions before the Court. *See* [ECF No. 44] at 11-12.

[5] Plaintiffs improperly fail to include jurisdictional allegations related to the Company in the Proposed FAC. But it is undisputed that the Company is a BVI citizen, as Plaintiffs alleged in the Operative Complaint, and operates out of Latin America. *See* [ECF No. 31-4] ¶¶ 10, 17. It is certainly not a citizen of Florida. As explained in the Opposition to Remand, in a derivative action, the Company is initially considered a nominal defendant but, for purposes of diversity jurisdiction, should be realigned as a plaintiff. [ECF No. 44] at 12 (citing *Liddy v. Urbanek*, 707 F.2d 1222, 1224 (11th Cir. 1983)). Thus, even considering the Company's citizenship, complete diversity of citizenship still exists.

$75,000 because they allege that "Plaintiffs have suffered ***in excess of $250,000*** in damages for attorneys' fees charged by GSG and Mr. Schachter[.]" *Id*. ¶ 7 (emphasis added).  Therefore, this Court has subject matter jurisdiction over the action even if the Proposed FAC was relevant.[6]

### V. This Court Must Compel Arbitration and Dismiss, or in the Alternative, Stay the Instant Lawsuit

Having established that the Plaintiffs' claims are subject to arbitration in their entirety (and, in fact, are already being arbitrated), and this Court has jurisdiction to rule on the instant motion, this Court should enter an order referring these claims to arbitration and exercise its discretion to dismiss the Operative Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), *see* [ECF No. 17] at 9, or at the very least, stay the proceedings pending the Arbitration, *see id.*  Even if the Court were to somehow find that Plaintiffs' claims should ***not*** be referred to arbitration (which it should not), it should still exercise its discretion to stay this lawsuit pending completion of the Arbitration.  *See id.* at 11 (citing cases). Notably, Plaintiffs do not suggest that a stay or even dismissal of these proceedings would not be an appropriate remedy upon an order compelling arbitration.

### CONCLUSION

For the above reasons, and those in their Motion to Compel [ECF No. 17], the Moving Parties respectfully request that the Court compel arbitration and dismiss the Operative Complaint or, in the alternative, stay these proceedings pending the outcome of the Arbitration.

---

[6] Plaintiffs' Motion to Remand has been fully briefed since June 13, 2022 [ECF Nos. 38, 44, 57]. Should the Court need more time to consider the Motion to Remand, it should merely postpone its decision on the instant Motion to Compel, rather than outright deny it pending resolution of the Motion to Remand, as Plaintiffs seek, especially because remand is not warranted here.

Dated: June 22, 2022

By: */s/ Roberto Martínez*
Roberto Martínez
Florida Bar No. 305596
Stephanie A. Casey
Florida Bar No. 97483
**COLSON HICKS EIDSON, P.A.**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Phone: (305) 476-7400
bob@colson.com
scasey@colson.com

*Counsel for Adam Michael Schachter and Gelber Schachter & Greenberg, P.A.*

Respectfully submitted,

By: */s/ Marcos D. Jiménez*
Marcos D. Jiménez
**MARCOS D. JIMÉNEZ, P.A.**
255 Alhambra Circle
Coral Gables, FL 33134
Phone: (305) 570-3249
mdj@mdjlegal.com

Michael N. Ungar*
Katherine M. Poldneff*
Gregory C. Djordjevic*
**ULMER & BERNE LLP**
1660 W 2nd Street, Suite 1100
Cleveland, OH 44113
Phone: (216) 583-7000
mungar@ulmer.com
kpoldneff@ulmer.com
gdjordjevic@ulmer.com

Gregg L. Weiner*
Ethan R. Fitzgerald*
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, NY 10036-8704
Phone: (212) 596-9000
Gregg.Weiner@ropesgray.com
Ethan.Fitzgerald@ropesgray.com

Daniel V. Ward*
Katherine M. McDonald*
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston St.
Boston, MA 02199
Phone: (617) 951-7000
Daniel.Ward@ropesgray.com
Katherine.McDonald@ropesgray.com

*Application seeking admission *pro hac vice* forthcoming

*Counsel for Defendants Telecom Business Solution, LLC, LATAM Towers, LLC, and AMLQ Holdings (Cay), Ltd.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 22, 2022, the foregoing was filed through the Court's electronic filing system, which will provide notice of the filing to all counsel of record.

I further certify that I shall serve a copy of the foregoing by Electronic Mail to the following counsel:

Juan J. Rodriguez
jrodriguez@careyrodriguez.com


*Counsel for Terra Towers Corp. and TBS Management, S.A.*,

Allan A. Joseph
ajoseph@fidjlaw.com

*Counsel for DT Holdings, Inc.*

          */s/ Marcos Daniel Jiménez*
Marcos Daniel Jiménez

*Counsel for Defendants Telecom Business Solution, LLC; LATAM Towers, LLC; and AMLQ Holdings (Cay), Ltd.*