United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Terra Towers Corp. and TBS Management, S.A., Plaintiffs,<br><br>v.<br><br>Gelber Schachter & Greenberg, P.A., and others, Defendants. | Civil Action No. 22-21204-Civ-Scola |

### Order Transferring Case

    This case, at bottom, involves a dispute among the shareholders of Continental Towers LATAM Holdings Limited ("Continental"), a telecommunications-infrastructure company, regarding an agreement (the "Framework Agreement") that defines the contours of Defendant Adam Schachter and his law firm, Defendant Gelber Schachter & Greenberg, P.A.'s (together, the "Law Firm") legal representation of Continental before a New York arbitration panel. (Compl., ECF No. 31-4.) Plaintiffs Terra Towers Corp. and TBS Management, S.A. (together, "Terra") are majority shareholders of Continental and Defendants Telecom Business Solution, LLC, LATAM Towers, LLC, and AMLQ Holdings (Cay) Ltd. (collectively, the "Minority Shareholders") are minority shareholders. Defendant DT Holdings, Inc., appears to be an affiliate of Terra, described in the complaint as "a contractual counterparty" of Continental. (*Id.* ¶ 14.) Through the complaint, initially filed in state court, Terra is seeking recission of the Framework Agreement and an injunction against its continued implementation. (*Id.* ¶¶ 39–56.) The Minority Shareholders and the Law Firm (together, the "Active Defendants") removed the case to this Court (Defs.' Not. of Removal, ECF No. 31) and a furious flurry of motion practice then ensued. In the interest of judicial economy, the Court first evaluates its jurisdiction to hear this case, taking up Terra's motion to remand (Pls.' Mot., **ECF No. 38**), which the Court **denies**, and then turns to the Active Defendants' motion to transfer venue (Defs.' Mot., **ECF No. 14**), which the Court **grants**. Both motions have been fully briefed and are ripe for review. Because the Court finds transfer of this case to the United States District Court for the Southern District of New York appropriate, it declines to opine on the pending motions to dismiss, motion to compel arbitration, motion to amend the complaint, or motion for jurisdictional discovery.

**1. Background**

Terra, along with DT Holdings, are respondents/counter-claimants in an active and ongoing international arbitration in New York, relating to a shareholders' dispute about the management and operations of Continental. (Compl. ¶ 2; Not. at 1.) Under an agreement entered into by Terra, the Minority Shareholders, and Continental (the "Shareholders Agreement"), the parties are required to submit certain disputes to arbitration: "any controversy, claim or dispute arising out of or relating to or in connection with [the Shareholders] Agreement" "will be settled pursuant to binding arbitration." (Compl. ¶ 23; Defs.' Not., Ex. B. Shareholders Agmt. § 8.14, ECF No. 31-27, 51; Pls.' Reply, ECF No. 57, 4.) Telecom Business and LATAM Towers initiated the arbitration against Terra, DT Holdings, and other affiliated individuals, in February 2021. (Compl. ¶ 24.) AMLQ was initially named as a notice party. (*Id.*) Terra filed counterclaims in the arbitration, against the Minority Shareholders and some others. (*Id.*)

The dispute in this case, in the meantime, stems from a quarrel among the parties about the status of Jorge Gaitan Castro, who was Continental's initial chief executive officer, and his authority, or lack thereof, to engage counsel on Continental's behalf in the arbitration proceedings. (*Id.* ¶ 21.) Terra maintains that, as of 2016, Gaitan was removed as CEO and was, instead, based on a board resolution, appointed to be Continental's chief operating officer. (*Id.* ¶¶ 22, 33.) Under the Shareholders Agreement, the board of directors appoints an "Executive Team," consisting of a CEO and a chief financial officer. (*Id.* ¶¶ 18, 20.) The Shareholders Agreement also provides that this Executive Team supervises and controls all of Continental's business and affairs. (*Id.* ¶ 20.) Nonetheless, says Terra, despite his status as COO, and neither CEO nor CFO, Gaitan, *claiming* to be CEO, retained the Law Firm to represent Continental in the New York arbitration. (*Id.* ¶ 26.) Terra says it believed, at the time, that Gaitan was, in fact, CEO of Continental and says it joined in the parties' Framework Agreement under that mistaken belief. (*Id.* ¶ 4.)

Under the Framework Agreement, the Law Firm outlines the parameters of its engagement, serving as independent counsel for Continental in the New York arbitration. (*Id.* ¶ 27.) The Framework Agreement also sets forth that the Law Firm was engaged by Gaitan, as CEO; the Law Firm would be taking its direction from Gaitan; and only Gaitan would be privy to the Law Firm's invoices. (*Id.* ¶ 28–29.) Terra says it learned Gaitan was not actually Continental's CEO in October 2021. (*Id.* ¶ 32.) According to Terra, Gaitan, under the Shareholders Agreement, did not have authority to retain the Law Firm. (*Id.* ¶ 34.)

In seeking to be returned to the status quo, Terra filed its complaint, in state court, in March 2022, seeking to rescind the Framework Agreement and

have it declared void and without effect. (*Id.* ¶¶ 5, 36, 38.) The Active Defendants, thereafter, removed the case, under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"). 9 U.S.C. § 205. Terra now seeks to have the case remanded, back to state court, and the Active Defendants seek to have it transferred to the Southern District of New York.

## 2. Remand

Terra argues its case must be remanded back to state court because (1) its claims for recission and injunctive relief "do not fall within the subject matter contemplated in the arbitration provisions of the Shareholders Agreement" and, furthermore, (2) Terra seeks leave to amend with a proposed amended complaint that contains new causes of action "which clearly do not belong before the Court." (Pl.'s Mot. at 2) In opposition, the Active Defendants point to the exceptionally broad removal right provided for in the New York Convention; the connection between the issues raised in Terra's complaint and the parties' arbitration agreement; and the irrelevance of Terra's proposed amended complaint. (Defs.' Resp., ECF No. 44.) The Court finds Terra's position misses the mark: the Active Defendants properly removed Terra's case to this Court. Further, the Court also agrees with the Active Defendants that Terra's proposed amended complaint does not affect the Court's analysis.

The New York Convention accords an exceptionally broad removal right: "Where the subject matter of an action . . . pending in a State court relates to an arbitration agreement . . . falling under the Convention, the defendant . . . may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States." 9 U.S.C. § 205; *see also Reid v. Doe Run Resources, Corp.*, 701 F.3d 840, 843 (8th Cir. 2012) ("The removal right in § 205 is substantially broader than that in the general removal statute.") (cleaned up). Indeed, when Congress granted the federal courts jurisdiction over New York Convention cases, it "added one of the broadest removal provisions, § 205, in the statute books." *Acosta v. Master Maint. & Const. Inc.*, 452 F.3d 373, 377 (5th Cir. 2006) ("So generous is the removal provision that we have emphasized that the general rule of construing removal statutes strictly against removal cannot apply to Convention Act cases because in these instances, Congress created special removal rights to channel cases into federal court.").

Consistent with this broad removal right, the Eleventh Circuit instructs that, "in determining jurisdiction the district court need not—and should not—examine whether the arbitration agreement binds the parties before it." *Outokumpu Stainless USA, LLC v. Converteam SAS*, 902 F.3d 1316, 1324 (11th Cir. 2018), *rev'd and remanded, on other grounds, sub nom. GE Energy Power*

*Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637 (2020). Courts must, instead, "engage in a two-step inquiry to determine jurisdiction, limiting its examination to the pleadings and the removal notice." *Id.* (citing 9 U.S.C. § 205). To that end, removal is proper under § 205 where (1) "the notice of removal describes an arbitration agreement that may fall under the Convention"; and (2) "there is a non-frivolous basis to conclude that [the] agreement sufficiently relates to the case before the court such that the agreement to arbitrate could conceivably affect the outcome of the case." *Id.* (cleaned up). Here, the operative complaint and the removal notice readily satisfy both criteria.

First, the notice of removal certainly "describes an arbitration agreement that may fall under the Convention": (1) there is an agreement in writing; (2) the agreement to arbitrate provides for arbitration in the territory of a signatory to the Convention; (3) the agreement arises out of a commercial, legal relationship; and (4) a party to the agreement is not an American citizen. Indeed, Terra itself says it does "not dispute that the arbitration agreement with the Shareholders Agreement falls under the New York Convention." (Pl.'s Reply, ECF No. 57, 2.)

Instead, Terra's quarrel is really with the second prong: it contends "that the allegations and claims for relief within the operative and proposed complaints simply have no nexus with the arbitration provisions in the Shareholders Agreement." (*Id.*) To that end, Terra insists "there is no conceivable scenario where the arbitration provisions in the Shareholders Agreement could impact this unrelated proceeding." (*Id.* at 3.) In illustrating its point, Terra contrasts the claims and allegations at issue in the ongoing New York arbitration with the claims and allegations raised in its complaint here, maintaining that "disputes concerning [the Law Firm's] improper retention and [its] subsequent professional misconduct in representing the Company during the Underlying Arbitration are not controversies that arise under [the arbitration provision in the Shareholders Agreement]." (*Id.* at 3–4.) This is so, Terra says, because (1) the Shareholders Agreement's arbitration provisions, despite what Terra acknowledges as their "broad reach," "do not encompass the Framework Agreement, which sets forth the terms of the Company's legal representation," and (2) the "claims involving professional misconduct by an attorney representing one of the Parties to the Shareholders Agreement simply do[] not fall with the universe of subject matter covered by the arbitration provisions."

Terra's arguments miss the mark. First, as Terra itself acknowledges, its complaint "is related to a matter which arises under the Federal Arbitration Act." (Pls.' Not. of Filing ¶ 1, ECF No. 35-1.) Furthermore, Terra's operative complaint challenges, in large, if not in full, measure, whether Gaitan's retention of the Law Firm was in accordance with the Shareholders Agreement. (*E.g.*, ¶¶ 3, 20, 22,

26, 34, 37.) As Terra explains, in its complaint, under the Shareholders Agreement, the supervision and control of all Continental's business and affairs is left to an Executive Team. (Compl. ¶ 20.) The Executive Team, in turn, is composed of the CEO and CFO. (*Id.*) And, according to Terra, Gaitan was neither when he retained the Law Firm and, therefore, the Framework Agreement was agreed to under false pretenses. (*Id.* ¶¶ 3, 22, 26, 33–34, 37.) The Court cannot conceive of a way for this dispute to be resolved *without* the Shareholders Agreement's coming into play. And the arbitration clause, within that agreement, is notably broad, requiring "*any* controversy, claim or dispute arising out of or *relating to* or *in connection with* [the Shareholders] Agreement" to "be settled pursuant to binding arbitration." (Compl. ¶ 23; Shareholders Agmt. § 8.14; Pls.' Reply at 4.) Because of this nexus to the Shareholders Agreement, combined with the expansive arbitration clause, the Court finds this case readily satisfies the low bar requiring "a non-frivolous basis" to conclude that the parties' arbitration agreement "sufficiently relates to" a plaintiff's case such that the agreement "could *conceivably* affect the outcome of the case." *Outokumpu*, 902 F.3d at 1324 (cleaned up) (emphasis added).

Furthermore, in contending that the claims in its complaint are outside the scope of the arbitration agreement, Terra is, in essence, seeking, impermissibly, to "combine the jurisdictional and merits inquiry [of a motion to compel arbitration] into a single stage." *Beiser v. Weyler*, 284 F.3d 665, 671 (5th Cir. 2002). Accordingly, Terra's view that "disputes concerning [the Law Firm's] improper retention and [its] subsequent professional misconduct in representing the Company during the Underlying Arbitration are not controversies that arise under [the arbitration clause]," is simply beyond the scope of the Court's jurisdictional inquiry. *See, e.g., Silec Cable S.A.S v. Alcoa Fjardaal Sf*, 2012 WL 5906535, at *9 (W.D. Pa. Nov. 26, 2012) (denying motion to remand despite "merits-based" argument that the parties' dispute did not fall within the scope of an agreement containing an arbitration provision, but rather arose under a second contract which did not have an arbitration provision because "such a determination of whether the case is arbitrable or not is beyond the scope of the Court's limited inquiry to decide if subject matter jurisdiction has been established under section 205").

Finally, the Court finds Terra's arguments regarding its proposed amended complaint irrelevant. The Court evaluates subject-matter jurisdiction "based on the operative complaint at the time of removal." *Batchelor v. Am. Optical Corp.*, 185 F. Supp. 3d 1358, 1361 (S.D. Fla. 2016) (Ungaro, J.). Since Terra's motion for remand seeks remand based primarily on its claim that subject-matter jurisdiction is lacking, its proposed amended complaint has no bearing on the Court's analysis. Furthermore, to the extent Terra believes the Court should

exercise its discretion to remand, based on its proposed amended complaint, its motion fails to convince that considerations "of judicial economy, convenience, fairness, and comity" weigh, or even would weigh, in favor of the Court's declining to exercise jurisdiction over the claims, or even purported claims, in this case. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). And, in any event, arguments in that regard are premature because Terra has not actually been granted leave to file an amended complaint.

In sum, the Court finds the Active Defendants properly removed Terra's case to this Court, under the New York Convention. And Terra's reliance on its proposed amended complaint is (1) irrelevant regarding the Court's evaluation of its subject-matter jurisdiction and (2) premature as to whether the Court should exercise its discretion to remand based on those new claims.

### 3. Venue

Next, the Active Defendants ask the Court to transfer this action to the United States District Court for the Southern District of New York. In support, they point to the connections between this case, on the one hand, and, on the other, the active and ongoing New York arbitration and an earlier-filed action in the Southern District of New York, as well the other factors courts commonly consider in determining proper venue. (Defs.' Mot. at 1–2.) In objecting to the transfer, Terra argues (1) the issues raised in its complaint, which center on the Framework Agreement, are unrelated to the litigation in New York and the parties' disputes centering on the Shareholders Agreement; (2) the Active Defendants' claims about witnesses, evidence, and party-convenience factors weighing in favor of transfer are all conclusory or unpersuasive; and (3) the great deference that the Court should afford Terra's choice of forum.[1] After careful review, the Court readily agrees with the Active Defendants that the totality of the circumstances in this case weighs heavily in favor of transferring this case to the Southern District of New York.

Requests to transfer venue are governed by 28 U.S.C. § 1404(a). "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *Id.* Under this standard, much is left to the broad discretion of the district court. *See Brown v. Conn. Gen. Life Ins. Co.*, 934 F.2d 1193, 1197 (11th Cir. 1991) ("The decision to transfer a case to another district is left to the sound discretion of the trial court.").

---

[1] Terra also argues the Court should summarily deny the Active Defendants' motion because the Court has not yet determined whether it has subject-matter jurisdiction. (Pls.' Resp. at 5.) Because the Court has determined it, indeed, has subject-matter jurisdiction over this case, as set forth above, the Court dispenses with this point as moot.

Courts employ a two-pronged inquiry to determine whether transferring venue is proper: first, the alternative venue must be one in which the action could originally have been brought by the plaintiff; and second, whether both the private and public interests weigh in favor of transfer. *Trafalgar Capital Specialized Inv. Fund (In Liquidation) v. Hartman*, 878 F. Supp. 2d 1274, 1282 (S.D. Fla. 2012) (Altonaga, J.); *Cellularvision Tech. & Telecomm., L.P. v. Alltel Corp.*, 508 F. Supp. 2d. 1186, 1189 (S.D. Fla. 2007) (Moore, J.).

To begin with, there is no dispute that this action could have been brought in the Southern District of New York. Accordingly, the Court finds the first prong is satisfied.

As to the second prong, several factors may be evaluated to determine whether transfer is appropriate. The private factors that courts often consider include: (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses and the availability of process to compel the attendance of unwilling witnesses; (4) the relative ease of access to sources of proof and location of relevant documents; and (5) the financial ability to bear the costs of litigating in a particular forum. *Trafalgar Capital*, 878 F. Supp. at 1281–82. The public factors include: (1) the forum's familiarity with the governing law; (2) the forum's interest in adjudicating the dispute; (3) the burden of jury duty on the forum's community; and (4) trial efficiency and expense to the justice system. *See Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005); *Trafalgar Capital*, 878 F. Supp. at 1281–82; *Meterlogic, Inc. v. Copier Solutions, Inc.*, 185 F. Supp. 2d 1292, 1299 (S.D. Fla. 2002) (Gold, J.); *Mason v. Smithkline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001) (Moore, J.). These factors are nonexclusive, meaning that a court can consider any or all that are relevant to the facts at hand. *See Cellularvision Tech. & Telecomm., L.P. v. Cellco P'ship*, No. 06-60666-CIV, 2006 WL 2871858, at *2 (S.D. Fla. Sept. 12, 2006) (Dimitrouleas, J.) (describing the list of factors as non-exhaustive and noting that not all factors will be relevant in every case). On balance, transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of transfer. Having evaluated the relevant factors and standards, the Court is convinced by the Active Defendants' briefing and the record in this case that transfer to the Southern District of New York is warranted: the strong ties of this case to the Southern District of New York far outweigh its tenuous, glancing, and manufactured connections to this forum.

At issue in Terra's complaint is the parties' Framework Agreement. This agreement was entered into *as part of* the ongoing arbitration *in New York*. (Compl. ¶ 2.) The Framework Agreement addresses the structure of the legal representation, the engagement of which is supposed to be governed by the Shareholders Agreement—the very agreement at issue in the arbitration. (*Id.* ¶¶

20, 34.) That legal engagement, as Terra itself admits, governs the performance of the Law Firm's services "as independent counsel for Continental Towers LATAM Holdings Limited as a nominal party *in the arbitration*"—which is transpiring *in New York*. (*Id.* ¶ 27 (cleaned up) (emphasis added).) Further, the parties do not dispute that "significant aspects" of the ongoing arbitration are *already being litigated in the Southern District of New York*. (Defs.' Mot. at 7.) Significantly, many of the very same issues Terra raises in its complaint have already been considered and rejected by the New York arbitration tribunal. (Defs.' Mot., Ex. C, Arb. Order (Dec. 23, 2021), ECF No. 14-3, 3–6.) Moreover, except for the Law Firm, not a single other Defendant has any ties to Florida. And, although Defendants Schachter and his law firm are from Florida, they were specifically retained to act as Continental's counsel *exclusively in the underlying New York arbitration*. And, notably, both these defendants have also consented to jurisdiction in New York for the purposes of this litigation.

In the face of these extensive and undisputed links to New York, the Court finds Terra's response anemic. For example, without any support or explanation, Terra says that the Framework Agreement was executed by all parties in Miami, Florida. Accordingly, says Terra, its mistake of fact—as to Gaitan's authority to retain counsel on Continental's behalf, upon which its complaint is based—"primarily occurred in Florida." (Pls.' Resp. at 7.) First, not only does it appear unlikely, based on the record—which shows that seven of the nine parties in this case hail from either outside the country or outside of Florida—that all parties physically came to Florida to execute the contract, but the Active Defendants vehemently dispute the contention. While the burden of demonstrating transfer is warranted rests with the movants, to the extent Terra seeks to rebut the Active Defendants' showing with a disputed fact, it must do more than simply allege that fact through argument. Further, even if the contract had been entered into solely in Florida, that administrative occurrence does not detract from the fact that the actual performance of the contract was to be in New York—the site of the arbitration. Without more, the Court finds unpersuasive Terra's position, that, because the contract was executed in Florida, the locus of operative facts is somehow rechanneled to Florida as well.

Nor does the Court find at all compelling Terra's position that, because the Framework Agreement itself does not mention the Shareholders Agreement, the Framework Agreement is somehow rendered wholly untethered to the New York Arbitration. Again, according to Terra's own allegations, the authority for engaging representation on Continental's behalf is entirely governed by the Shareholders Agreement. (*E.g.*, Compl. ¶¶ 3, 20, 26, 34.) Further, the sole purpose of engaging the Law Firm to represent Continental was so that it could serve as independent counsel for Continental *during the pendency of the New*

York arbitration. (*E.g., id.* ¶ 2.) In the face of these facts, based on Terra's own allegations, Terra's position, that the events relevant to resolving the issues raised in the complaint "primarily took place here in southern Florida" (Pls.' Resp. at 7), is wholly meritless.

Moreover, while Terra is correct that its choice of forum should certainly be afforded some weight, it errs in contending the Court should bestow great deference upon its choice. This is because a "plaintiff's choice is accorded less weight where the choice of forum," as here, "lacks any significant connection to the underlying claim." *Awad v. Mayorkas*, 5:21-CV-601-JSM-PRL, 2022 WL 1215521, at *2 (M.D. Fla. Apr. 7, 2022), *rep. and rec. adopted,* 5:21-CV-601-JSM-PRL, 2022 WL 1212803 (M.D. Fla. Apr. 25, 2022) (citing *Jimenez v. R. & D. Masonry, Inc.*, No. 15-1255 (JEB), 2015 WL 7428533, at *3 (D.D.C. Nov. 20, 2015) for the proposition that deference is "not always warranted where the plaintiff's choice of forum has no meaningful ties to the controversy, and where transfer is sought to a forum with which plaintiffs have substantial ties and where the subject matter of the lawsuit is connected") (cleaned up). Indeed, transfer is favored in situations, as here, "[w]hen the material events that form the factual predicate of a plaintiff's claim did not occur in his chosen forum." *Tower Labs., Ltd. v. Lush Cosmetics Ltd.*, 285 F. Supp. 3d 321, 326 (D.D.C. 2018); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 236 (1981) ("When the plaintiff has chosen the home forum, it is reasonable to assume that the choice is convenient; but when the plaintiff [is] foreign, this assumption is much less reasonable.")

As for the public factors weighing in favor of transfer—which Terra has failed to address at all—the Southern District of New York has a demonstrably greater interest in this case than this district. Not only is the on-going arbitration pending in New York, but there is also highly interrelated litigation already pending in the Southern District of New York. The pendency in New York of this directly-related litigation, where a court is already considering related issues regarding the relationship among the parties, and the parties' rights under the Shareholders Agreement, weighs heavily in favor of transfer based on efficiency grounds and the general interests of justice. *See Great Lakes Transp. Holding LLC v. Yellow Cab Serv. Corp. of Florida, Inc.*, 10-80241-CIV, 2012 WL 12930665, at *8 (S.D. Fla. Feb. 6, 2012) (Zloch, J.) (finding "[t]he most compelling reason for transfer is the existence of the pending case in the Eastern District of Michigan" which is "directly related to the action here").

In sum, then, the balance of factors, both public and private, weighs heavily in favor of transfer.

**4. Conclusion**

As detailed above, the Court **denies** Terra's motion for remand (**ECF No. 38**) but **grants** the Active Defendants' motion to transfer venue (**ECF No. 14**). Accordingly, the Court directs the Clerk to take all necessary steps to ensure the prompt **transfer** of this action to the United States District Court for the Southern District of New York.

**Done and ordered** in Miami, Florida, on July 18, 2022.

Robert N. Scola, Jr.
United States District Judge